September 8, 2026

Susan E. Bindler, Clerk of Court
United States Court of Appeals for the Eighth Circuit
Thomas F. Eagleton United States Courthouse
111 South 10th Street, Suite 24.329
St. Louis, Missouri 63102

**Re: Onder v. State of Missouri, Case No. 4:26-cv-01424-SRC (E.D. Mo.) Emergency Letter Application for Immediate Administrative Stay**

Dear Ms. Bindler:

Intervenor-Defendants People Not Politicians and Richard von Glahn ("Intervenor-Defendants") respectfully request an immediate administrative stay of the Temporary Restraining Order ("TRO") entered by the United States District Court for the Eastern District of Missouri on September 8, 2026 (Doc. 35), pending this Court's consideration of a forthcoming emergency motion for stay pending appeal. Intervenor-Defendants have already filed a notice of appeal from the TRO. Given the extraordinary time-sensitivity of this matter, Intervenor-Defendants respectfully request that this Court act on this application as expeditiously as possible.

## I. Background

On September 12, 2025, the Missouri General Assembly passed House Bill 1 ("HB 1"), to replace Missouri's prior congressional district map enacted in 2022 (the "2022 Map"). People Not Politicians and its executive director, Richard von Glahn, circulated a referendum petition seeking to suspend HB 1 until it passed a statewide vote. On August 4, 2026, Missouri held its primary elections using the HB 1 map. That same day, the Secretary of State issued a certificate of insufficiency for the referendum petition.

On September 3, 2026, the Missouri Supreme Court issued its opinion in *von Glahn v. Hoskins*, No. SC101805 (Mo. Sep. 3, 2026) (en banc), holding that the Missouri Constitution authorizes referenda on the General Assembly's adoption of congressional district maps. The court

concluded *under state law* that HB 1 "is not the law and has never been the law." *Id.* at *13–14 (emphasis added). Accordingly, the Missouri Supreme Court "restrained and enjoined" the Secretary of State "and all of those acting in concert with him" from using the HB 1 map for the November general election.

On September 4, 2026, Plaintiffs filed a complaint in federal district court raising claims under the Elections Clause, Article I, Section 2, and the Equal Protection Clause. The Secretary of State separately filed an Emergency Application for Stay before the United States Supreme Court raising the same federal claims. At about 4:30 pm on September 8, 2026, Justice Kavanaugh denied the Secretary's stay application. *See Hoskins v. von Glahn*, No. 26A304 (U.S. Sep. 8, 2026). At 4:58 pm, the district court granted Plaintiffs' motion for a TRO, enjoining the use of any congressional district map ***other than*** HB 1 for the November general election.

Critically, Secretary Hoskins has already acted in compliance with the Missouri Supreme Court's directive. Today, September 8, 2026, the Secretary sent the certification to Local Election Authorities ("LEAs") and has directed local election clerks to begin implementing the Missouri Supreme Court's order—that is, to finalize ballots using the 2022 Map. The status quo on the ground is, and has always been, the 2022 maps. The TRO purports to upend that status quo and override the Secretary's compliance with the state court's mandate.

## II. Reasons the TRO Should Be Stayed

An administrative stay preserves the status quo for a brief period to allow the Court to consider a stay motion on its merits. Intervenor-Defendants submit that every consideration favors an immediate stay. The following is a summary of the grounds supporting a stay, each of which will be developed fully in Intervenor-Defendants' forthcoming emergency motion:

**The status quo is the 2022 Map, not HB 1.** The Missouri Supreme Court has declared HB 1 "is not the law and has never been the law." *Von Glahn v. Hoskins*, No. SC101805, at *13–14. Secretary Hoskins has already sent the certification to LEAs and directed local election clerks to begin implementing the Missouri Supreme Court's order using the 2022 Map. The TRO does not preserve the status quo; it disrupts it.

**Justice Kavanaugh denied the identical claims hours before the TRO issued.** The Secretary of State's Emergency Application for Stay raised the same Elections Clause, Article I § 2, and Equal Protection arguments that underpin the TRO. Justice Kavanaugh denied that application on September 8, 2026. *Hoskins v. von Glahn*, No. 26A304 (U.S. Sep. 8, 2026). Only the United States Supreme Court—not a single federal district judge—has authority to review and reverse a state court judgment under 28 U.S.C. § 1257.

