# Supreme Court of Missouri

en banc

SC101805

Richard von Glahn,

Appellant,

v.

Denny Hoskins, in His Official Capacity, et al.,

Respondents.

***Opinion issued September 3, 2026***

**Appeal from the Cole County Circuit Court**
The Honorable Daniel R. Green, Judge

**Overview**

This case involves a straightforward question of law: Does the Missouri Constitution permit a referendum on a congressional redistricting act passed by the General Assembly? There is no dispute the referendum petition (2026-R004) seeking a referendum on House Bill 1 ("HB 1") was timely filed.[1] Likewise, there is no dispute the referendum petition has the number of signatures required by the Missouri Constitution. The only issue is whether the Missouri Constitution authorizes the referendum petition as a matter of law. About one hour before the statutory deadline of 5:00 p.m. on August 4, 2026, Missouri Secretary of State Denny Hoskins

[1] H.B. 1, 103d Gen. Assembly, 2d Extraordinary Sess. (2025).

held a press conference and issued a "Certificate of Insufficiency of Petition" finding "the referendum petition is insufficient under the Missouri Constitution because the Missouri Constitution does not authorize a referendum on congressional redistricting plans passed by the General Assembly." The secretary directed the referendum petition should not be placed on the November 2026 general election ballot.

Because the plain language of article III, section 49 of the Missouri Constitution authorizes a referendum as to "any act of the general assembly" and no exception applies, the referendum petition was legal, sufficient, and timely. This Court reverses the circuit court's judgment. Pursuant to Rule 84.14, this Court enters judgment ordering the secretary to issue a certificate of sufficiency as to the referendum petition (2026-R004) (attaching a copy of this opinion thereto), to place the referendum petition on the November 2026 general election ballot, and to take any and all additional steps necessary to place the referendum petition on the ballot at that election before September 8, 2026. The secretary and all of those acting in concert with him are restrained and enjoined from implementing, using, or mandating the use of the congressional redistricting in HB 1 for the November 2026 general election or at any other time thereafter unless and until HB 1 is approved by the voters at the November 2026 general election and takes effect 30 days thereafter. Mo. Const. art. XII, sec. 2(b).

**Factual Background and Procedural History**

The circuit court held a bench trial on the following joint stipulated facts and exhibits. On September 12, 2025, the General Assembly passed HB 1, which, if it becomes effective, will repeal the congressional districts established in 2022 and establish new congressional districts. On September 29, organizers submitted a referendum petition form to the secretary. The secretary approved the referendum petition for circulation. On December 9, the organizers



Appellate Case: 26-2797 Page: 2 Date Filed: 09/08/2026 Entry ID: 5681035

submitted to the secretary 691 boxes purporting to contain more than 300,000 signatures in support of the referendum petition.

The December 9 filing triggered several obligations of the secretary. First, the secretary had to "examine the petition to determine whether it complies with the Constitution of Missouri and with this chapter [116]." Sec. 116.120.1.[2] Second, the secretary had to issue a certificate of sufficiency or insufficiency as to the petition within the statutory timeframe. Sec. 116.150.1-.3. There is no dispute the secretary could have issued his certificate any time after the December 9 filing but had to issue it by August 4 at 5:00 p.m. At about 4:00 p.m. on August 4, the secretary issued a "Certificate of Insufficiency of Petition" finding "the referendum petition is insufficient under the Missouri Constitution because the Missouri Constitution does not authorize a referendum on congressional redistricting plans passed by the General Assembly." The secretary directed the referendum petition should not be placed on the November 2026 general election ballot.

On the same day, Richard von Glahn timely sued under section 116.200.1 in the Cole County circuit court, seeking reversal of the secretary's certification decision and an injunction restraining the secretary from using, implementing, or mandating the use of the congressional redistricting in HB 1. Von Glahn is one of the referendum petition proponents, a Missouri

[2] All statutory references are to RSMo 2016, and all rule references are to Missouri Court Rules (2026).



