UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
No. 26-2797

---

**CONGRESSMAN ROBERT "BOB" ONDER, et al.,**
Plaintiffs-Appellees,
v.
**STATE OF MISSOURI and DENNY HOSKINS,**
in His Official Capacity as Secretary of State,
Defendants,
and
**RICHARD VON GLAHN,**
Intervenor-Appellant.

---

On Appeal from the United States District Court
for the Eastern District of Missouri
Case No. 4:26-cv-01424-SRC
(Hon. Stephen R. Clark, Chief Judge)

---

# INTERVENOR-APPELLANTS RICHARD VON GLAHN'S MOTION FOR SUMMARY REVERSAL FOR LACK OF JURISDICTION OR TO STAY THE DISTRICT COURT'S TEMPORARY RESTRAINING ORDER

---

Charles W. Hatfield (Mo. Bar #40363)
Jeremy A. Root (Mo. Bar #59451)
Alexander C. Barrett (Mo. Bar #68695)
Alixandra S. Cossette (Mo. Bar #68114)
Greta M. Bax (Mo. Bar #73354)
STINSON LLP
230 W. McCarty Street
Jefferson City, Missouri 65101
Telephone: (573) 636-6263
Facsimile: (573) 636-6231

*Counsel for Intervenor-Appellant Richard von Glahn*

**Table of Contents**


TABLE OF AUTHORITIES ....................................................................................3

INTRODUCTION ...............................................................................................5

JURISDICTIONAL STATEMENT ......................................................................8

STATEMENT OF FACTS ...................................................................................8

ARGUMENT .....................................................................................................10

I. The District Court Lacked Subject Matter Jurisdiction, and the TRO Should Be Summarily Reversed. ........................................................................10

A. The Trial Court Impermissibly Failed to Determine Whether It Had Jurisdiction ..........................................................................................10

B. The Case Is Collusive and Feigned, Depriving the Court of Jurisdiction 11

C. The *Rooker-Feldman* Doctrine Bars this Action. ....................................12

D. The Anti-Injunction Act Bars the TRO. ..................................................14

E. Multiple Abstention Doctrines Mandated Dismissal or a Stay .............15

F. A Single District Judge Cannot Grant Plaintiffs Relief..........................17

G. The *Purcell* Principle Bars the TRO........................................................19

II. In the Alternative, the TRO Should Be Stayed Pending Appeal ...............20

A. Intervenors Are Likely to Succeed on Appeal.......................................20

B. The TRO Causes Irreparable Harm to Intervenors and Missouri Voters 24

C. The Balance of Harms and Public Interest Favor a Stay........................25

CONCLUSION ..................................................................................................26

CERTIFICATE OF COMPLIANCE.....................................................................28

CERTIFICATE OF SERVICE ............................................................................29

## TABLE OF AUTHORITIES

**Cases**

*Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281 (1970). ... 15, 16
*Bruce v. City & County of Denver*, 57 F.4th 738 (10th Cir. 2023) ..........................14
*Bullock v. Carter*, 405 U.S. 134 (1972)....................................................................23
*Choreo, LLC v. Lors*, 164 F.4th 667 (8th Cir. 2026)...............................................19
*Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) ........................................................................................................................17
*Donatelli v. Mitchell*, 2 F.3d 508 (3d Cir. 1993) ......................................................24
*Dunn v. Blumstein*, 405 U.S. 330 (1972) ..................................................................23
*Eggers v. Evnen*, 48 F.4th 561 (8th Cir. 2022) .........................................................26
*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)...................13
*Gray v. Sanders*, 372 U.S. 368 (1963).......................................................................23
*Growe v. Emison*, 507 U.S. 25 (1993) ............................................................. 17, 18
*Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005).....................15
*Hoskins v. von Glahn*, No. 26A304. ............................................................. 7, 10, 22
*Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173 (1979).....23
*Kai v. Ross*, 336 F.3d 650 (8th Cir. 2003) ................................................................22
*Lance v. Coffman*, 549 U.S. 437 (2007) ....................................................................11
*Lord v. Veazie*, 49 U.S. (8 How.) 251 (1850). ...........................................................12
*Lubin v. Panish*, 415 U.S. 709 (1974) ........................................................................23
*McCormick v. Braverman*, 451 F.3d 382 (6th Cir. 2006).........................................14
*Merrill v. Milligan*, 142 S. Ct. 879 (2022)................................................................20
*Mo. Gen. Assembly v. von Glahn*, 2025 WL 3514277, (E.D. Mo. 2025)................27
*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983). .........17
*Nken v. Holder*, 556 U.S. 418 (2009) ....................................................................8, 21
*Pool v. City of Houston*, 87 F.4th 733 (5th Cir. 2023) ............................................12
*Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assur. Co.*, 700 F.2d 889 (2d Cir. 1983).............................................................................................13
*Purcell v. Gonzalez*, 549 U.S. 1 (2006) ....................................................................20
*Quinn v. Missouri*, 839 F.2d 425 (8th Cir. 1988) .......................................................9
*Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423 (2020).........20
*Republican Party of Oregon v. Keisling*, 959 F.2d 144 (9th Cir. 1992)..................24
*Reynolds v. Sims*, 377 U.S. 533 (1964)......................................................................23
*Rodriguez v. Popular Democratic Party*, 457 U.S. 1 (1982) ..................................23
*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) ..........................................11
*Shapiro v. McManus*, 577 U.S. 39 (2015) ........................................................ 18, 19
*Simon v. DeWine*, 98 F.4th 661 (6th Cir. 2024) ......................................................19

