**No. 26-2797 (Consolidated with No. 26-2827)**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

---

**CONGRESSMAN ROBERT ONDER, ET AL.,**
*Plaintiffs-Appellees,*

v.

**STATE OF MISSOURI AND DENNY L. HOSKINS,**
**in his official capacity as Missouri Secretary of State,**
*Defendants-Appellees,*

**RICHARD VON GLAHN AND PEOPLE NOT POLITICIANS,**
*Intervenor-Defendants/Appellants.*

---

On Appeal from the United States District Court
for the Eastern District of Missouri
Case No. 4:26-cv-01424-SRC
The Honorable Stephen R. Clark, United States District Judge

---

# ADDENDUM OF INTERVENORS-APPELLANTS

---


Charles W. Hatfield
Jeremy A. Root
Alexander C. Barrett
Alixandra S. Cossette
Greta M. Bax
STINSON LLP

230 W. McCarty Street
Jefferson City, MO 65101
Telephone: (573) 636-6263
chuck.hatfield@stinson.com
jeremy.root@stinson.com
alexander.barrett@stinson.com
alix.cossette@stinson.com
greta.bax@stinson.com

*Counsel for Intervenors-Appellants*

## ADDENDUM INDEX


| District Court Docket Number | Date Filed | Document | Page Numbers |
|---|---|---|---|
| 35 | 09/08/2026 | Memorandum and Order | 1-13 |
| N/A | 09/10/2026 | Judgment of Civil Contempt | 14-21 |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CONGRESSMAN ROBERT "BOB" ONDER et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 4:26-cv-01424-SRC |
| STATE OF MISSOURI and DENNY HOSKINS, | ) | |
| Defendants. | ) | |

**Memorandum and Order**

On August 4, 2026, Missouri concluded its primary elections using the congressional districts laid out in House Bill 1 ("HB 1"). Missouri voters and candidates for federal office in Missouri request that the Court issue a temporary restraining order enjoining the use of any congressional district map other than HB 1, *see generally* doc. 2. All parties, including Intervenors People Not Politicians and Richard von Glahn, had notice and submitted briefing. Docs. 2, 12, 19–20, 29–30. Having considered the Verified Complaint, the affidavit attached to it, the parties' and intervenors' briefs, and applicable law, the Court grants Plaintiffs' motion for a temporary restraining order.

## I. Facts and Background

The Court treats the following uncontroverted facts, drawn from Plaintiffs' verified complaint, docs. 1, 4, as true for the sake of resolving this motion for a TRO. *See* Fed. R. Civ. P. 65(b)(1)(A). Only a very narrow set of facts bear on the resolution of Plaintiffs' request for a TRO. On September 12, 2025, the Missouri General Assembly passed HB 1, replacing the prior congressional district map enacted in 2022. Doc. 1 ¶¶ 15–16; doc. 12-4 at 11 (The Court cites to

page numbers as assigned by CM/ECF.); doc. 19 at 7. People Not Politicians and its executive director Richard von Glahn (who moved to intervene in this case, doc. 12) circulated a referendum petition seeking to suspend HB 1 until it passed a statewide vote. Doc. 1 ¶ 18; doc. 12 at 1–2. On August 4, 2026, the statutory deadline for doing so, the Missouri Secretary of State Denny Hoskins issued a certificate of insufficiency for the referendum petition. Doc. 1 at ¶¶ 20, 25; *see* Mo. Rev. Stat. § 116.150(3) (setting the statutory deadline to issue a certificate of insufficiency at "5:00 p.m. on the thirteenth Tuesday prior to the general election").

The Complaint alleges, supported by a verified affidavit sworn under penalty of perjury, that Missouri's primary election took place on Augwust 4, 2026. Doc. 1 ¶ 21; doc. 1-1 ¶ 4. The primary election used the HB 1 map. Doc. 1 ¶ 21; doc. 12-1 at 5, 7. Neither Defendants nor Intervenors have disputed those facts; Intervenors' briefing acknowledges that Missouri concluded its congressional primary elections on August 4, 2026. Doc. 12-1 at 7. The Complaint alleges that Plaintiffs Patricia Thomas and Debra Havens would cast votes in a different congressional district under the 2022 map than the one in which they cast their primary-election votes under the HB 1 map. Doc. 1 ¶ 17. The Complaint further alleges that the HB 1 congressional districts in which Plaintiffs Congressman Robert Onder and Richard Brattin won nominations would change. Doc. 1 ¶¶ 2, 4, 37.

