**No. 26-2797**
**No. 26-2827**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

---

Congressman Robert Onder, *et al.*

*Appellees*,

v.

State of Missouri and Denny Hoskins,
in his official capacity as Missouri Secretary of State

*Appellees*,

Richard Von Glahn and People Not Politicians

*Appellants*.

---

Appeal from U.S. District Court for the Eastern District of Missouri – St. Louis
(4:26-cv-01424-SRC)

---

# BRIEF OF *AMICI CURIAE* CAMPAIGN LEGAL CENTER, AMERICAN CIVIL LIBERTIES UNION OF MISSOURI FOUNDATION, AND AMERICAL CIVIL LIBERTIES UNION FOUNDATION IN SUPPORT OF APPELLANTS

---


Gillian R. Wilcox
Jason Orr
Jonathan D. Schmid
Kristin M. Mulvey
ACLU OF MISSOURI FOUNDATION
406 W. 34th Street, Suite 420
Kansas City, MO 64111

Ming Cheung
Sophia Lin Lakin
Dayton Campbell-Harris
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street
New York, NY 10004

Mark P. Gaber
Aseem Mulji
Simone Leeper
Benjamin Phillips
Isaac DeSanto
CAMPAIGN LEGAL CENTER
1101 14th Street NW, Suite 400
Washington, DC 20005

Annabelle E. Harless
CAMPAIGN LEGAL CENTER
55 W. Monroe Street, Suite 1925
Chicago, IL 60603

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *amici curiae* each state that they are nonprofit organizations. They do not have parent corporations and are not owned in whole or in part by any publicly held corporation.

*/s/ Mark P. Gaber*
Mark P. Gaber
Counsel for *Amici*



Appellate Case: 26-2797 Page: 2 Date Filed: 09/15/2026 Entry ID: 5684052

## TABLE OF CONTENTS

STATEMENT OF INTERESTS OF *AMICI CURIAE* ............................................1

SUMMARY OF ARGUMENT ........................................................................3

ARGUMENT ...............................................................................................5

I. The Court's expedited review of this appeal while the TRO has been stayed by the Supreme Court and the election is ongoing is causing voter confusion. ..........................................................................................5

II. The district court's TRO violated federal law by leaving Missouri with *no* congressional map. ...........................................................................11

III. Only a three-judge district court could impose a remedial map. .............13

IV. The Elections Clause cross-appeal lacks merit. ......................................20

V. The TRO violates Purcell and this Court's affirmance would also. ........21

VI. The equities weigh heavily against injunctive relief. ...............................25

CONCLUSION .........................................................................................26

CERTIFICATE OF COMPLIANCE ...........................................................28

CERTIFICATE OF SERVICE ...................................................................28

## TABLE OF AUTHORITIES

**Cases** **Pages**


*Abbott v. League of United Latin American Citizens*, 146 S. Ct. 418 (2025)......5, 22

*Abbott v. Perez*, 585 U.S. 579 (2018)......17

*Allen v. Milligan*, 599 U.S. 1 (2023)......1

*Allen v. Milligan*, 608 U.S. 511 (2026)......22

*Arizona State Legislature v. Arizona Independent Redistricting Commission*, 576 U.S. 787 (2015)......1, 17

*Armour v. Ohio*, 925 F.2d 987 (6th Cir. 1991)......14

*Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015)......13

*Bost v. Illinois State Board of Elections*, 607 U.S. 71 (2026)......5, 10

*Branch v. Smith*, 538 U.S. 254 (2003)......11

*Buscaglia v. District Court of San Juan*, 145 F.2d 274 (1st Cir. 1944)......25

*Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010)......1

*Coleman v. Ashcroft*, 696 S.W.3d 347 (Mo. 2024)......2

*Department of Commerce v. New York*, 588 U.S. 752 (2019)......1

*Deposit Guaranty National Bank, Jackson v. Roper*, 445 U.S. 326 (1980)......21

*Gill v. Whitford*, 585 U.S. 48 (2018)......1

*Growe v. Emison*, 507 U.S. 25 (1993)......22

*Hoskins v. Von Glahn*, No. 26A304, 2026 WL 2647016 (U.S. 2026)......3, 7

*Kalson v. Paterson*, 542 F.3d 281 (2d Cir. 2008)......14, 18

*Luther v. Hoskins*, 730 S.W.3d 567 (Mo. 2026)......3

*Maggard v. State*, 733 S.W.3d 411 (Mo. 2026) ....................................................2

*Meghrig v. KFC Western, Inc.*, 516 U.S. 479 (1996).......................................12, 19

*Missouri State Conference of the National Association for the Advancement of Colored People v. Ferguson-Florissant School District*, 894 F.3d 924 (8th Cir. 2018)..........................................................................................2

*Missouri State Conference of the National Association for the Advancement of Colored People v. State*, 730 S.W.3d 550 (Mo. 2026).......................................2

*Moore v. Harper*, 600 U.S. 1 (2023) ...........................................................1, 20, 21

*No Bans on Choice v. Ashcroft*, 638 S.W.3d 484 (Mo. 2022)....................................2

*People Not Politicians v. Onder*, No. 26A326, 2026 WL 2659767 (U.S. Sep. 10, 2026) ..................................................................................................3, 6, 7

*Powers Gardner v. Henderson*, No. 2:26-CV-00084-RJS-JCB, 2026 WL 496448 (D. Utah Feb. 23, 2026) ....................................................................................16

*Reynolds v. Sims*, 377 U.S. 533 (1964) ..............................................................1, 23

*Rucho v. Common Cause*, 588 U.S. 684 (2019) ..........................................................1