**The TRO is functionally a preliminary injunction and is immediately appealable.** The TRO was issued after full adversarial briefing by all parties and intervenors. The Secretary claimed in his SCOTUS application that he would need to finalize ballots by September 19, 2026. The district court's TRO extends beyond that date and effectively decides what districts will be used during the 2026 election. Further, the TRO contains no expiration date tied to any preliminary injunction hearing—it simply notes that one will be set, sometime. Under the Eighth Circuit's substance-over-form doctrine, an order with the "practical effect" of a preliminary injunction is immediately appealable under 28 U.S.C. § 1292(a)(1) regardless of its label. *See La Belle Dairy, LLC v. Sharpe Holdings, Inc.*, 183 F.4th 606 (8th Cir. 2026); *Edudata Corp. v. Scientific Computers, Inc.*, 746 F.2d 429, 430 (8th Cir. 1984).

**A single judge lacked authority to issue the TRO.** Under 28 U.S.C. § 2284(a), "[a] district court of three judges shall be convened . . . when an action is filed challenging the

constitutionality of the apportionment of congressional districts." *Shapiro v. McManus*, 577 U.S. 39, 43 (2015) (this "mandatory language 'creates an obligation impervious to judicial discretion'"). The Complaint asks the court to declare the use of Missouri's only lawful congressional districts unconstitutional and to mandate use of HB 1—relief that falls squarely within § 2284(a). Under § 2284(b)(3), a single judge's TRO "shall remain in force only until the hearing and determination by the district court of three judges." If the case required a three-judge panel, the single judge's TRO is structurally ultra vires. Notably, the district court did *not* convene a three-judge panel. Indeed, the trial court ignored a host of jurisdictional arguments Intervenors raised in their motion to dismiss.

**The TRO violates the Anti-Injunction Act.** The TRO effectively overrides the Missouri Supreme Court's injunction requiring use of the 2022 Map. The Anti-Injunction Act, 28 U.S.C. § 2283, provides that federal courts "may not grant an injunction to stay proceedings in any State court" except in narrow circumstances. The Act's prohibition is "comprehensive" and "cannot be avoided by addressing an order to the parties rather than to a state court." *Atl. Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 287–88 (1970). Here, the district court effectively enjoined the Secretary from complying with an injunction the Missouri Supreme Court just issued.

**The lawsuit is collusive under 28 U.S.C. § 1359.** Plaintiffs' counsel is the same firm that represented the intervenor-respondents in the state court action. The Plaintiffs and the Defendant Secretary share the same objective. The State moved to dismiss itself on sovereign immunity grounds while proposing to keep the consenting Secretary in the case—exposing the non-adversarial character of the proceedings. Indeed, *the Secretary consented to entry of the TRO*. A collusive lawsuit cannot confer federal jurisdiction.

***Rooker-Feldman* bars this action as a disguised appeal of the *von Glahn* judgment.** This lawsuit is in every material respect an appeal of the Missouri Supreme Court's judgment disguised as an original federal action. Only the United States Supreme Court has jurisdiction to review state court judgments under 28 U.S.C. § 1257. The Rooker-Feldman doctrine "forecloses indirect attempts to undermine state court decisions." *Brown v. Sweeney*, 242 F.3d 374 (8th Cir. 2000). While Rooker-Feldman is typically limited to parties to the state court action, evidence of collusion may overcome that limitation. *See In re Skyline Woods Country Club, LLC*, 431 B.R. 830, 837 n.23 (B.A.P. 8th Cir. 2010).

***Younger* abstention and *Colorado River* counseled against federal intervention.** The state proceedings remain ongoing—the Secretary's stay application to the Supreme Court invoked review under 28 U.S.C. § 1257—and they implicate "the most important of state interests: administering state elections." *Miller v. Johnson*, 515 U.S. 900, 915 (1995). And, while Justice Kavanaugh denied the Secretary's application for a stay, the Secretary remains free to seek certiorari from the U.S. Supreme Court, which is the only viable path for obtaining review of the Missouri Supreme Court's decision.

**The district court itself rejected Plaintiffs' lead claim.** The court found that Plaintiffs "are not likely to succeed on the merits of their Elections-Clause claim" because the referendum is a legitimate part of Missouri's legislative power under *Ohio ex rel. Davis v. Hildebrant*, 241 U.S. 565 (1916), and *Arizona State Legislature v. Arizona Independent Redistricting Commission*, 576 U.S. 787 (2015). Granting a TRO after rejecting Plaintiffs' primary theory of the case undermines the court's own analysis.

**The Article I § 2 and Equal Protection theories are unprecedented.** The district court's remaining theories rest on the premise that voters will be "disenfranchised" if Missouri uses a

different map for the general election than was used in the primaries. No court has ever held that Article I, Section 2 or the Equal Protection Clause requires a state to use the same district boundaries for a general election that were used in the primaries—particularly where the primary map was subject to a lawful referendum challenge and has been declared void by the state's highest court. Furthermore, there is *no* evidence in the record to support the trial court's sweeping conclusions about alleged disenfranchisement.