Appellate Case: 26-2797 Page: 3 Date Filed: 09/08/2026 Entry ID: 5681035

citizen, a St. Louis County resident, a taxpayer, and a qualified Missouri voter.[3] The circuit court upheld the secretary's insufficiency certification. Von Glahn appealed.[4]

**Standard of Review**

"This Court will affirm a declaratory judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Maggard v. State*, 733 S.W.3d 411, 413-14 (Mo. banc 2026) (internal quotation omitted). "Because the facts are stipulated, this Court's review is limited to determining whether the circuit court properly declared and applied the law." *Id.* at 414 (internal quotation omitted). "Questions of law involving constitutional interpretation are reviewed *de novo*." *Id.* (internal quotation omitted).

---

[3] The circuit court permitted the Republican National Committee, the National Republican Congressional Committee, and the Missouri Republican State Committee to intervene in defense of HB 1. *See* Rule 52.12. Von Glahn challenges this ruling, citing *Committee for Educational Equality v. State*, 294 S.W.3d 477, 487 (Mo. banc 2009) (holding the circuit court abused its discretion in allowing permissive intervention when the intervenors merely repeated the state's arguments and failed to show the state could not defend its interests adequately), and *Toder v. Hoskins*, 730 S.W.3d 129, 135-37 (Mo. App. 2026) (holding the circuit court erred in granting intervention because the intervenor would not lose by direct operation of the judgment and offered only defenses already asserted by the secretary). Because von Glahn prevails on other grounds, this Court declines to address this issue.

[4] Because of the general interest and importance of the legal issue involved, this Court, on its own motion, granted discretionary transfer of this case under Rule 83.01 and article V, section 10 of the Missouri Constitution. As a result, this Court need not decide whether any defense asserted by the secretary invokes this Court's exclusive appellate jurisdiction, as von Glahn contends.



Appellate Case: 26-2797 Page: 4 Date Filed: 09/08/2026 Entry ID: 5681035

## Analysis

The secretary's sole basis for declaring the referendum petition insufficient is that the Missouri Constitution does not authorize a referendum on congressional redistricting passed by the General Assembly.[5]

The secretary correctly limited his analysis to the Missouri Constitution because both: (1) under section 116.120.1 the secretary's review is limited to "examin[ing] the petition to determine whether it complies with the Constitution of Missouri and with this chapter [116]" and

---

[5] The secretary attached to his certificate a seven-page "opinion" signed by the attorney general. In his certificate, the secretary states: "The grounds for insufficiency are more fully articulated in the attached opinion …, which is incorporated by reference into this certificate." This does not comply with section 116.150.2, which provides the secretary "shall issue a certificate stating the reason for the insufficiency[,]" and does not authorize the secretary to delegate his statutory duty by attaching and incorporating by reference a document prepared and signed by another person or entity. Sec. 116.150.2. *See Mesker Bros. Indus., Inc. v. Leachman*, 529 S.W.2d 153, 158 (Mo. 1975 (noting it is well-settled "an opinion of the Attorney General is not binding upon the courts or the citizenry"). The secretary must state in his certificate "the reason for the insufficiency." *Id.* In this case, the secretary stated a single reason: "the Missouri Constitution does not authorize a referendum on congressional redistricting plans passed by the General Assembly." As a matter of law, this is the only reason preserved for this Court's review, and this Court considers only the single reason set out in his certificate. Therefore, to the extent the secretary, by attaching the attorney general's "opinion" or through subsequent briefing, has attempted to raise other arguments beyond those set out in his certificate, those arguments have been waived and abandoned. This includes claimed federal law violations and whether the congressional redistricting in HB 1 should or must remain in place through the 2026 election cycle, which are also outside the scope of the secretary's authorized statutory review in section 116.120.1. In raising hypothetical scenarios and arguments wholly unrelated to whether the Missouri Constitution authorizes a referendum as to congressional redistricting passed by the General Assembly, the secretary also requests an advisory opinion, which this Court lacks the authority to issue. *Graves v. Mo. Dep't of Corr., Div. of Prob. & Parole*, 630 S.W.3d 769, 774 (Mo. banc 2021). Likewise, by failing to include in his certificate any reason for insufficiency related to the filing deadline or signature requirement for referendum petitions, the secretary has waived and abandoned any argument as to noncompliance with either requirement and has conceded the referendum petition was timely filed and contained at least the minimum number of signatures required under article III, section 52(a) (requiring the petition be filed "not more than ninety days after" the General Assembly adjourns the session and be signed by "five percent of the legal voters in each of two-thirds of the congressional districts in the state"). In fact, the secretary concedes in his answer the petition met the signature requirement in article III, section 52(a).