*Smith v. Sperling*, 354 U.S. 91 (1957) ....................................................................12
*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ..................................11
*Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245 (8th Cir. 2012) ............17
*United States v. Classic*, 313 U.S. 299 (1941)........................................................25
*Von Glahn v. Hoskins*, No. SC101805 (Mo. banc Sept. 3, 2026) .................. *passim*
*Younger v. Harris*, 401 U.S. 37 (1971)....................................................................16

**Statutes**

28 U.S.C. § 1257 ..........................................................................................17
28 U.S.C. § 2283 ..........................................................................................15
28 U.S.C. § 2284 .................................................................................... 18, 19
28 U.S.C. § 2284(a) .......................................................................................18
*Miller v. Johnson*, 515 U.S. 900 (1995)...................................................................16

**Other Authorities**

https://x.com/DLHoskins/status/2097545543580827804. ......................................12
Mo. Const. art. III, § 52(b).........................................................................26

## INTRODUCTION

Intervenor-Appellants Richard von Glahn and People Not Politicians ("PNP") respectfully move this Court for a stay of the underlying TRO pending appeal and/or for summary reversal of the district court's September 8, 2026 temporary restraining order (Doc. 35) for lack of subject matter jurisdiction. Expedited consideration is requested because the TRO prevents use of a congressional district map that Missouri's highest court has said, as a matter of state law, is the "only one valid congressional redistricting in effect—the congressional redistricting the General Assembly established in 2022." *von Glahn v. Hoskins*, No. SC101805 (Mo. banc Sept. 3, 2026) slip op. at n. 8.

But the district court's TRO prevents the use of that map, and any map "other than the HB 1 map for the November 3, 2026 general election." (Doc. 35.) Compliance with that order puts Missouri in violation of 2 U.S.C. § 2c (in each state…there shall be established by law a number of districts…and Representatives shall be elected only from districts so established). Meanwhile, the Missouri Supreme Court has enjoined the state from "using, or mandating the use of the congressional redistricting in HB 1 for the November 2026 general election." *von Glahn*, slip op. at 13-14. This means that Missouri officials may not use the HB 1 districts (because the Missouri Supreme Court has enjoined them) but they may also not use any other map (because the District Court has enjoined them).

The procedural posture is extraordinary. On September 3, 2026, the Missouri Supreme Court unanimously held that House Bill 1 ("HB1") "is not the law and has never been the law" because a legal, sufficient, and timely referendum petition suspended it as of December 9, 2025. *von Glahn v. Hoskins*, slip op. at n. 8. The Court ordered use of the 2022 congressional districts for the November 2026 general election.

On September 4, the Secretary filed an Emergency Application for Stay with the United States Supreme Court. *Hoskins v. von Glahn*, No. 26A304. On September 8, Justice Kavanaugh denied that application. Within an hour thereafter, a single district judge granted a TRO preventing the state from using the Congressional Districts the Missouri Supreme Court said were the correct districts under Missouri law and preventing the state from using any districts except HB 1, while the Missouri court has enjoined the use of HB 1. After the district court's TRO, the Missouri Secretary of State announced he intends to use the HB 1 districts and the Missouri Supreme Court has issued an order for him to show cause why he should not be held in contempt of that court. *von Glahn v. Hoskins*, No. SC101805, Order (Sept. 8, 2026).