On September 3, 2026, the Missouri Supreme Court issued an opinion in *von Glahn v. Hoskins*, determining that, as a matter of state law, the Missouri Constitution authorizes referenda on the General Assembly's adoption of new congressional district maps. *von Glahn v. Hoskins*, --- S.W.3d ---, No. SC101805, at *3 (Mo. Sep. 3, 2026) (en banc). The court enjoined Secretary of State Hoskins from using the HB 1 map for the November general election, retroactively deeming under state law that HB 1 "is not the law and has never been the law." *Id.*

at *13–14, 12 n.8. Because the court concluded that any "claimed federal law violations" had been "waived and abandoned" by the Secretary of State, the court limited its holding to the single state-law issue of whether the Missouri Constitution authorized referendums on congressional redistricting plans. *Id.* at *5 n.5.

On September 4, 2026, Plaintiffs filed a complaint in this court, alleging claims under the Elections Clause; Article I, Section 2 of the U.S. Constitution; and the Equal Protection Clause. Doc. 1 ¶¶ 50–109. Plaintiffs moved for a temporary restraining order and a preliminary injunction and requested a "[TRO] and preliminary injunction hearing as expeditiously as possible." Doc. 2 at 2. Plaintiffs moved to expedite the briefing and hearing schedule, asking the Court to resolve their motion for a TRO and preliminary injunction "as expeditiously as possible." Doc. 3 at 2. Also on September 4, 2026, the Secretary of State filed an Emergency Application for Stay and Administrative Stay Pending Appeal before the Supreme Court, raising the same federal law claims. Emergency Appl. for Stay and Admin. Stay Pending Appeal, *Hoskins v. von Glahn*, No. 26A304 (U.S. Sep. 4, 2026). Justice Kavanaugh denied the application on September 8, 2026. *See Hoskins v. von Glahn*, No. 26A304 (U.S. Sep. 8, 2026). On September 5, Intervenors moved to intervene, requesting oral argument and the opportunity to "participate fully" in any hearings on Plaintiffs' motion for a TRO and preliminary injunction. Doc. 12-1 at 18.

Missouri law sets the deadline for finalizing the general-election ballot at 5:00 p.m. on the eighth Tuesday before the general election. Mo. Rev. Stat. § 115.125(2). The State has set the general election for November 3, 2026, meaning that the deadline for finalizing the ballot is 5:00 p.m. today, September 8. Doc. 1 ¶ 33; doc. 12-1 at 8; doc. 12-4 at 12.

Because no party or intervenor has disputed the facts described above and because many of those facts are matters of public record, the Court accepts the above facts as true for the purpose of this TRO.

## II. Discussion

Before issuing a TRO, the Court must consider (1) the threat of irreparable harm to the movant (2) the balance between that harm and the injury that granting the injunction would inflict, (3) the movant's probability of success on the merits, and (4) the public interest. *Dataphase Sys., Inc. v. CL Sys, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981); *see Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022). No single factor is dispositive, but the probability of success on the merits is the most important. *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013). The relevant inquiry is "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113. The movant bears the burden of proving the necessity of injunctive relief. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

### A. Irreparable harm

Demonstrating irreparable harm requires showing "that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013) (citation omitted). The party facing the harm must have "no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). Plaintiffs meet that burden here.

Plaintiffs face irreparable harm absent a TRO because many Missouri voters would have to cast their general-election votes for candidates whom they had no role in nominating.