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010).......................................................................................17

*Shapiro v. McManus*, 577 U.S. 39 (2015)...............................................................14

*Smith v. Allwright*, 321 U.S. 649 (1944) ......................................................................1

*State v. League of Women Voters of Missouri*, 730 S.W.3d 591 (Mo. 2026).............2

*State ex rel. Fitz-James v. Bailey*, 670 S.W.3d 1 (Mo. 2023) ...................................2

*Thornburg v. Gingles*, 478 U.S. 30 (1986)...................................................................1

*United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950) ...........................................10

*United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483 (2001) .............13

*Von Glahn v. Hoskins*, No. SC101805, 2026 WL 2628846 (Mo. Sep. 3, 2026) ........................................3, 12, 21, 23, 24

*Watson v. Republican National Committee*, 146 S. Ct. 2165 (2026) ........................1

*Wise v. State*, 732 S.W.3d 827 (Mo. 2026)........................................2, 3

**Statutes**

2 U.S.C. § 2c ........................................4, 11, 13, 25

28 U.S.C. § 1253........................................14

28 U.S.C. § 2284........................................16

28 U.S.C. § 2284(a) ........................................14

28 U.S.C. § 2284(b)(1)........................................14, 15, 18

28 U.S.C. § 2284(b)(3)........................................15, 19

Mo. Rev. Stat. § 115.914(1) ........................................8

**Rules**

Fed. R. App. P. 2........................................11

S. Ct. R. 13(1) ........................................6

**Constitutional Provisions**

Mo. Const. art. III, § 49........................................21

Mo. Const. art. III, § 52(a) ........................................21

Mo. Const. art. III, § 52(b)........................................21

U.S. Const. amend. XIV ........................................15

U.S. Const. art. I, § 2........................................15

U.S. Const. art. I, § 4, cl. 1........................................11, 15, 20



Appellate Case: 26-2797 Page: 6 Date Filed: 09/15/2026 Entry ID: 5684052

**Other Authorities**

Jack Harvel, *As top Missouri Republican concede, Kehoe remains committed to gerrymandered map*, Kansas City Star (Sep. 11, 2026), https://www.kansascity.com/news/politics-government/ article317201703.html. ....... 8

This Week in Missouri Politics, *This Week in Missouri Politics – September 13, 2026* (YouTube, Sep. 13, 2026), https://www.youtube.com/watch?v=PXrw1iXfzWg. ....... 9

## STATEMENT OF INTERESTS OF *AMICI CURIAE*[1]

Campaign Legal Center ("CLC") is a nonpartisan, nonprofit organization dedicated to securing free and fair elections for all voters. CLC regularly litigates in federal and state courts on voting rights and redistricting matters, including as counsel for parties or *amici curiae* in *Watson v. Republican National Committee*, 146 S. Ct. 2165 (2026), *Moore v. Harper*, 600 U.S. 1 (2023), *Rucho v. Common Cause*, 588 U.S. 684 (2019), *Gill v. Whitford*, 585 U.S. 48 (2018), and *Arizona State Legislature v. Arizona Independent Redistricting Commission*, 576 U.S. 787 (2015).

The American Civil Liberties Union ("ACLU") is a nationwide, non-profit, non-partisan organization with more than 1.7 million members, founded in 1920 and dedicated to the principles of liberty and equality enshrined in the Constitution. In support of those principles, the ACLU has appeared as counsel or *amicus curiae* in numerous cases involving electoral democracy or redistricting, including *Smith v. Allwright*, 321 U.S. 649 (1944), *Reynolds v. Sims*, 377 U.S. 533 (1964), *Thornburg v. Gingles*, 478 U.S. 30 (1986), *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), *Department of Commerce v. New York*, 588 U.S. 752 (2019), *Allen v. Milligan*, 599 U.S. 1 (2023), and *Moore v. Harper*, 600 U.S. 1 (2023). The ACLU

[1] No counsel for a party authored this brief in whole or in part, and no party, party's counsel, or person or entity other than amici or their counsel contributed money that was intended to fund the preparation or submission of this brief.



Appellate Case: 26-2797 Page: 8 Date Filed: 09/15/2026 Entry ID: 5684052

has an interest in promoting free and fair elections and fair districting, including specifically in Missouri, having served as counsel in *Wise v. State*, 732 S.W.3d 827 (Mo. 2026), and *Missouri State Conference of the National Association for the Advancement of Colored People v. Ferguson-Florissant School District*, 894 F.3d 924 (8th Cir. 2018); both cases sought to address the harmful impacts of the challenged districts on minority voters in Missouri.

The American Civil Liberties Union of Missouri ("ACLU-MO") is the statewide affiliate of the ACLU, with over 20,000 members and a longstanding interest in and history of protecting the constitutional rights of all Missourians. Through direct representation or on behalf of *amicus curiae*, the ACLU-MO regularly engages in litigation to protect rights related to voting, including the right to referendum. These cases include, but are not limited to *Maggard v. State*, 733 S.W.3d 411 (Mo. 2026); *State v. League of Women Voters of Missouri*, 730 S.W.3d 591 (Mo. 2026); *Missouri State Conference of the National Association for the Advancement of Colored People v. State*, 730 S.W.3d 550 (Mo. 2026); *Coleman v. Ashcroft*, 696 S.W.3d 347 (Mo. 2024); *State ex rel. Fitz-James v. Bailey*, 670 S.W.3d 1 (Mo. 2023); *No Bans on Choice v. Ashcroft*, 638 S.W.3d 484 (Mo. 2022), and *Missouri State Conference of the National Association for the Advancement of Colored People v. Ferguson-Florissant School District*, 894 F.3d 924 (8th Cir. 2018).