**The TRO overrides the Missouri Supreme Court's authoritative interpretation of state law.** The Missouri Supreme Court—the final arbiter of Missouri's Constitution—has held that redistricting is "subject . . . to a referendum as the default" because it is a legislative act. *Von Glahn*, at *7. The federal district court's TRO effectively nullifies that judgment on different grounds, raising serious federalism and comity concerns.

**The TRO is the very federal-court intervention that *Purcell* warns against.** The Supreme Court "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 423 (2020). Justice Kavanaugh's four-factor test requires that "the underlying merits are entirely clearcut" before a court may intervene close to an election. *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring). Here, the merits are far from clearcut in Plaintiffs' favor—the district court rejected one of Plaintiffs' three claims outright, and the Supreme Court declined to grant emergency relief on the same theories.

**The district court failed to address whether it had jurisdiction.** As set out above, there were numerous jurisdictional bars on the district court granting relief in this case, or entertaining it at all. Indeed, the district court requested briefing on several of the abstention doctrines noted above. Yet, the TRO did not address those jurisdictional hurdles and proceeded directly to the

merits. Federal courts have an obligation to determine whether they have jurisdiction and it was error for the district court to enter a TRO without addressing its jurisdiction (which it did not have). *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." (cleaned up)); *Sisney v. Kaemingk*, 15 F.4th 1181, 1195 n.4 (8th Cir. 2021) ("[O]rdinarily a court may consider merits or remedies questions only after confirming that it has subject-matter jurisdiction.").

**Irreparable harm to Intervenor-Defendants is certain.** Absent a stay, no congressional districts will be in effect for Missouri voters in the general election. The Missouri Supreme Court order enjoined the Secretary and election administrators from using the HB 1 map. The TRO purports to enjoin the Secretary and election administrators from using anything other than the HB 1 map. Secretary Hoskins has already certified the 2022 Map to the LEAs and directed clerks to implement it. If the TRO remains in effect, elections officials will effectively be in contempt of either the Missouri Supreme Court or the federal district court if they implement either HB 1 or the 2022 map, leaving ballots and voters in flux. If elections officials abide by only the TRO and implement HB 1, in contravention of the Missouri Supreme Court injunction, the harm to Plaintiffs and voters who are forced to vote under HB 1's district lines cannot be undone. The loss of a constitutional right, even temporarily, constitutes irreparable injury. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976).

**Mandamus independently warrants relief.** The extraordinary convergence of circumstances—the Supreme Court's same-day denial of the same claims, the structural defect of a single judge acting where § 2284 requires a three-judge panel, the collusion and *Rooker-Feldman* bars, and the TRO's countermanding of a state supreme court's authoritative ruling on state

constitutional law—supports mandamus under the All Writs Act, 28 U.S.C. § 1651. The Eighth Circuit has granted mandamus to dissolve a TRO in analogous circumstances. *See In re Rutledge*, 956 F.3d 1018 (8th Cir. 2020).

### III. No Prior Application to the District Court Was Practicable

Under Federal Rule of Appellate Procedure 8(a)(2)(A)(i), a party ordinarily must first move in the district court for a stay pending appeal. Here, the district court entered the TRO shortly before 5:00 on September 8, 2026, even though the Secretary has already begun implementing the Missouri Supreme Court's directive. For the reasons discussed above, time is of the essence. Intervenor-Defendants have filed an application for stay with the trial court, which the trial court will undoubtedly deny, given that it just entered the TRO without addressing the numerous arguments Intervenors raised in their Motion to Dismiss. Waiting on the district court to rule would be impracticable given the timing consideration at play and would be futile. *See* Fed. R. App. P. 8(a)(2); *see also Kansas v. United States*, 124 F.4th 529 (8th Cir. 2024) (granting administrative stay and considering appeal on expedited basis).

### IV. Conclusion

For the foregoing reasons, Intervenor-Defendants respectfully request that this Court immediately enter an administrative stay of the district court's TRO pending the Court's consideration of a full stay motion. An administrative stay is necessary to prevent the TRO from overriding the Missouri Supreme Court's judgment and the Secretary's ongoing compliance with it. Intervenor-Defendants intend to file an emergency motion for stay pending appeal promptly.

Respectfully,

**STINSON LLP**

*/s/ Alixandra S. Cossette*
Charles W. Hatfield, No. 40363
Jeremy A. Root, No. 59451
Alexander C. Barrett, No. 68695
Alixandra S. Cossette, No. 68114
Greta M. Bax, No. 73354
230 W. McCarty Street
Jefferson City, Missouri 65101
Phone: (573) 636-6263

*Attorneys for Intervenor-Defendants*
*People Not Politicians and Richard von Glahn*