Appellate Case: 26-2797 Page: 5 Date Filed: 09/08/2026 Entry ID: 5681035

does *not* extend to whether the referendum petition complies with the United States Constitution or other federal laws; and (2) the United States Supreme Court has held on multiple occasions the United States Constitution permits a state to authorize a referendum as to legislation drawing new congressional districts. *See Ohio ex rel. Davis v. Hildebrandt*, 241 U.S. 565, 569 (1916) (rejecting as "plainly without substance" the argument that a state constitution's authorization of a referendum as to legislation drawing new congressional districts violates the Elections Clause)[6]; *see also Hawke v. Smith*, 253 U.S. 221, 230-31 (1920) (noting *Hildebrandt* held "the referendum provision of the state [c]onstitution, when applied to a law redistricting the state with a view to representation in Congress, was not unconstitutional"); *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 805 (2015) ("In upholding the state court's decision [in *Hildebrandt*], we recognized that the referendum was part of the legislative power in Ohio, legitimately exercised by the people to disapprove the legislation creating congressional districts." (internal citation and quotation omitted)); *id.* at 840 (Roberts, C.J., dissenting) ("*Hildebrandt* simply approved a [s]tate's decision to employ a referendum *in addition to* redistricting by the Legislature. The result of the decision was to send *the Ohio Legislature* back to the drawing board to do the redistricting." (internal citation omitted)); *Luther v. Hoskins*, 730 S.W.3d 567, 582 n.7, 583 (Mo. banc 2026) (Wilson, J., dissenting) (noting the United States Supreme Court has approved the use of both the referendum process and a gubernatorial veto for

---

[6] The Ohio constitutional provision at issue in *Hildebrandt* provided:

> [T]he people reserve to themselves the power to propose to the General Assembly laws and amendments to the Constitution, and to adopt or reject the same at the polls on a referendum vote as hereinafter provided. They also reserve the power to adopt or reject any law … passed by the General Assembly, except as hereinafter provided[.]

*State ex rel. Davis v. Hildebrant*, 114 N.E. 55, 56 (Ohio 1916) (quoting Ohio Const. art. II, sec. 1, as amended Sep. 3, 1912).



Appellate Case: 26-2797 Page: 6 Date Filed: 09/08/2026 Entry ID: 5681035

legislative acts purporting to draw new congressional districts, with Missouri using the former in 1922 and the latter in 1932).

A mere three years ago, the Supreme Court reaffirmed *Hildebrandt* and again rejected the argument the Elections Clause prohibits a state referendum as to legislation drawing new congressional districts. *Moore v. Harper*, 600 U.S. 1, 25-26 (2023) (concluding "redistricting is a legislative function, to be performed in accordance with the [s]tate's prescriptions for lawmaking, which may include the referendum and the Governor's veto" and rejecting "the contention that the Elections Clause vests state legislatures with exclusive and independent authority when setting the rules governing federal elections" (internal quotation omitted)). The Supreme Court affirmed: "A state legislature may not create congressional districts independently of requirements imposed by the state constitution with respect to the enactment of laws." *Id.* at 26 (internal quotation omitted).

The secretary asserts the Missouri Constitution does not permit a referendum as to HB 1 because the Missouri Constitution has no plain, clear statement subjecting legislation drawing new congressional districts to a referendum. But this ignores article III, section 49, which provides: "The people … reserve power to approve or reject by referendum *any act of the general assembly*, except as hereinafter provided." Mo. Const. art. III, sec. 49 (emphasis added). The language in article III, section 49 subjects "any act of the general assembly" to a referendum as the default. This Court has held congressional redistricting by the General Assembly "is a legislative act." *State ex rel. Carroll v. Becker*, 45 S.W.2d 533, 537 (Mo. banc 1932). HB 1 is an act of the General Assembly. There is no meaningful difference between article III, section 49 and the Ohio constitutional provision the Supreme Court upheld in *Hildebrandt* in 1916. *See supra* note 6.