The district court lacked jurisdiction for multiple independent reasons: (1) the case is collusive—Plaintiffs' counsel represented the losing intervenors in state court, and the nominal defendant *agrees* with Plaintiffs; (2) the *Rooker-Feldman*

doctrine bars appellate review of a state supreme court judgment; (3) the Anti-Injunction Act prohibits federal courts from enjoining state court proceedings; and (4) multiple abstention doctrines mandate deference to the Missouri Supreme Court.

Beyond these jurisdictional defects, the TRO fails on the merits. The district court found Plaintiffs unlikely to succeed under the Elections Clause—*their main claim*. The remaining Article I, Section 2 and Equal Protection theories are entirely novel. Justice Kavanaugh's denial of the stay application further undermines the likelihood-of-success analysis.

A stay pending appeal is warranted under the standard set forth in *Nken v. Holder*, 556 U.S. 418, 434 (2009). Summary reversal is equally warranted because the jurisdictional defects are clear and require no further factual development.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under 28 U.S.C. § 1292(a)(1). The district court entered a TRO on September 8, 2026 (Doc. 35), enjoining the Secretary from implementing any congressional district map other than HB1 for the November 3, 2026 general election. The TRO was issued after full briefing, without a hearing, and its effects are immediate given that the ballot alteration deadline was the same day. It "has the practical effect of a preliminary injunction" and is therefore immediately appealable. *Quinn v. Missouri*, 839 F.2d 425, 426 (8th Cir. 1988). Intervenors timely noticed this appeal on September 9, 2026. The district court's order recites that no party or intervenor disputes the facts (although intervenor was neither ordered to, nor did respond to the application for TRO, which was entered without a hearing) and that many of the facts are matters of public record.

## STATEMENT OF FACTS

On September 12, 2025, Missouri's General Assembly passed HB1, which would redraw Missouri's congressional districts. Intervenor von Glahn's organization collected over 300,000 voter signatures for a referendum petition, submitted to the Secretary on December 9, 2025.

Defendant Secretary of State Hoskins issued a certificate of insufficiency on August 4, 2026, rejecting the referendum on state and federal constitutional grounds. That same day, Missouri held its primary under the HB1 map.

Richard von Glahn immediately sued in state court. Following trial on stipulated facts, the Missouri Supreme Court expedited briefing and heard argument on September 2, 2026. The next day, it unanimously reversed—holding HB1 "never took effect," "has never been the law," and the 2022 congressional districts remain "the only valid congressional redistricting in effect." *von Glahn*, slip op. at n. 8. The court enjoined the Secretary from implementing HB1 and rested its decision on state law. *Id.* at 13-14.

On September 4, the Secretary filed an emergency stay application at the U.S. Supreme Court. *Hoskins v. von Glahn*, No. 26A304 (U.S. Sep. 8, 2026). The same day, Plaintiffs—represented by Ellinger Bell LLC, the same firm that represented the Republican National Committee, National Republican Congressional Committee, and Missouri Republican State Committee in state court and filed briefs at the Supreme Court supporting the Secretary's requested stay—filed this federal action. Defendants hastily *consented* to entry of a TRO. On September 5, PNP and von Glahn moved to intervene and moved to dismiss, addressing many jurisdictional defects.

Simultaneously, the district court ordered supplemental briefing on *Rooker-Feldman*, abstention, and the pending Supreme Court stay application. On September 8, Justice Kavanaugh denied that application. *Hoskins v. von Glahn*, No. 26A304 (U.S. Sep. 8, 2026). Within about 15 minutes of Plaintiffs' notice of that

ruling, the district court granted the TRO—directly countermanding the Missouri Supreme Court's unanimous judgment. This appeal followed.

## ARGUMENT

### I. The District Court Lacked Subject Matter Jurisdiction, and the TRO Should Be Summarily Reversed.

The district court's TRO is jurisdictionally defective for multiple independent reasons. Any one of these defects warrants summary reversal.

#### A. <u>The Trial Court Impermissibly Failed to Determine Whether It Had Jurisdiction</u>

"Federal courts must determine that they have jurisdiction before proceeding to the merits." *Lance v. Coffman*, 549 U.S. 437, 439 (2007). This requirement "is inflexible and without exception." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998). Courts "may not hypothesize subject-matter jurisdiction for the purpose of deciding the merits." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999).