Candidates who had no choice but to campaign and raise money in the HB 1 districts that Missouri's highest election authority presented to them, have spent their funds and campaign efforts in districts that would no longer exist. Using a map other than HB 1's would disenfranchise primary-election voters and undermine the nominations of candidates chosen in the primaries, leading to "certain" and "great" harm, *Novus Franchising, Inc.*, 725 F.3d at 895, not merely "speculative" or "possible" harm, *MPAY Inc. v. Erie Custom Comput. Applications, Inc.*, 970 F.3d 1010, 1020 (8th Cir. 2020) (alteration and citation omitted). The primary ballots cannot simply be recounted under the 2022 districts, as the district boundaries and candidates would not be the same for all voters. And the harm could not be more imminent: under state law, the deadline for finalizing the ballot is today, September 8. *See* Mo. Rev. Stat. § 115.125(2).

**B. Balance of Harms**

Conducting state elections in accordance with the Missouri Constitution undoubtedly qualifies as an important interest. But the Eighth Circuit has observed that "there can be little harm to other parties where . . . 'a stay preserves the status quo and promotes confidence in our electoral system.'" *Org. for Black Struggle v. Ashcroft*, 978 F.3d 603, 609 (8th Cir. 2020) (quoting *New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1284 (11th Cir. 2020)). Preserving the status quo entails using the same map for the general election that Missouri used for its primaries—the HB 1 map. *See* doc. 1 ¶ 21. Whatever harm Defendants, Intervenors, or others might suffer under a TRO pales in comparison to the irreparable harm that Plaintiffs and, palpably notable here, the public would suffer if the Court does not issue a TRO.

### C. Probability of success on the merits

#### i. Elections Clause

Article I, Section 4 of the federal Constitution gives to state legislatures the ability to establish "the Times, Places, and Manner of holding Elections for Senators and Representatives." U.S. Const. art I, § 4, cl. 1. While it recognizes the "need for congressional oversight," the Elections Clause doesn't "disarm States from adopting modes of legislation that place the lead rein in the people's hands." *Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 816 (2015). Because the "dictionaries of the founding era . . . capaciously define[d] the word legislature," *Moore v. Harper*, 600 U.S. 1, 25 (2023) (internal quotation marks omitted), "includ[ing] the referendum within state legislative power for the purpose of apportionment" does not offend the Elections Clause, *Ohio ex rel. Davis v. Hildebrant*, 241 U.S. 565, 569 (1916); *see also Hawke v. Smith*, 253 U.S. 221, 230–31 (1920) (describing *Hildebrant*'s holding).

In *Hildebrant*, the Supreme Court considered an Elections-Clause challenge to Ohioans' rejection of new congressional districts by popular referendum. *Hildebrant*, 241 U.S. at 566–67. The Ohio Constitution permitted its voters "to approve or disapprove by popular vote any law enacted by the General Assembly." *Id.* at 566; *see* Ohio Const. Art. II, § 1 (1912) ("[T]he people reserve to themselves the power . . . [to] reject [laws] at the polls on a referendum vote."). The Court held that the referendum, as part of the state's legislative power, did not violate the Elections Clause. *Hildebrant*, 241 U.S. at 569.

Missouri's Constitution grants the people of Missouri the "power to approve or reject by referendum any act of the general assembly." Mo. Const. Art. III, § 49. Interpreting its own Constitution, the Missouri Supreme Court has held that redistricting is "subject . . . to a

referendum as the default" because "redistricting by the General Assembly is a legislative act." *Von Glahn v. Hoskins*, No. SC101805, at *7 (Mo. Sep. 3, 2026) (en banc).

Plaintiffs are not likely to succeed on the merits of their Elections-Clause claim because the referendum is a licit part of the legislative power in Missouri. States may choose to vest parts of the legislative power in bodies other than the General Assembly, and Missouri has so chosen. *See Ariz. State Legis*, 576 U.S. at 813; *Moore*, 600 U.S. at 23; Mo. Const. Art. III, § 49. In turn, states may permit their voters to challenge redistricting maps by referendum without running afoul of the Elections Clause. *See Hildebrant*, 241 at 569.

Plaintiffs argue that a state constitutional provision must, under the Elections Clause, "supply [a] clear, deliberate statement" to "divest its legislature of redistricting authority." Doc. 2-1 at 6 (citing *Ariz. State Legis.*, 576 U.S. at 843 (Roberts, C.J., dissenting)). This argument is unavailing for two reasons.