CLC, ACLU, and ACLU-MO participated as *amici* at the United States Supreme Court in *Hoskins v. Von Glahn*, No. 26A304, 2026 WL 2647016 (U.S. Sep. 8, 2026) and *People Not Politicians v. Onder*, No. 26A326, 2026 WL 2659767 (U.S. Sep. 10, 2026). They also submitted *amicus* briefs in *Von Glahn v. Hoskins*, No. SC101805, 2026 WL 2628846 (Mo. Sep. 3, 2026), and in *Luther v. Hoskins*, 730 S.W.3d 567 (Mo. 2026), and were counsel for the plaintiffs in *Wise v. State*, 732 S.W.3d 827 (Mo. 2026). Each has an interest in ensuring Missourians the opportunity to vote in lawful congressional districts and in the sound interpretation of federal law governing redistricting and redistricting litigation.[2]

## SUMMARY OF ARGUMENT

After a week and half of chaos caused by Secretary of State Denny Hoskins, it has finally been settled: the November 2026 congressional elections in Missouri will take place under the 2022 map. The Missouri Supreme Court has spoken on the relevant matters of state law, and the United States Supreme Court has acted—twice—on matters of federal law. The temporary restraining order ("TRO") at issue in this appeal was stayed by the Supreme Court (with no noted dissents), and at any rate, it will soon expire rendering the appeal moot. This Court need take no further action now. However, should this Court proceed with the present expedited review of the merits, there is only one justifiable outcome: vacatur of the district court's

[2] All parties consent to the filing of this brief.

erroneous TRO.

Any other outcome would be inconsistent with the *Purcell* principle. Indeed, though it will have no operative effect because of the Supreme Court's ongoing stay, this Court's review is already sowing confusion about whether there is still a path for a different map to be used this November. There is not. This Court must not take any actions suggesting otherwise.

The district court's TRO suffers from a host of fatal defects. Critically, it runs counter to federal law, 2 U.S.C. § 2c, by leaving Missouri without *any* congressional map. Moreover, the single district court judge lacked authority to issue the TRO, which was in effect an injunction. The district court should have taken steps to "immediately" convene a three-judge court, steps the district court *still* has not taken, and which would have obviated the appeal to this Court.

The district court correctly rejected Plaintiffs' Elections Clause arguments, and their cross-appeal on that basis is both procedurally improper and legally incorrect. The Missouri Supreme Court's decision *enforced* the constitutionally prescribed redistricting framework, and Plaintiffs' Election Clause arguments would upend and violate it.

The TRO is also foreclosed by *Purcell*, as it interferes in Missouri's ongoing election less than two months before the general election. The TRO should be vacated on that basis alone, and any action otherwise would itself be contrary to

*Purcell*. Furthermore, the equities do not support the TRO because even if Plaintiffs' claims had merit, that would still not support imposing a map on Missouri voters that is not and has never been the law. The TRO must be vacated.

## ARGUMENT

### I. The Court's expedited review of this appeal while the TRO has been stayed by the Supreme Court and the election is ongoing is causing voter confusion.

This Court's *sua sponte* decision to expedite this appeal while the TRO is stayed by the Supreme Court and the election is underway has caused public confusion: It is creating the misimpression that this appeal could still be resolved in a manner that somehow requires Missouri to use the legally void HB 1 in November 2026. As the Supreme Court has repeatedly explained, "lower federal courts should ordinarily not alter the election rules on the eve of an election." *Abbott v. League of United Latin Am. Citizens*, 146 S. Ct. 418, 419 (2025) (quoting *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020) (per curiam)). "Such late-breaking, court-ordered rule changes can 'result in voter confusion and consequent incentive to remain away from the polls,' and thus undermine the '[c]onfidence in the integrity of our electoral processes . . . essential to the functioning of our participatory democracy.'" *Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 80 (2026) (quoting *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) (per curiam)). This Court should remedy public confusion, adhere to the Supreme Court's



Appellate Case: 26-2797 Page: 12 Date Filed: 09/15/2026 Entry ID: 5684052

articulation of the *Purcell* principle, and vacate the district court's TRO order.

The Supreme Court has stayed the TRO and that stay remains in effect until the Supreme Court either (1) denies a petition for a writ of certiorari or (2) enters its ultimate judgment on the merits after granting such a petition. *People Not Politicians v. Onder*, No. 26A326, 2026 WL 2659767, at *1 (U.S. Sep. 10, 2026) (mem.). The Supreme Court's disposition of a petition for a writ of certiorari is not going to happen until well after the November 2026 election. A petition would not even be due until 90 days after this Court's judgment. *See* S. Ct. R. 13(1). The filing of a response, reply, and the Supreme Court's conference calendar add months more. If the Supreme Court grants review, it might not hear the case until its October 2027 Term, with a decision as late as June 2028. The Supreme Court's order staying the TRO ensures that the Missouri Supreme Court's injunction compelling the use of the 2022 map will govern the November 2026 election.[3]

The Supreme Court was no doubt aware of the effect of its staying the TRO. The Court has repeatedly and unmistakably made clear that it disapproves of federal courts issuing confusing and conflicting orders that undermine voter confidence amid an election. The Supreme Court's order staying the TRO should have been the

[3] Appellant von Glahn plainly has Article III standing to appeal a federal court order that results in him, as a Missouri voter, residing in no congressional district whatsoever. That causes him concrete, particularized, and imminent injury to his voting rights, is traceable to the Secretary's compliance with the TRO, and redressable by a decision on appeal vacating or reversing the TRO.