This Court has recognized in *dicta* that the right of referendum applies to legislation drawing new congressional districts. *See Preisler v. Hearnes*, 362 S.W.2d 552, 557 (Mo. banc 1962) (upholding congressional redistricting dividing the state into 10 districts and noting: "the people of this state have a remedy for even valid redistricting, which they do not like, through our initiative and referendum provisions"); *State ex rel. Moore v. Toberman*, 250 S.W.2d 701, 703, 706 (Mo. banc 1952) (noting, in the context of considering whether a referendum petition as to congressional redistricting could be supplemented outside of the constitutional time periods, "[i]t seems clear that the intendment of the framers of the Constitution was that all laws, except those declared non-referable, should be subject to referendum if petitions to refer them were duly filed before their effective date" and noting the circuit court had held the redistricting was subject to the referendum provisions of the Missouri Constitution).

This Court holds that the referendum and initiative petition power in article III, section 49, like the Governor's veto power in article III, section 31, is an essential part of the state's lawmaking process under the Missouri Constitution.

The secretary next asserts even if legislation drawing new congressional districts might otherwise be subject to a referendum under article III, section 49, one of the exceptions in article III, section 52(a) applies. Article III, section 52(a) excepts from referendum "laws necessary for the immediate preservation of the public peace, health or safety, and laws making appropriations for the current expenses of the state government, for the maintenance of state institutions and for the support of public schools[.]"

First, the secretary asserts in his brief, with no supporting authority, that "the immediate preservation of the public peace" exception "exempts election laws, such as the HB 1 map, from referendum challenges." HB 1 did not have an attached emergency clause as required for the



Appellate Case: 26-2797 Page: 8 Date Filed: 09/08/2026 Entry ID: 5681035

"immediate preservation" exception. Mo. Const. art. III, sec. 29; *Maggard*, 733 S.W.3d at 414 n.8; *Inter-City Fire Prot. Dist. of Jackson Cnty. v. Gambrell*, 231 S.W.2d 193, 199-200 (Mo. banc 1950) (noting the emergency clause requirement applies to article III, sections 29 and 52 and, even with an emergency clause, "[w]hether or not the act is one necessary for the immediate preservation of the public peace, health or safety is a judicial question"). Further, the plain language of article III, section 52(a) does not support the secretary's argument. This Court cannot rewrite the Missouri Constitution to substitute "all election laws" for "the immediate preservation of the public peace[.]" The secretary's argument is even less persuasive in this case, involving an optional, mid-decade redistricting in no way necessary for "the immediate preservation of the public peace" because the 2022 congressional districts established by the General Assembly remain in place unless and until repealed by HB 1.

Second, the secretary asserts, with no supporting authority, that suffrage is a state institution, congressional redistricting is required by the state and federal constitutions, and congressional redistricting is necessary to maintain the suffrage right as populations change, invoking the "for the maintenance of state institutions" exception. The secretary's argument ignores that this exception applies only to "laws making appropriations … for the maintenance of state institutions[.]" *See Heinkel v. Toberman*, 226 S.W.2d 1012, 1013, 1016 (Mo. banc 1950) (concluding it was unnecessary to decide whether the state highway system is a "state institution" under the exception in article III, section 52(a) after determining the bill at issue did not make an appropriation); *State ex rel. Harvey v. Linville*, 300 S.W. 1066, 1068 (Mo. 1927) (concluding "the provision relating to laws making appropriations for the current expenses of the state government, for the maintenance of state institutions, and for the support of public schools, means that the word 'appropriation' applies to each of those conditions[,]" and "it must be an act



Appellate Case: 26-2797 Page: 9 Date Filed: 09/08/2026 Entry ID: 5681035

making appropriations for the support of public schools, which are excluded from the referendum, not merely any act which tends to support public schools"). Even if the exception were to apply absent an appropriation, applying the right of referendum to congressional redistricting passed by the General Assembly does not eliminate suffrage generally or the General Assembly's right to redistrict. Instead, if by referendum vote the voters reject the new redistricting in HB 1, the General Assembly's prior redistricting in 2022 remains in effect. The General Assembly also remains free to go "back to the drawing board to do [new] redistricting." *Ariz. Indep. Redistricting Comm'n*, 576 U.S. at 840 (Roberts, C.J., dissenting).