Here, the district court recognized there were serious jurisdictional problems—it expressly asked for briefing on some of them. (Doc. 13) Intervenors moved to dismiss, explaining there were *many* jurisdictional bars. (Doc. 33.) The district court did not even *hypothesize* the existence of jurisdiction—its TRO did not address *any* jurisdictional hurdle. That, alone, warrants staying the order.

### B. The Case Is Collusive and Feigned, Depriving the Court of Jurisdiction

The Constitution limits federal judicial power to actual "Cases" and "Controversies" between genuinely adverse parties. U.S. Const. art. III, § 2. Where parties share the same interest, any judgment procured through a "mere colorable dispute" is "a nullity." *Lord v. Veazie*, 49 U.S. (8 How.) 251, 255-256 (1850). "Collusion to satisfy the jurisdictional requirements of the District Courts may, of course, always be shown; and it will always defeat jurisdiction." *Smith v. Sperling*, 354 U.S. 91, 96 (1957).

Every circumstance here confirms collusion. First, Plaintiffs at the district court are fully aligned with the Defendant Secretary. They are Republican congressional candidates and party officials. (Doc. 12) Days before this suit was filed, three Republican committees stood on the *same side* as Secretary Hoskins in state court, advancing the *same arguments* with the *same lawyer*. Then Secretary Hoskins consented to the district court's TRO without opposition.[1] Ellinger Bell LLC—representing Plaintiffs here—represented the Republican committees in state court. These Plaintiffs, Republican Congressional Candidates and Missouri Republican Party officials, are in direct privity with Intervenors National Republican Congressional Committee and Missouri Republican State Committee. The

[1] Within hours of the TRO being entered, the Secretary began gleefully boasting of his open defiance of a unanimous Missouri Supreme Court decision. *See* https://x.com/DLHoskins/status/2097545543580827804.

Complaint below recycles the *exact same* arguments the Missouri Supreme Court rejected. Most damning, after filing this lawsuit against Secretary Hoskins, Plaintiffs' counsel filed a brief at the U.S. Supreme Court *supporting* his emergency stay application.

This is collusion between the two parties that were aligned in state court to get from the district court what he failed to accomplish in Missouri. Intervention cannot cure it—where jurisdiction is lacking at commencement, it "cannot be aided by the intervention of a [party] with a sufficient claim." *Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assur. Co.*, 700 F.2d 889, 893 (2d Cir. 1983). Article III and 28 U.S.C. § 1359 demand dismissal.

### C. The *Rooker-Feldman* Doctrine Bars this Action.

This lawsuit is, in substance, an appeal of the *von Glahn* judgment. The Missouri Supreme Court held: "HB1 is not the law and has never been the law. There is only one valid congressional redistricting in effect—the congressional redistricting the General Assembly established in 2022." *von Glahn v. Hoskins*, No. SC101805, slip op. at 12. Plaintiffs asked the district court to order use of HB1—the precise relief the state court denied.

*Rooker-Feldman* bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S.

280, 284 (2005). Congress vested appellate jurisdiction over state court judgments solely in the Supreme Court. 28 U.S.C. § 1257.

Plaintiffs were not formally parties in the state action. But evidence of collusion and privity through shared counsel mandates dismissal. Plaintiffs' counsel represented the Republican intervenors who lost in *von Glahn* on September 3, and filed this federal action four days later seeking to override that judgment.

*Rooker-Feldman* applies when a federal plaintiff acts in privity with, or as a proxy for, a state-court loser to pursue relief the state-court loser would be barred from seeking. "It would be inconsistent to disallow the party in the state suit to raise a federal claim but to allow his privy to bring the exact same claim. . . . A state party may not circumvent the Article III jurisdictional provisions simply by substituting a privy's name for his own in the federal claim." *McCormick v. Braverman*, 451 F.3d 382, 396 (6th Cir. 2006).

The indicia of privity are overwhelming: party nominees and officials represented by counsel who represented their party committees and lost in state court, identical legal theories, identical requested relief, and a filing timeline indistinguishable from a direct appeal. *See Bruce v. City & County of Denver*, 57 F.4th 738, 748, 750 (10th Cir. 2023) (where plaintiff "allege[s] no injury apart from those caused by the state court judgment and the remedy [plaintiff seeks] would amount to reversal of that judgment, the district court lack[s] jurisdiction").