First, the referendum doesn't *divest* the Missouri legislature of redistricting authority, as the people are part of the Missouri legislature through the referendum process. *See* Mo. Const. Art. III § 49 (locating referendum provision in article on "legislative department"); *von Glahn*, No. SC101805, at *8 ("[T]he referendum and initiative petition power . . . is an essential part of the state's lawmaking process under the Missouri Constitution."). Second, to the extent a clear statement rule applies in the Elections-Clause context, the Missouri Constitution's referendum provision is as clear as the Ohio Constitution's provision upheld in *Hildebrant*—both referendum powers apply to any law of the General Assembly. *Compare* Mo. Const. Art. III, § 49 *with* Ohio Const. Art. II, § 1 (1912); *see Hildebrant*, 241 U.S. at 566.

The Court therefore finds that Plaintiffs are not likely to succeed on the merits of their Elections-Clause claim. Next, the Court turns to Plaintiffs' Article I, Section 2 claim.

#### ii. Article I, Section 2

Article I, Section 2 of the Constitution provides that "[t]he House of Representatives shall be composed of Members chosen every second Year by the People of the several States." U.S. Const. art. I, § 2, cl. 1. The Supreme Court has stated that, "[w]here the state law has made the primary an integral part of the procedure of choice, . . . the right of the elector to have his ballot counted at the primary, is likewise included in the right protected by Article I, Section 2." *United States v. Classic*, 313 U.S. 299, 318 (1941).

Missouri law dictates that "all candidates for elective office shall be nominated at a primary election . . . ." Mo. Rev. Stat. § 115.339. Afterwards, "[t]he person receiving the greatest number of votes at a primary election as a party candidate for an office shall be the only candidate of that party for the office at the general election." Mo. Rev. Stat. § 115.343. Using such a structure for elections renders the primary an "integral part of the election process. *See Morse v. Republican Party of Va.*, 517 U.S. 186, 207 (1996) (describing a primary election as "an 'integral part of the election machinery'" when a state "effectively divided its election into two stages, the first consisting of the selection of party candidates and the second being the general election (quoting *Classic*, 313 U.S. at 318)); *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 211, 226–27 (1986) (treating primary elections that led to the nomination of a party's candidate as integral parts of the election process). The Eighth Circuit held in 1949 that Missouri's then-existing primary election system—which, like the present system, provided that "no one can be elected to office without receiving nomination at a primary election"—was "an integral part of the general election laws of the state for the election of public officers, including Members of Congress." *Klein v. United States*, 176 F.2d 184, 187 (8th Cir. 1949).

Because voters have already cast their ballots in the primaries, doc. 1 ¶ 21, replacing the applicable map for the general election would disenfranchise voters of their votes in the primary election, in clear violation of Article I, Section 2. Voters reassigned to different district would have cast their votes in vain for candidates now connected to other districts, effectively nullifying their votes.

Intervenors' only rebuttal is that Plaintiffs' Article I, Section 2 claim "rest[s] entirely on the premise that HB 1 was lawfully in effect when the August 4, 2026 primary was conducted." Doc. 12-4 at 18. But Plaintiffs' Article I, Section 2 claim does not depend on the legal status of the HB 1 map. Whether or not HB 1 was the governing law during the primary election, voters—including Plaintiffs—voted in primary elections within the congressional districts drawn by HB 1. *See* doc. 1 at ¶¶ 21–22, 24. And they didn't do so of their own accord. Instead, they did so based on the parameters set by Missouri's highest election authority, the Secretary of State. Mo. Const. Art. IV, § 14.

The Court therefore finds that Plaintiffs have a high probability of success on the merits of their claim under Article I, Section 2.

**iii. Equal Protection Clause**

The Fourteenth Amendment prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Included in equal protection is "a citizen['s] . . . right to participate in elections on an equal basis with other citizens in the jurisdiction." *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972) (collecting cases). And "[o]nce the geographical unit for which a representative is to be chosen is designated, all who participate in the election are to have an equal vote . . . wherever their home may be in that geographical unit." *Gray v. Sanders*, 372 U.S. 368, 379 (1963).