Appellate Case: 26-2797 Page: 13 Date Filed: 09/15/2026 Entry ID: 5684052

last word from federal courts on the topic of Missouri's congressional map until after the November election. There is no other message to take from what is now *two* Supreme Court orders on this topic. *See Hoskins v. Von Glahn*, No. 26A304, 2026 WL 2647016, at *1 (U.S. Sep. 8, 2026) (Kavanaugh, J., in chambers) (denying Secretary's application to stay Missouri Supreme Court's injunction mandating use of 2022 map); *People Not Politicians v. Onder*, No. 26A326, 2026 WL 2659767, at *1 (U.S. Sep. 10, 2026) (mem.) (granting People Not Politicians' application to stay district court's TRO).

The Supreme Court has unmistakably instructed all parties to slow down, but this Court's expedited process directs them to accelerate. The expedited appeal ordered by this Court has suspended the ordinary appellate rules, in which the parties would have reasonable time to review the record and consider and present their arguments, and fast-tracked this appeal into a one-week period. It has bypassed the rules that provide staggered briefing so that the parties can engage with and join the issues in successive briefs. Instead, the Court ordered, on its own motion, that simultaneous briefs be filed in five days' time with oral argument to occur two days later, on September 17, 2026. That date is three days *after* the Secretary's deadline, communicated to the Supreme Court, for fulfilling the state's obligations to comply with the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), and just two days before the September 19, 2026 deadline to mail UOCAVA ballots, *see*

Mo. Rev. Stat. § 115.914(1). Presumably the Court's point in ordering this aggressive and unusual schedule is that it intends to issue an expedited decision, perhaps as soon as this week.

But this acceleration of the appeal process serves no apparent purpose. The Supreme Court has spoken—twice. Lower federal courts are not to interfere with Missouri's congressional election, which is now underway. Indeed, the Supreme Court's stay order indicates not only that the district court erred in granting the TRO, but that this Court likewise erred in declining to stay the TRO.

On the other side of the ledger, political actors, including Secretary Hoskins, have now used this Court's *sua sponte* setting of an expedited schedule to cast doubt on the districts to be used in November which has multiplied public confusion, the very thing *Purcell* seeks to avoid. Missouri Governor Mike Kehoe has publicly stated that the Secretary's most recent guidance to election officials directing them to comply with the Missouri Supreme Court's injunction to use the 2022 map was premature because the Secretary "was unaware that the Eighth Circuit was going to take the action that they did."[4] Governor Kehoe stated that the 2025 map, enjoined by the Missouri Supreme Court, "is still a possible map" for November because of

[4] Jack Harvel, *As top Missouri Republican concede, Kehoe remains committed to gerrymandered map*, Kan. City Star (Sep. 11, 2026), https://www.kansascity.com/news/politics-government/article317201703.html.

this Court's order setting this expedited appellate schedule. *Id.*

Secretary Hoskins has now echoed the Governor's statements regarding this Court's actions, characterizing this Court's expedited treatment of this appeal as a "hand com[ing] up out of the grave" which means that "Rick Bratten could still be going to Congress."[5] That is a colorful description for a *Purcell* violation.

As far as the November 2026 election is concerned, the only two possible outcomes of this Court's expedited appellate review are (1) an order from this Court vacating or reversing the TRO or (2) an order from this Court affirming the TRO. The latter order would have *no legal effect* because of the Supreme Court's stay that remains in place regardless of this Court's judgment. Nothing this Court is empowered to do with this appeal will alter the legal status quo for the November 2026 election. Moreover, any decision issued by this Court would likely be rendered moot (and subject to vacatur) when the 14-day TRO expires on September 22, 2026, and certainly once the November election has been held, both of which are likely to

---

[5] *See, e.g.*, This Week in Missouri Politics, *This Week in Missouri Politics – September 13, 2026*, at 7:15-55 (YouTube, Sep. 13, 2026), https://www.youtube.com/watch?v=PXrw1iXfzWg (Interviewer: "Going forward, there's a hearing in the Eighth District [sic] United States Court of Appeals. So I guess just when you think the situation is over, a hand comes up out of the grave and 'not so fast.' There's a hearing next week so I guess theoretically Rick Brattin could still be going to Congress." Sec. Hoskins: "That's right . . . The eighth district federal judicial court [sic] has decided to have hearings, oral arguments, on that next week.").

occur during the appeals process. *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950); *see* App.27-28; R.Doc.2 at 1-2 (requesting relief only as to the November 2026 election). No purpose, therefore, is served by the Court's emergency treatment of the matter and seeming intention to issue yet another federal court decision amid Missouri's ongoing election process.

The fast-tracking of this case despite the stay granted by the Supreme Court has exacerbated the confusion and chaos caused first by the Secretary of State's purposeful campaign to delay and evade the Missouri Constitution's referendum requirements, and second by the failure of the district court to abide by the Supreme Court's *Purcell* doctrine. Another late-breaking decision from this Court, particularly one that contradicts the Missouri Supreme Court's injunction—an injunction the Supreme Court left undisturbed—would plainly depart from the Supreme Court's *Purcell* precedents. It would "'result in voter confusion and consequent incentive to remain away from the polls,' and thus undermine the '[c]onfidence in the integrity of our electoral processes . . . essential to the functioning of our participatory democracy.'" *Bost*, 607 U.S. at 80 (quoting *Purcell*, 549 U.S. at 4-5).