That the broad language in article III, section 49 subjecting "any act of the general assembly" to referendum applies to legislation drawing new congressional districts is even more obvious when one considers article III, sections 3(i) and 7(h), which explicitly exclude redistricting plans proposed by independent bipartisan citizens commissions drawing new *state* representative districts and new *state* senate districts, respectively, from the right of referendum. Because no such explicit exception for legislation drawing new congressional districts is found anywhere in the Missouri Constitution, the broad default language in article III, section 49 subjecting "any act of the general assembly" to referendum applies.[7]

[7] The secretary contends article III, sections 3(i) and 7(h), each of which provide that "[n]o redistricting plan shall be subject to the referendum," apply to HB 1. This argument ignores that the phrase "redistricting plan" appears 13 times in section 3 and 12 times in section 7 and, therefore, refers solely to commission-drawn redistricting plans for state house and state senate districts. The phrase "redistricting plan" does not appear in article III, section 45, however, and this omission is significant. Section 45 provides "the general assembly shall *by law* divide the state into [congressional] districts." Mo. Const. art. III, sec. 45 (emphasis added). By "law" and not by "plan." This language takes an act of the general assembly purporting to draw new congressional districts out of the ambit of article III, sections 3(i) and 7(h), and places it squarely within the provision in article III, section 49 allowing for a referendum on "any act of the general assembly[.]" The secretary's argument also ignores the plain language of article III, section 49 subjecting to referendum "any act of the general assembly, except as hereinafter provided."

The secretary also asserts the Missouri Constitution must not permit a referendum on congressional redistricting passed by the General Assembly because this year the *last* date on which he could make his certification decision under chapter 116 was August 4, the day of the primary election. Section 116.150.3, the statute setting out the certification deadline, took effect in June 1999, more than 50 years *after* adoption of the 1945 Missouri Constitution setting out current article III, section 49 and more than 90 years *after* Missouri voters first adopted a constitutional amendment setting out a right of referendum. *No Bans on Choice v. Ashcroft*, 638 S.W.3d 484, 486 (Mo. banc 2022). This Court need not speculate about why the General Assembly chose the statutory deadline or whether the statute is valid in every case because a later-enacted statute has *no* bearing on the constitution's plain language. The plain language of the constitution permits a referendum as to "any act of the General Assembly" regardless of any statutory deadlines set by the General Assembly decades later. Mo. Const. art. III, sec. 49.

Having concluded the Missouri Constitution authorizes a referendum on congressional redistricting passed by the General Assembly, this Court need look no further than *Maggard*, in which it explained in May of this year what result would follow if the referendum petition was deemed sufficient after the secretary issued his certificate and any judicial review authorized by the General Assembly in section 116.200 had occurred:

> If, however, the December 9 referendum petition filing is ultimately determined to be sufficient, article III, section 52(b) applies. In that case, because a "legal, sufficient, and timely" referendum petition was filed on December 9—*before* HB 1 went into effect on December 11—HB 1 did not take effect on December 11, HB 1 was "referred to the people" as of December 9, and HB 1 "shall take effect when approved by a majority of the votes cast thereon, and not otherwise." Mo. Const. art. III, sec. 52(b).

---

Article III, sections 3(i) and 7(h) precede article III, section 49 and do not appear "hereinafter." Accordingly, the secretary's argument is rejected.



Appellate Case: 26-2797 Page: 11 Date Filed: 09/08/2026 Entry ID: 5681035

*Maggard*, 733 S.W.3d at 420 (footnote omitted); *see also NAACP Mo. State Conf. v. Kehoe*, 734 S.W.3d 338, 341 n.4 (Mo. banc 2026) (noting *Maggard* held "if the December 9, 2025 referendum petition is sufficient after any judicial review—HB 1 never went into effect and will not go into effect unless and until approved by the voters, but—if the petition is insufficient after such review—HB 1 went into effect on December 11, 2025, and remains so").[8]