Here, Plaintiffs' injury is inseparable from the Missouri Supreme Court's judgment, and the relief they seek requires the district court to reverse it. Nor can Plaintiffs recast their challenge as one to post-judgment conduct. *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005) ("Where a state-court judgment causes the challenged third-party action, any challenge to that third-party action is necessarily the kind of challenge to the state judgment that only the Supreme Court can hear.").

D. The Anti-Injunction Act Bars the TRO.

The Anti-Injunction Act provides that a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The Act is "an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970). Those exceptions are narrow and "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed." *Id.* at 297.

The TRO violates the Act: it overrides a judgment of the Missouri Supreme Court by preventing use of congressional districts the Supreme Court decided are Missouri law. The Missouri Supreme Court unanimously held HB1 "is not the law

and has never been the law" and ordered elections conducted under the 2022 districts. *von Glahn v. Hoskins*, slip op. at n.8. Just yesterday, that Court issued a show-cause order directing Secretary Hoskins to appear and explain why he should not be held in contempt—noting its injunction remains "in full force and effect." *Id.*, Order (Mo. Sept. 8, 2026). The proceedings are ongoing, and the district court's TRO countermands a live injunction the Missouri Supreme Court is actively enforcing.

### E. Multiple Abstention Doctrines Mandated Dismissal or a Stay

Multiple abstention doctrines counsel against federal intervention. Each independently supports a stay; together, they present an overwhelming case for judicial restraint.

***Younger* abstention.** The state proceedings in *von Glahn* implicate Missouri's most vital interests—the organization of congressional elections and interpretation of its own constitution. *See Miller v. Johnson,* 515 U.S. 900, 915 (1995). *Younger v. Harris*, 401 U.S. 37 (1971), requires federal courts to abstain from interfering with ongoing state proceedings implicating important state interests, reflecting "a system in which there is sensitivity to the legitimate interests of both State and National Governments." *Id.* The proceedings are ongoing: the judgment is in effect and subject to further review through certiorari.

The state proceedings provide an adequate forum. Missouri's courts resolved the legal status of HB1 through a full adversarial process culminating in a unanimous Supreme Court judgment. The federal claims asserted here *were* raised in state proceedings, and the Missouri Supreme Court concluded the Secretary waived such contentions. *von Glahn*, n. 5. There is one path for further review—appeal to the U.S. Supreme Court. 28 U.S.C. § 1257. While the Secretary's stay request was denied, he remains free to seek certiorari, and *Younger* applies. *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1250 (8th Cir. 2012) ("[T]he relevant time for determining if there are ongoing state proceedings is when the federal complaint is filed.").

***Colorado River* abstention.** *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), counsels a federal court to dismiss or stay an action "due to the presence of a concurrent state court proceeding" in the interest of "[w]ise judicial administration." *Id.* at 817-18.

The relevant factors overwhelmingly favor abstention. The state court assumed jurisdiction first and the state proceedings are further advanced. Missouri law governs the central question—whether HB1 took effect—which the Missouri Supreme Court has resolved. *von Glahn v. Hoskins*, slip op. at 12. The risk of conflicting rulings is not hypothetical—the TRO already directly contradicts the

state court's judgment. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

***Growe v. Emison.*** States have the "primary duty" to enact redistricting plans. *Growe v. Emison*, 507 U.S. 25, 26 (1993). Federal courts ***must*** defer to state proceedings and may act only if the state fails to do so timely. "[P]rinciples of federalism and comity" require federal courts to "stay [their] hands" when a state "through its legislative or judicial branch, has begun to address that highly political task itself." *Id.* at 32-33. Missouri's courts acted—unanimously and definitively: "Because the referendum petition was legal, sufficient, and timely, HB1 never took effect." *von Glahn v. Hoskins*, No. SC101805, slip op. at 13.

The district court's intervention in the face of a definitive state resolution is the precise evil *Growe* identified. Federal courts "must neither affirmatively obstruct state reapportionment nor permit federal litigation to be used to impede it." 507 U.S. at 34. And "the elementary principles of federalism and comity embodied in the full faith and credit statute (28 U.S.C. § 1738) obligated the federal court to give that judgment legal effect." *Id.* at 35-36.