The Equal Protection Clause's aegis covers the rights not only of voters but also of candidates: a state cannot "unfairly or unnecessarily burden . . . an individual candidate's equally important interest in the continued availability of political opportunity" because "voters can assert their preferences only through candidates or parties." *Lubin v. Panish*, 415 U.S. 709, 716 (1974). Primary-election procedures, as "'state action within the meaning of the Fourteenth Amendment . . . must be . . . consistent with the Equal Protection Clause." *Bullock v. Carter*, 405 U.S. 134, 140–41 (1972). And when a state "limit[s] the choices available to voters, [it] impairs the voters' ability to express their political preferences," requiring the "[s]tate [to] establish that its classification is necessary to serve a compelling interest." *Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979).

Plaintiffs have demonstrated a sufficient likelihood of success on the merits of their Equal Protection Clause claim. In the August primaries, voters have already cast their ballots and candidates already ran using the HB 1 map. Doc. 1 at ¶¶ 21–24. Replacing the HB 1 map after the primary would sort "hundreds of thousands" of voters into different districts and cause candidates to run in districts covering voters to whom those candidates have not campaigned. *Id.* at ¶¶ 36–37. Using any map other than HB 1's for the general election creates two classes of voters: those who happen to stay in their HB 1 congressional districts, and those who do not. Likewise, it divides candidates between those who retain the same electorate, and those who do not. In both situations, those who "do not" are divested of their fundamental electoral rights.

Switching maps now would deprive many Missourians of their equal vote in the primaries and "impair the voters' ability to express their political preferences" by foisting new candidates on them on the eve of the election. *See Socialist Workers Party*, 440 U.S. at 184. Defendants have not offered an interest to establish the necessity of these arbitrary geographic

classifications, nor do they want to. *See generally* doc. 11. So these classifications burden or outright divest the right to vote—"the essence of a democratic society" and "the heart of representative government"—without justification. *Reynolds v. Sims*, 377 U.S. 533, 555 (1964).

Like their response to Plaintiffs' Article I, Section 2 claim, Intervenors argue that the Equal-Protection claim presumes the lawfulness of the HB 1 map when the primary occurred. That contention is irrelevant to the Equal-Protection claim as it was to the Article I, Section 2 claim. The primary already happened, and the clock cannot be turned back, so Missouri must honor the equal right to vote of all its eligible voters, regardless of geography.

The Court therefore finds that Plaintiffs have shown a high probability of success on the merits of their Equal-Protection-Clause claim. Because the Court finds an adequate likelihood of success for two out of the three claims, the Court turns to the public's interest in temporary relief.

**D. Public interest**

The public interest favors enjoining the Secretary from using the 2022 map for the general election. Disenfranchising voters across the state and denying them their constitutional right to have their primary votes counted significantly harm the public interest. "[I]t is always in the public interest to protect constitutional rights." *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008), *overruled on other grounds*, *Phelps-Roper v. City of Manchester*, 697 F.3d 678 (8th Cir. 2012) (en banc).

On top of that, "[t]he public has an interest in the fair and orderly operation of election[s] . . . ." *Org. for Black Struggle*, 978 F.3d at 609. The Supreme Court "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 423 (2020) (per curiam) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam)); *Merrill v. Milligan*,

142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurring in grant of application for stays) ("When an election is close at hand, the rules of the road must be clear and settled."); *Allen v. Milligan*, 146 S. Ct. 1377, 1381 (2026). In *Purcell v. Gonzalez*, the Supreme Court explained that "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls," a risk that grows "[a]s an election draws closer." *Purcell*, 549 U.S. at 4–5.