This Court should vacate its order setting this case for expedited briefing and allow Missouri's congressional election to occur without any more federal court interference or confusion. Given the combination of the impending election and the

Supreme Court's stay, there is no "good cause" for the Court's decision to suspend the Rules of Appellate Procedure and expedite this case, particularly not on its own motion. *See* Fed. R. App. P. 2 (permitting Court to suspend rules "to expedite its decision or for other good cause"). Because the only potential consequence of this Court's emergency treatment of this appeal is voter confusion, the Court should reverse course and heed the Supreme Court's *Purcell* principle.

## II. The district court's TRO violated federal law by leaving Missouri with *no* congressional map.

The district court's TRO violated federal law by leaving Missouri with *no* possible congressional map under which to conduct the November 2026 election. Pursuant to its authority under the Constitution's Elections Clause, U.S. Const. art. I, § 4, cl. 1, Congress requires states to adopt single-member districts from which to elect Representatives. *See* 2 U.S.C. § 2c (requiring that "there shall be established by law a number of districts equal to the number of Representatives to which such State is so entitled, and Representatives shall be elected only from districts so established"). The Supreme Court has held that Section 2c obligates both state and federal courts to ensure that states have *a* map in place for a federal election. *See Branch v. Smith*, 538 U.S. 254, 272 (2003).

The district court's TRO left Missouri with *no congressional map whatsoever* just days before the deadline to mail UOCAVA ballots and less than two months before election day. On September 3, 2026, the Missouri Supreme Court ruled that

HB 1, the 2025 map, is "not the law and has never been the law," held that "[t]he congressional redistricting the General Assembly established in 2022 remains in full force and effect for the November 2026 general election," and enjoined the Secretary "and all those acting in concert with him" from

> implementing, using, or mandating the use of the congressional redistricting in HB 1 for the November 2026 general election or at any other time thereafter unless and until HB 1 is approved by the voters at the November 2026 general election and takes effect 30 days thereafter. Mo. Const. art. XII, sec. 2(b).

*Von Glahn v. Hoskins*, No. SC101805, 2026 WL 2628846, at *1 (Mo. Sep. 3, 2026).

Five days later, the district court entered its TRO restraining the Secretary from "implementing . . . any congressional map other than the HB 1 map for the November 3, 2026 general election." App.132; R.Doc.35 at 13; Add.13. Because it was a restraining order, and not an affirmative injunction, the TRO did not (and could not) *compel* the Secretary's use of HB 1. *See Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996) (explaining that a "mandatory injunction" requires a "party to take action" while a "prohibitory injunction [] *restrains* a responsible party") (citation modified) (emphasis added). It did not, therefore, enjoin the Secretary from complying with the Missouri Supreme Court's injunction prohibiting implementation of HB 1. Nor did it purport to. And, as explained *infra* Part III, the district court, acting as a single district judge, would have had no authority to impose HB 1 as an affirmative injunction even if it wished to.

Because the Secretary was already enjoined from implementing HB 1 by the Missouri Supreme Court, the district court's TRO enjoining him from implementing any *other* map left Missouri with no options for holding congressional elections this year. That violated federal law. *See* 2 U.S.C. § 2c. The district court has no power to issue equitable orders that violate federal law. "The power of federal courts of equity to enjoin unlawful . . . action is subject to express and implied statutory limitations." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). "Courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law." *Id.* at 327-28 (citation omitted); *see also United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 497 (2001) ("[A] court sitting in equity cannot 'ignore the judgment of Congress, deliberately expressed in legislation.'") (citation omitted).

Even if the district court were correct in its likelihood of success on the merits analysis, injunctive relief is not automatic and plainly a TRO that leaves the State, on the eve of the election, with no congressional map at all is an improper and unlawful remedy. Because the district court erred as a matter of law by granting a TRO inconsistent with 2 U.S.C. § 2c and *Purcell*, the TRO must be vacated.

## III. Only a three-judge district court could impose a remedial map.

Even if the district court wished to issue a mandatory injunction compelling the Secretary to use HB 1 (which was the Secretary's erroneous interpretation of the

TRO), it lacked jurisdiction to do so because only a three-judge court could issue a preliminary injunction of that nature. When an action is filed challenging the constitutionality of a congressional map, a "district court of three judges shall be convened." 28 U.S.C. § 2284(a). This mandatory language "creates an obligation impervious to judicial discretion." *Shapiro v. McManus*, 577 U.S. 39, 43 (2015) (citation omitted). Though the statute mentions a "request" for a three-judge court being "fil[ed]," the mandatory language in the statute makes the convening of a three-judge court a "jurisdictional requirement once it becomes clear" there is a plausible constitutional claim satisfying the conditions set forth in Section 2284(a). *See Armour v. Ohio*, 925 F.2d 987, 989 (6th Cir. 1991); *see also Kalson v. Paterson*, 542 F.3d 281, 286-87 (2d Cir. 2008) (holding that Section 2284 is jurisdictional and a three-judge court must be convened even in the absence of a party's request). Whether one or three federal judges must hear a case (and thus whether this Court has mandatory appellate review) is not a decision left to the plaintiffs' prerogative.[6] Thus, upon determining that the action challenges the constitutionality of a congressional map, the single district judge must "immediately notify the chief judge

---

[6] This is plain from the corresponding statute establishing appellate jurisdiction. *See* 28 U.S.C. § 1253 (providing for direct review in the Supreme Court of cases "required by any Act of Congress to be heard and determined by a district court of three judges").

of the circuit" who then must take steps to empanel two other judges. 28 U.S.C. § 2284(b)(1).