---

[8] The secretary devotes a significant portion of his briefing to discussing the confusion, expense, and practical difficulties that may result from not utilizing the congressional redistricting in HB 1 for the November 2026 election. Besides being irrelevant to the secretary's sole basis for declaring the referendum petition insufficient, these arguments are particularly misplaced given the secretary's delay created the confusion, expense, and practical difficulties of which he complains. In December 2025, a federal district court advised the secretary and the state that, if the referendum petition is sufficient, "the new map will be frozen until after the referendum, which could significantly disrupt the 2026 elections." *Mo. Gen. Assembly v. Von Glahn*, No. 4:25-CV-1535-ZMB, 2025 WL 3514277, at *2 (E.D. Mo. Dec. 8, 2025). At the same time, the federal district court noted the secretary had the ability to declare the petition insufficient based on his argument in the federal litigation—identical to his argument now—that the Missouri Constitution does not permit a referendum as to congressional redistricting passed by the General Assembly. *Id.* at *4. "[T]here is no apparent reason why [the secretary] would incur the significant cost of signature verification given his stated belief that the petition is constitutionally deficient." *Id.* at *2 n.2. In two separate cases in May, this Court stated it could not determine whether the congressional redistricting in HB 1 was in effect until the secretary issued his certification and the judicial review authorized by the General Assembly was complete. *Maggard*, 733 S.W.3d at 419-20; *NAACP*, 734 S.W.3d at 341 n.4. Despite this clear guidance from the federal district court and this Court, the secretary chose to delay his certification until the last possible day—August 4—and, in the meantime, utilized the congressional redistricting in HB 1 while incurring the time and expense of signature verification despite having represented to the federal district court he believed the referendum petition was constitutionally deficient. The secretary also chose to request verification of every signature, making the signature verification deadline July 28, when he could have chosen random sampling verification, with a deadline of not more than 30 days from the date the election authority received the petition from the secretary. *See* sec. 116.130.2. The secretary delayed certification until the last possible date and chose not to seek resolution of the constitutional question despite having been told at least as early as December 2025 he had the unique ability as secretary to do so under Missouri statutes. Given these undisputed facts, the secretary's arguments about confusion, expense, and practical difficulties are wholly unpersuasive.

Perhaps worse, these arguments fundamentally misunderstand the status of HB 1 pending the referendum vote. HB 1 is not the law and has never been the law. There is only one valid congressional redistricting in effect—the congressional redistricting the General Assembly established in 2022. Under article III, section 52(b), HB 1 "shall take effect when approved by a majority of the votes cast thereon, and not otherwise." Unless and until the voters approve HB 1

In summary, this Court reaffirms *Maggard*. Because the referendum petition was legal, sufficient, and timely, HB 1 never took effect and was referred to the voters as of December 9, 2025. The congressional districts the General Assembly established in 2022 remain in full force and effect for the November 2026 general election, and HB 1 will not take effect unless and until approved by the voters at the November 2026 general election.

**Conclusion**

This Court reverses the circuit court's judgment. The referendum petition was legal, sufficient, and timely, and the secretary incorrectly concluded otherwise. HB 1 did not go into effect and will not go into effect unless and until approved by the voters. The congressional redistricting the General Assembly established in 2022 remains in full force and effect for the November 2026 general election.

Pursuant to Rule 84.14, this Court enters judgment ordering the secretary to issue a certificate of sufficiency as to the referendum petition (2026-R004) (attaching a copy of this opinion thereto), to place the referendum petition on the November 2026 general election ballot, and to take any and all additional steps necessary to place the referendum petition on the ballot at that election before September 8, 2026. The secretary and all of those acting in concert with him are restrained and enjoined from implementing, using, or mandating the use of the congressional redistricting in HB 1 for the November 2026 general election or at any other time thereafter

---

at the November 2026 general election, HB 1 is of no force and effect and did not take effect on December 11 because it is subject to a sufficient referendum petition filed on December 9. Regardless of any confusion, expense, or practical difficulties caused by the secretary's delay and incorrect assumption about whether the referendum petition would be deemed sufficient, simply continuing to utilize the congressional redistricting in HB 1 does not comport with the Missouri Constitution because the 2022 map is the only map in effect.



Appellate Case: 26-2797 Page: 13 Date Filed: 09/08/2026 Entry ID: 5681035

unless and until HB 1 is approved by the voters at the November 2026 general election and takes effect 30 days thereafter. Mo. Const. art. XII, sec. 2(b).[9] No Rule 84.17 motions are permitted.

____________________________________
Ginger K. Gooch, Judge

All concur.

[9] The ballot summary statement to be used is set out in *People Not Politicians v. Hoskins*, 736 S.W.3d 518, 535 (Mo. App. 2026).



Appellate Case: 26-2797 Page: 14 Date Filed: 09/08/2026 Entry ID: 5681035