F. A Single District Judge Cannot Grant Plaintiffs Relief

"A district court of three judges shall be convened . . . when an action is filed challenging the constitutionality of the apportionment of congressional districts." 28 U.S.C. § 2284(a). This mandatory language "creates an obligation impervious to

judicial discretion." *Shapiro v. McManus*, 577 U.S. 39, 43 (2015). A single judge cannot "enter judgment on the merits" or "hear and determine any application for a preliminary or permanent injunction." 28 U.S.C. § 2284(b)(3). A single judge *can* grant a TRO "on a specific finding, based on evidence submitted, that specified irreparable damage will result," but only until a three-judge panel hears a preliminary injunction application. *Id.*

Plaintiffs unquestionably challenge the constitutionality of using the ***only*** congressional map in effect in Missouri. The three-judge panel requirement applies whenever a complaint makes a non-frivolous claim challenging congressional apportionment. *Shapiro*, 577 U.S. at 45. The district court ignored the issue and entered a TRO without addressing this defect or convening a three-judge panel. A single judge who enters a dispositive order in a case requiring a three-judge panel has acted without authority. *Simon v. DeWine*, 98 F.4th 661, 666 (6th Cir. 2024) (holding "district court lacked jurisdiction as a single judge to adjudicate any other pending motion," including a TRO, "because it was required to convene a three-judge court under 28 U.S.C. § 2284").

There is a second problem: the district court's findings were not based on any "evidence submitted." The only thing cited were conclusory allegations in the unverified Complaint—which are not evidence—and do not support the entry of injunctive relief. *Choreo, LLC v. Lors*, 164 F.4th 667 (8th Cir. 2026). There is *no*

evidence in the record of voter confusion, alleged disenfranchisement, or any other issue the trial court mentioned. The TRO violates Section 2284 on this basis alone.

G. The *Purcell* Principle Bars the TRO

The Supreme Court has repeatedly held that federal courts should not alter election rules on the eve of an election. *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006). Justice Kavanaugh articulated a four-factor test: relief should be denied unless "(i) the underlying merits are entirely clearcut in favor of the plaintiff; (ii) the plaintiff would suffer irreparable harm absent the injunction; (iii) the plaintiff has not unduly delayed bringing the complaint to court; and (iv) the changes in question are at least feasible before the election without significant cost, confusion, or hardship." *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring).

The TRO is precisely the federal intervention *Purcell* condemns. This case was brought at the last minute after the real parties in interest lost in State court. They have *never* brought a federal court action. A single federal district judge, thirteen minutes after receiving notice that the Supreme Court denied interim relief, overrode a unanimous state supreme court's interpretation of its own constitution on the day ballots were being finalized. The district court invented a never-before-seen "*Purcell* in reverse" as justification. (Doc. 35 at 12). Congressional elections are

determined by state law. 2 U.S.C. § 2c. The entire doctrine prevents "lower federal courts" from "alter[ing] the rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 423 (2020) (per curiam).

"States have the primary duty and responsibility to perform [redistricting], and federal courts must defer their action when a State, through its legislative *or judicial branch*, has begun in timely fashion to address the issue." *Growe*, 507 U.S. at 34 (emphasis added). The district court's TRO defies both the Supreme Court's general command to defer in *Purcell* and its specific decision to defer in *Growe*. It should be summarily reversed.

## II. In the Alternative, the TRO Should Be Stayed Pending Appeal

If this Court does not summarily reverse for lack of jurisdiction, it should stay the TRO pending appeal. Under *Nken v. Holder*, 556 U.S. 418, 434 (2009), a stay is warranted when (1) the movant has made a strong showing of likelihood of success on the merits, (2) the movant will be irreparably injured absent a stay, (3) a stay will not substantially injure the other parties, and (4) the public interest favors a stay.

### A. Intervenors Are Likely to Succeed on Appeal

The jurisdictional defects identified in Part I independently establish a strong likelihood of success. But even setting jurisdiction aside, the TRO rests on flawed legal conclusions this Court reviews *de novo*.

The district court found Plaintiffs unlikely to succeed on the Elections Clause—the only claim addressed in precedent. The Elections Clause theory is entirely without support. *See von Glahn v. Hoskins*, slip op. at 6-7 (rejecting Elections Clause theory as meritless); (Doc. 35 at 6-7) (same). Having found Plaintiffs' primary claim unlikely to succeed, entry of a TRO premised on novel claims beggars belief. *See Kai v. Ross*, 336 F.3d 650, 653 (8th Cir. 2003) ("likelihood of success on the merits" is "the most important" factor).