Admittedly, courts normally invoke the *Purcell* principle to caution against federal-court intervention in the election decisions of state legislatures, and no federal court has ordered the use of the 2022 map. But *Purcell* does not cut against injunctive relief here. This case presents *Purcell* in reverse, but with no less weight. Injunctive relief "may be inequitable if it is issued shortly before an election, when candidates, election officials, and voters have relied on the rules in place at that time." *Malliotakis v. Williams*, 146 S. Ct. 809, 811 (2026) (Alito, J., concurring in grant of stay). Issuing a TRO here would preserve, rather than disturb, the election rules that candidates, election officials, and voters have relied on. If anything, the public interest concerns that the *Purcell* principle invokes—avoiding voter confusion, disincentivizing voting, and preserving the fair and orderly operation of elections—support issuing a TRO. Missouri already held its primaries using the HB 1 map. Doc. 1 ¶ 21. Using a different map for the general election would wreak havoc on the fairness and orderliness of Missouri's congressional elections, calling into question the candidacy of those nominated in the primaries and the votes of those who voted in the primaries. Widespread voter confusion would inevitably follow. The public interest factor thus weighs in favor of a TRO.

## III. Conclusion

Accordingly, the Court grants Plaintiffs' [2] motion for a temporary restraining order and enjoins, on federal law grounds, Secretary of State Hoskins—as well as his officers, agents, employees, and attorneys—from implementing, using, publishing, distributing, or mandating the use of any congressional district map other than the HB 1 map for the November 3, 2026 general election. The Court finds that a hearing is not necessary because all parties have participated fully through their briefing, and because all parties agree on the material facts. The Court also denies Plaintiffs' [3] Motion to Expedite as moot.

This order remains in effect for 14 days from the date of issuance. The Court will set a preliminary injunction hearing by separate order. Neither Defendants nor Intervenor Defendants asks the Court to set a bond, and having considered the issue, the Court finds a bond unnecessary on these unique facts and circumstances. *See* Fed. R. Civ. P. 65(c). As provided in Rule 65(d)(2), this temporary restraining order binds "only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)."

So ordered this 8th day of September 2026.

SLR. CR

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE

# Supreme Court of Missouri
en banc

SC101805

| | | |
|---|---|---|
| Richard von Glahn,<br><br>Appellant,<br><br>v.<br><br>Denny Hoskins, in His Official Capacity, et al.,<br><br>Respondents. | | ***Issued September 10, 2026*** |

**Judgment of Civil Contempt**

On September 3, 2026, this Court issued its opinion in *Von Glahn v. Hoskins*, No. SC101805, __ S.W.3d __, slip op. at *13-14 (Mo. banc Sep. 3, 2026), in which this Court ordered:

> The secretary and all of those acting in concert with him are restrained and enjoined from implementing, using, or mandating the use of the congressional redistricting in HB 1[[1]] for the November 2026 general election or at any other time thereafter unless and until HB 1 is approved by the voters at the November 2026 general election and takes effect 30 days thereafter.

No higher court with jurisdiction to review this Court's directive has set aside or disturbed this Court's ruling.

[1] House Bill 1.



Appellate Case: 26-2797 Page: 16 Date Filed: 09/15/2026 Entry ID: 5683860

On September 3, Missouri Secretary of State Denny Hoskins complied with the Court's September 3 injunction by sending notice to local election authorities to use the 2022 congressional district map, but, on September 8, the secretary reversed course. The secretary sent an e-mail to the same local election authorities directing them to utilize the HB 1 congressional district map pursuant to a temporary restraining order entered by the United States District Court for the Eastern District of Missouri. Later that day, Richard von Glahn filed an emergency motion for contempt alleging the secretary's September 8 e-mail violated this Court's order. In response, this Court entered an order directing the secretary to show cause why he should not be held in contempt for violating this Court's injunction.

To establish a prima facie case for civil contempt, the movant must establish: "(1) that the contemnor has an obligation to … perform an action as required by the court's judgment, and (2) that the contemnor failed to meet this obligation." *Davis v. Davis*, 475 S.W.3d 177, 182 (Mo. App. 2015); *see also Landewee v. Landewee*, 515 S.W.3d 691, 696 (Mo. banc 2017) (citing *Davis*, 475 S.W.3d at 182). "Once a prima facie case is established, the burden then shifts to contemnor to prove his or her inability to … perform an action and that non-compliance was not an act of contumacy." *Brown v. Brown*, 680 S.W.3d 507, 524 (Mo. App. 2023) (internal quotation omitted). The purpose of civil contempt "is to coerce compliance with the relief granted." *State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573, 578 (Mo. banc 1994).