A single judge is limited in what actions can be taken on his or her own in cases required to be adjudicated by three-judge courts. Upon "a specific finding, based on evidence submitted, that specified irreparable damage will result if the order is not granted," the single judge may issue a TRO. 28 U.S.C. § 2284(b)(3). But the single judge may *not* "hear and determine any application for a preliminary or permanent injunction." *Id.* Furthermore, "[a]ny action of a single judge," including issuance of a TRO, "may be reviewed by the full court at any time." *Id.*

There is no question that Plaintiffs' complaint seeks to enjoin the use of Missouri's legally operative congressional map—the 2022 map—based on claims that its use in the 2026 general election would violate the federal Constitution. *See, e.g.*, App.9-25; R.Doc.1 ¶¶ 50-109 (alleging that implementing the 2022 congressional map violates U.S. Const. art. I, § 4, cl. 1; art. I, § 2 & amend. XIV); App.25-26; R.Doc.1 at Prayer for Relief (seeking declaration that "failure to use the HB1 Congressional maps—as ordered by *von Glahn*—is unconstitutional"). Once it was clear Plaintiffs challenged the constitutionality of congressional apportionment, a panel was required.

In its order denying a stay of its TRO, the district court reasoned that Section 2284 did not apply because plaintiffs "challenge only that the Secretary of State can,

consistent with the United States Constitution, *switch congressional district maps* between the primary and general election." App.154; R.Doc.49 at 1. "Even if Section 2284(a) applied," the district court continued, Section 2284(b)(3) permits a single judge to issue a TRO and "[t]he Court's TRO remains in effect for fourteen days from issuance, *and the Court may extend it.*" App.154-55; R.Doc.49 at 1-2 (emphasis added). The district court is wrong on the first point, and its second point illustrates why there is appellate jurisdiction over its TRO.

First, the district court cannot recast Plaintiffs' complaint as merely being about the *timing* of a congressional map's implementation. Plaintiffs allege that it would violate the Constitution to use the congressional districts as apportioned under current Missouri law in the November 2026 election. They contend that differently apportioned congressional districts must instead be used to comply with the Constitution. That is an action "challenging the constitutionality of the apportionment of congressional districts." 28 U.S.C. § 2284; *see also, e.g.*, *Powers Gardner v. Henderson*, No. 2:26-CV-00084-RJS-JCB, 2026 WL 496448, at *1 (D. Utah Feb. 23, 2026) (three-judge court empaneled to hear constitutional challenge to means by which congressional map was imposed, not constitutionality of actual district configuration). Plaintiffs' lawsuit alleges that Missouri's congressional districts for the November 2026 general election were unconstitutionally apportioned because their configuration did not match that of the map used in the

primary election. The district court's "relabeling" of Plaintiffs' constitutional challenge to Missouri's congressional map to evade Section 2284 is "a sure sign that its . . . distinction is made-to-order." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399 (2010). Section 2284's operation cannot be evaded by semantics.[7]

Second, the district court's announcement that it may "extend" its TRO beyond 14 days illustrates how the order is not in effect a TRO, but rather a prohibitory *preliminary injunction* that under the exigent circumstances aims to accord finality for the only election at issue in Plaintiffs' complaint. Ballots are being mailed September 19—less than 14 days away from the date the district court issued its order. A TRO that operates to finally decide the parties' rights by *allowing Missouri no congressional map at all*, is plainly reviewable. *See Abbott v. Perez*, 585 U.S. 579, 595 (2018) (holding that orders with "practical effect" of injunction are

---

[7] The Supreme Court has not adopted the district court's cramped view of Section 2284. In *Arizona State Legislature v. Arizona Independent Redistricting Commission*, the Court affirmed, on its mandatory appeal docket, a decision of a three-judge court holding that the Arizona Constitution did not violate the U.S. Constitution's Elections Clause by empowering an independent redistricting commission, rather than the legislative body, to conduct congressional redistricting. 576 U.S. 787 (2015). That is, the Court entertained an appeal under 28 U.S.C. § 1253 from a three-judge court decision about whether the process by which Arizona drew its congressional districts—not the districts themselves—was constitutional. The Court had to assure itself of its appellate jurisdiction.

reviewable to avoid "manipulation" of appellate review by a "district court [that] was careful about its terminology").

The district court failed to take any steps to convene a three-judge court as it was "immediately" required to do. 28 U.S.C. § 2284(b)(1). Plaintiffs' failure to request a three-judge court did not eliminate the district court's jurisdictional obligation, once the statutory conditions were satisfied, to comply with Section 2284(b)(1)'s requirement that it act "immediately," particularly when Intervenors did raise the issue. *See, e.g.*, *Kalson*, 542 F.3d at 286-87. Yet the district court did not, and still has not, done so.

The nature of the challenge was apparent to the district court from the start—it ordered expedited briefing on September 5 (one day after the complaint was filed) as to other jurisdictional hurdles. *See* App.107; R.Doc.29 at 1. The district court was also aware of the necessity for a three-judge court because Intervenors raised the issue. App.73; R.Doc.12-4 at 19. Rather than notifying the Chief Judge of the Eighth Circuit to request the appointment of two additional judges, the district court waited three more days and then issued its TRO less than half an hour after Justice Kavanaugh denied the Secretary's application to stay the state supreme court's order.

Chief Judge Colloton surely would have acted with haste, given the urgent nature of this case, to appoint two additional judges to provide the necessary complement of three judges to adjudicate Plaintiffs' request for relief. All three

judges could have participated in assessing the propriety of Plaintiffs' request for relief. By failing to notify the Chief Judge of this Court of the pendency of a constitutional challenge to Missouri's congressional map and instead by proceeding to issue a TRO, the district court improperly insulated its TRO from dissolution by the three-judge court as Section 2284 contemplates. *See* 28 U.S.C. § 2284(b)(3) ("Any action of a single judge may be reviewed by the full court at any time before final judgment.").