The remaining Article I, Section 2 and Equal Protection theories are novel. The district court's reasoning—that voters' "reliance" on the Secretary's decisions creates a constitutional right to vote in the same district across primary and general elections—finds no support in law. The Missouri Supreme Court unanimously held HB1 "is not the law and has never been the law." *von Glahn*, slip op. at 12. And what *is* clear is that Missourians have an unequivocal right to vote in the correct congressional districts at the general election. Justice Kavanaugh's denial of the stay application less than an hour before the district court's order further undermines the likelihood-of-success analysis. *Hoskins v. von Glahn*, No. 26A304 (U.S. Sep. 8, 2026).

i. *The Equal Protection Claim Fails*

Plaintiffs are not "likely to succeed" on Equal Protection. That claim is not based on any alleged infirmity with the 2022 districts—the only districts in legal

effect. Instead, Plaintiffs insist it would violate Equal Protection to require the state-enacted and lawful 2022 districts after the Secretary unlawfully used HB1 during the primary. The Secretary's ultra vires conduct cannot turn non-law districts into law, nor require Missouri to use districts not "established by law" in violation of 2 U.S.C. § 2c.

The Secretary presented this same argument to the U.S. Supreme Court, which refused to stay *von Glahn*. Below, the district court discussed six cases but not one had anything to do with using different districts at the general than at the primary. (Doc. 35 at 9-11.) (discussing *Dunn v. Blumstein*, 405 U.S. 330 (1972); *Reynolds v. Sims*, 377 U.S. 533 (1964); *Bullock v. Carter*, 405 U.S. 134 (1972); *Lubin v. Panish*, 415 U.S. 709 (1974); *Gray v. Sanders*, 372 U.S. 368 (1963); *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173 (1979)). Plaintiffs identify no authority holding Equal Protection guarantees every voter the same electoral consequence from a primary ballot.

The Supreme Court has confirmed Equal Protection does *not* guarantee voters an uninterrupted opportunity to determine who represents them, let alone who is nominated to represent them. In *Rodriguez v. Popular Democratic Party*, 457 U.S. 1 (1982), the Court rejected an equal protection challenge to a statute authorizing political parties to fill vacancies, concluding there was nothing "invidious or arbitrary" about the procedure. *Id.* at 10-11. "All qualified voters ha[d] an equal

opportunity to select a district representative in the general election." *Id.* The Third Circuit applied that logic, rejecting an equal protection challenge to reapportionment that assigned voters to a newly-created district represented by a senator they had not elected. *Donatelli v. Mitchell*, 2 F.3d 508, 514–18 (3d Cir. 1993) (finding "no constitutional basis" for claim that voters' "right to vote for a state senator" was "infringed because they [were] 'assigned' a senator who was not elected by their district, or any significant portion of it"). The Ninth Circuit rejected similar contentions. *Republican Party of Oregon v. Keisling*, 959 F.2d 144, 144–46 (9th Cir. 1992) (per curiam).

All qualified Missouri voters had an equal opportunity to participate in the August 4 primary, and all will have an equal opportunity to select a district representative in the general election. *Rodriguez*, 457 U.S. at 10. If HB1 is not implemented, no voter will lose the right to vote or be deprived of the opportunity to vote for their representative. At worst, some voters will have participated in a primary under different district lines. And the alleged injury is entirely speculative—Plaintiffs submitted no evidence concerning what would have happened had the lawful districts been used for the primary. Plaintiffs Thomas and Havens do not allege how they would have voted had the Secretary used the lawful districts, or whether those districts would have produced different nominees. This claim is legally unsupported and wholly speculative.

ii. *The Article I, Section 2 Claim Fails*

Plaintiffs are even less likely to succeed on Article I, Section 2. The district court observed that where a primary is an "integral part" of a state's nomination process, Article I, Section 2 protections apply. (Doc. 35 at 8.) But Article I, Section 2 merely protects a voter's right to cast a ballot and "to have his ballot counted." *United States v. Classic*, 313 U.S. 299, 318 (1941). *Classic*—the only case the district court cited—merely concluded that falsification of ballots violated Article I, Section 2.

The Missouri Supreme Court's decision (which is what Plaintiffs really challenge) will not cause an Article I, Section 2 violation. All qualified voters had the opportunity to vote in the primary, and those votes were counted and used to select nominees who will appear on the general election ballot. Conducting the general election under different district lines does not render those ballots "null and void." *Classic* does not convert the right to participate in a primary into a guarantee that every downstream circumstance remains fixed until Election Day.