This Court's order enjoined the secretary "from implementing, using, or mandating the use of the congressional redistricting in HB 1 for the November 2026 general election …." *Von Glahn*, No. SC101805, __ S.W.3d __, slip op. at *13. His e-mail directive to local election authorities mandating the use of the HB 1 map, therefore, is contrary to this Court's order

enjoining him from implementing, using, or mandating the use of HB 1 for the November 2026 general election.

In response to the show cause order, the secretary did not deny or dispute that his e-mail to the local election authorities conflicts with this Court's order enjoining use of the congressional redistricting in HB 1. Instead, he insisted he was no longer required to comply with this Court's order or was incapable of doing so because of the federal district court's temporary restraining order. On September 10, 2026, after the secretary filed his response to the show cause order, the Supreme Court of the United States issued a stay of the federal district court's temporary restraining order.

In light of this stay, the secretary's response does not justify his failure to comply with this Court's injunction. Regardless, the federal district court's temporary restraining order never rendered the secretary incapable of complying with this Court's order and certainly did not relieve him of any obligation to comply with an order of this Court.[2]

The federal district court's temporary restraining order "enjoin[ed], on federal law grounds, Secretary of State Hoskins – as well as his officers, agents, employees, and attorneys – from implementing, using, publishing, distributing, or mandating the use of any congressional district map other than the HB 1 map for the November 3, 2026 general election." *Onder v. Missouri*, No. 26-cv-01424, slip op. at 13 (E.D. Mo. Sep. 8, 2026). Despite the secretary's assertions to the contrary, such language did not require him to order local election authorities to

[2] It should be noted the secretary consented to the request for a temporary restraining order from the federal district court and advocated for the federal district court's intervention in spite of this Court's clear directive enjoining him from implementing, using, or mandating the use of the congressional redistricting in HB 1 for the November 2026 general election. Accordingly, any assertion that he was not attempting to defy this Court's order but merely trying to comply with a federal court order is disingenuous.

implement the HB 1 map for the 2026 general election. In fact, the temporary restraining order did not require the secretary to affirmatively act at all. Rather, it simply enjoined him from implementing, using, publishing, distributing, or mandating the use of any congressional district map other than the HB 1 map for the November 3, 2026, general election for 14 days from the date of the order. The secretary offers no explanation as to why he could not comply with both this Court's order and the federal district court's temporary restraining order by simply telling the local election authorities to take no action until further clarification was received from the courts.

The secretary, therefore, has failed to meet his burden of establishing his failure to comply with this Court's order was not an act of contumacy. This Court finds the secretary was in contempt of its September 3, 2026, order enjoining him from implementing, using, or mandating the use of the congressional redistricting in HB 1 for the November 2026 general election.

At all times, however, a civil contemnor has the power to purge him or herself of any contempt by complying with the order of the court. *See Chassaing*, 887 S.W.2d at 578. The Court finds the secretary has since corrected his contumacious conduct by informing local election authorities the only governing order in effect is from this Court and directing local election authorities to use the 2022 congressional district map. The secretary, therefore, has purged himself of said contempt.

**Conclusion**

Accordingly, the Court hereby finds Missouri Secretary of State Denny Hoskins was in civil contempt and, pursuant to section 476.120, RSMo 2016, he could be subject to punishment. Finding, however, that the secretary has purged himself of said contempt, the Court hereby enters no order of commitment and imposes no fine in relation to its contempt finding.

W. Brent Powell
Chief Justice

All concur.

**STATE OF MISSOURI – SCT.:**

*I, BETSY LEDGERWOOD, Clerk of the Supreme Court of Missouri, do hereby certify that the foregoing is a true copy of the order of said court, entered on the 10th day of September, 2026, as fully as the same appears of record in my office.*

**IN TESTIMONY WHEREOF,** ***I have hereunto set my hand and affixed the seal of said Supreme Court. Done at office in the City of Jefferson, State aforesaid, this 10th day of September, 2026.***

Betsy Ledgerwood
______________________________**, Clerk**

______________________________**, Deputy Clerk**



Appellate Case: 26-2797 Page: 21 Date Filed: 09/15/2026 Entry ID: 5683860