If, as the Secretary contends, the TRO affirmatively ordered him to implement HB 1, the district court exceeded its authority under Section 2284 to issue a TRO. A TRO that compels affirmative action is not a TRO at all, but rather a preliminary injunction. *See Meghrig*, 516 U.S. at 484 (explaining difference between affirmative injunction that compels action and prohibitory injunction that "restrains"). The district court did not dispute that HB 1 is not law and that its use violates the Missouri Constitution. App.124; R.Doc.35 at 5; Add.5 (acknowledging that issuance of the TRO would result in a general election not conducted "in accordance with the Missouri Constitution"). Because HB 1 does not spring from any source of Missouri law, the only way the TRO can compel its use is as a court-imposed remedial map—*i.e.*, a mandatory injunction not a restraining order. Section 2284 does not authorize a single district court judge to impose a remedial redistricting map.

## IV. The Elections Clause cross-appeal lacks merit.

Plaintiffs' cross-appeal on Elections Clause grounds has no merit, and the district court was right to find no likelihood of success on Plaintiffs' Elections Clause arguments. Plaintiffs and the Secretary have at various points claimed that the Elections Clause compels federal court interference with the Missouri Supreme Court's recent judgment. But that judgment *enforced* the Election Clause's allocation of election regulation authority to Missouri's legislative power initially and Congress ultimately. If anything would now undermine this constitutionally prescribed authority, it would be allowing the district court's chaos-making TRO to stand by resurrecting Plaintiffs' failed Elections Clause arguments.

The Elections Clause provides that the times, places, and manner of congressional elections "shall be prescribed in each State by the Legislature thereof," subject to Congress's superseding authority to "at any time by Law make or alter such Regulations." U.S. Const. art. I, § 4, cl. 1. As the district court itself recognized, the Supreme Court has held that "the Legislature" does not mean the state's representative assembly alone but its lawmaking power exercised through whatever methods the state constitution prescribes, including the executive veto and referendum. *Moore v. Harper*, 600 U.S. 1, 23-26 (2023).

The Missouri Supreme Court duly respected this allocation of authority. The Missouri Constitution subjects "any act of the general assembly" to referendum.

Mo. Const. art. III, § 49. And an act referred to the people by collection of sufficient signatures, *id.* § 52(a), takes effect once approved by voters at the next general election (or special election if the General Assembly calls one), "and not otherwise," *id.* § 52(b). Reading this language by its plain terms, the Missouri Supreme Court accordingly held that the HB 1 map is subject to referendum, meaning it cannot take effect unless and until voter approval, and it ordered the Secretary to act accordingly by using the State's lawful 2022 map instead. *Von Glahn*, 2026 WL 2628846, at *3-*7. In other words, the Missouri Supreme Court *protected* the state's lawmaking power in which the Elections Clause vests authority. And it did so through the "ordinary exercise of state judicial review" that *Moore* safeguards to enforce "ordinary constraints on lawmaking in the state constitution." 600 U.S. at 22, 29-30.[8]

## V. The TRO violates *Purcell* and this Court's affirmance would also.

The TRO violates *Purcell*, and the Supreme Court correctly issued a stay. While it would have no legal effect, an order by this Court affirming the TRO would be inconsistent with *Purcell* as well. It is difficult to conceive of a more prototypical candidate for application of the *Purcell* doctrine than a single federal district judge

[8] Plaintiffs' cross appeal of the district court's rejection of their Elections Clause *argument* should be dismissed for lack of jurisdiction. A party that *wins* a TRO cannot appeal on the grounds that it thinks that the district court should have explained its victory differently. *See Deposit Guar. Nat'l Bank, Jackson v. Roper*, 445 U.S. 326, 333 (1980).

waiting less than an hour after an order of the Supreme Court to issue a contradictory order with the effect of precluding a state from using *any congressional map at all*, less than two weeks before ballot are required to be mailed to voters under federal law. An order from a federal Court of Appeals affirming such an order mere days before voting begins, *after* the U.S. Supreme Court issued a stay, would pose even greater *Purcell* concerns.

Supreme Court precedent on this issue makes the necessary outcome plain. The Supreme Court has repeatedly emphasized that *Purcell* is an equitable principle, rooted in federalism, which forcefully warns that "*lower federal courts* should ordinarily not alter the election rules on the eve of an election." *Abbott v. League of United Latin Am. Citizens*, 146 S. Ct. 418, 419 (2025) (quoting *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020) (per curiam)) (emphasis added). "[T]he Constitution leaves with the States primary responsibility for apportionment of their federal congressional . . . districts." *Growe v. Emison*, 507 U.S. 25, 34 (1993) (emphasis added); *see also Allen v. Milligan*, 608 U.S. 511, 514 (2026) ("While federal courts should not impose changes close to an election, States are free to decide for themselves whether last-minute changes to an election are in their best interests.") (internal citation omitted). At minimum, federal courts should not render congressional elections impossible to implement "where an impending

election is imminent and a State's election machinery is already in progress." *Reynolds v. Sims*, 377 U.S. 533, 585 (1964).