B. The TRO Causes Irreparable Harm to Intervenors and Missouri Voters

Intervenors, and all Missourians, have a right to vote in congressional districts that have been established by state law as that law has been interpreted by Missouri's highest court. They do not have a right to vote using the HB1 districts.

Indeed, Mr. von Glahn and hundreds of thousands of Missouri voters submitted a referendum petition on HB1. The Missouri Court ordered HB1 placed before voters, and under state law, HB1 "shall take effect when approved by a majority of the votes cast thereon and not otherwise." Mo. Const. art. III, § 52(b). The TRO nullifies this.

By ordering officials not to use "any congressional district map other than the HB 1 map," the TRO renders the referendum meaningless—even if voters reject HB1, they will have already elected their congressional representatives under HB1 districts. This is irreparable injury that no damages remedy can cure. *Eggers v. Evnen*, 48 F.4th 561, 566–67 (8th Cir. 2022) (explaining federal injunction "'barring [a] State from conducting this year's elections pursuant to' a valid provision in its constitution" causes "serious[] and irreparabl[e] harm." (second and third alteration in original)).[2] And if the District Court is ultimately overruled, Missouri will have elected its delegation on unlawful districts in violation of 2 U.S.C. § 2c.

C. <u>The Balance of Harms and Public Interest Favor a Stay</u>

There is no harm to Plaintiffs in using the lawful districts and there is great harm in *not* using them. Plaintiffs complain they voted in different districts in the primary but do not challenge the *primary* results. Instead, they ask to compound the

[2] Due to Plaintiffs' and Defendants' collusion, there is *no* independent counsel representing *Missouri's* interests, so it falls to Intervenors.

problem by using illegal districts in the *general* election. No doubt the Secretary erred in using HB1 for the primary. But a federal court warned the Secretary in December 2025 that if the referendum were sufficient, "the new map will be frozen until after the referendum, which could significantly disrupt the 2026 elections." *Mo. Gen. Assembly v. von Glahn*, 2025 WL 3514277, at *2 (E.D. Mo. 2025).

The Missouri Supreme Court expressly found "the secretary's delay created the confusion, expense, and practical difficulties of which he complains." *von Glahn*, slip op. at n.8. The Attorney General proclaimed that "delay works in our favor." There is no equity to requiring an illegal election because of the Secretary's own strategic choices. *See Hill v. McDonough*, 547 U.S. 573, 584–85 (2006); *Gomez v. U.S. Dist. Ct. for N. Dist. of Cal.*, 503 U.S. 653, 654 (1992).

The 2022 districts are operationally ready. The Secretary certified candidates for those districts on August 25, 2026. There has been no challenge to those results, and the time for challenge has expired. Mo. Rev. Stat. §§ 115.527, 115.529. If there is a challenge, there is no federal law that guarantees the right to vote for primary candidates. The public interest favors enforcing the only lawful congressional districts, not perpetuating a map that was never law.

## CONCLUSION

For the foregoing reasons, Intervenor-Appellant Richard von Glahn respectfully requests that this Court:

1. Summarily reverse the district court's September 8, 2026 temporary restraining order (Doc. 35) for lack of subject matter jurisdiction;

2. In the alternative, stay the TRO pending appeal;

3. Grant expedited consideration of this motion; and

4. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Alixandra S. Cossette*
Charles W. Hatfield (Mo. Bar #40363)
Jeremy A. Root (Mo. Bar #59451)
Alexander C. Barrett (Mo. Bar #68695)
Alixandra S. Cossette (Mo. Bar #68114)
Greta M. Bax (Mo. Bar #73354)
**STINSON LLP**
230 W. McCarty Street
Jefferson City, Missouri 65101
Telephone: (573) 636-6263
Facsimile: (573) 636-6231

*Counsel for Intervenor-Appellant*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g) and Eighth Circuit Rule 28A(h), I certify that:

1. The brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 4,995 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

3. The brief has been scanned for viruses, and is virus-free.

Dated: September 9, 2026

*/s/ Alixandra S. Cossette*
Alixandra S. Cossette
*Counsel for Intervenor-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2026, I electronically filed the foregoing Brief of Petitioner-Appellant with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Alixandra S. Cossette*
Alixandra S. Cossette
*Counsel for Intervenor-Appellant*