The basic facts of this case are undisputed and make this Court's path clear. Missouri's highest *state* court unanimously issued a decision on a matter of *state* electoral procedure based entirely on *state* constitutional grounds. *Von Glahn*, 2026 WL 2628846, at *7. Then, Justice Kavanaugh, presented with arguments identical to those presented by Plaintiffs here, declined to stay that judgment or to intervene in any way. Nevertheless, fully aware of all of this, the district court granted a TRO entirely incompatible with the Missouri Supreme Court's order *on the day of the deadline for finalizing the ballot* in Missouri. *See* App.132; R.Doc.35 at 13; Add.13. And to cap it off, the Supreme Court then granted a stay of the district court's TRO. If *Purcell* does not foreclose the district court's incredibly late-breaking action in this case—or any action by this Court other than vacatur—it is unclear what purpose the doctrine serves. In light of the Supreme Court's precedent and its actions *in this case*, this Court could not reach any other conclusion.

The district court claimed that its order was necessary because "[p]reserving the status quo entails using the same map for the general election that Missouri used for its primaries—the HB 1 map." App.124; R.Doc.35 at 5; Add.5. But HB 1 was not the status quo when the district court issued its order (and certainly is not now). The Missouri Supreme Court could not have been more clear in holding that "HB 1

is not the law and has never been the law;" and that the 2022 Map is the only "valid congressional redistricting in effect." *Von Glahn*, 2026 WL 2628846, at *6 n.8. Bafflingly (and erroneously), the district court deemed this fact "irrelevant" to its decision. App.130; R.Doc.35 at 11; Add.11. As noted *supra*, Part III, the district court's equitable authority in this case is limited to preserving the status quo. As such, a clear and direct statement by the Missouri Supreme Court *defining* the legal status quo, undisturbed and confirmed by the U.S. Supreme Court, is far from "irrelevant"—it is binding.

Furthermore, the district court claimed that "[t]his case presents *Purcell* in reverse," suggesting that "the public interest concerns that the *Purcell* principle invokes—avoiding voter confusion, disincentivizing voting, and preserving the fair and orderly operation of elections—support issuing a TRO." App.131; R.Doc.35 at 12; Add.12. One need only review the news coverage that followed the district court's order to see how far off the mark that is. There is nothing "fair" or "orderly" about a federal court issuing an order that results in *no* possible congressional map or in issuing an order outside its jurisdiction to compel the use of a map that "is not the law and has never been the law," *Von Glahn*, 2026 WL 2628846, at *6 n.8, merely because it was *illegally* used in the state's primary election as part of an ill-fated and misguided scheme to run out the clock.



Appellate Case: 26-2797 Page: 31 Date Filed: 09/15/2026 Entry ID: 5684052

Finally, this Court must not compound the *Purcell* problems. While no action of this Court would have any legal effect because the Supreme Court's stay will remain in place regardless, this Court must still refrain from adding any more confusion by affirming the TRO. The TRO was unlawful and violated *Purcell*, and any affirmance by this Court would do the same.

## VI. The equities weigh heavily against injunctive relief.

Even if the Court agrees with the district court's assessment of Plaintiffs' likelihood of success on the merits, it must still vacate the TRO because the equities weigh heavily against injunctive relief for reasons beyond just *Purcell*. The Secretary violated both Missouri and federal law by implementing HB 1 in the primary. Under 2 U.S.C. § 2c, the Secretary was obligated to use "only" the map established "by law." As the Missouri Supreme Court has held, that was the 2022 map. He failed to do so. To the extent the federal Constitution is implicated by using different maps in the primary and general election, injunctive relief that either (1) leaves the state with *no* possible congressional map or (2) compels the use of an unlawful map in the general election merely because it was illegally implemented in the primary election, is contrary to the balance of equities and the public interest. "Equity will not sanction a cure which is worse than the disease." *Buscaglia v. Dist. Ct. of San Juan*, 145 F.2d



Appellate Case: 26-2797 Page: 32 Date Filed: 09/15/2026 Entry ID: 5684052

274, 282 (1st Cir. 1944). A federal court injunction that *compounds* the violation of state and federal law is not an appropriate remedy.[9]

## CONCLUSION

For the foregoing reasons, the district court's TRO should be vacated or reversed.

---

[9] Imagine if the Secretary conducted the primary election under a map he drew himself—*i.e.*, a map that has as much legal effect as HB 1. Would anyone think the federal Constitution compels a federal court to order the Secretary's map to be used again in the general election merely because he illegally used it in the primary election?



Appellate Case: 26-2797 Page: 33 Date Filed: 09/15/2026 Entry ID: 5684052

September 15, 2026


<u>*/s/ Mark P. Gaber*</u>
Mark P. Gaber
Aseem Mulji
Simone Leeper
Benjamin Phillips
Isaac DeSanto
CAMPAIGN LEGAL CENTER
1101 14th Street NW, Suite 400
Washington, DC 20005
(202) 736-2000
mgaber@campaignlegalcenter.org

Annabelle E. Harless
CAMPAIGN LEGAL CENTER
55 W. Monroe Street, Suite 1925
Chicago, IL 60603

Gillian R. Wilcox
Jason Orr
Jonathan D. Schmid
Kristin M. Mulvey
ACLU OF MISSOURI FOUNDATION
406 W. 34th Street, Suite 420
Kansas City, MO 64111

Ming Cheung
Sophia Lin Lakin
Dayton Campbell-Harris
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street
New York, NY 10004


*Counsel for* Amici Curiae

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Federal Rule of Appellate Procedure 29(a)(5) because it contains 6,364 words, relying on Microsoft Word's word count function and excluding exempt portions. Consistent with Eighth Circuit Rule 28A(h)(2), the electronic version has been scanned for viruses, and this brief is virus free.

*/s/ Mark P. Gaber*
Mark P. Gaber

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this brief on September 15, 2026, serving all parties through the Court's Electronic Case Filing System.

*/s/ Mark P. Gaber*
Mark P. Gaber