Nos. 26-2797, 26-2827

---

# In the United States Court of Appeals for the Eighth Circuit

---

CONGRESSMAN ROBERT ONDER, et al.,
*Plaintiffs-Appellees/Cross-Appellants*,

v.

STATE OF MISSOURI, et al,
*Defendants-Appellees*.

RICHARD VON GLAHN, et al.,
*Intervenors-Appellants/Cross-Appellees*

---

On Appeal from the United States
District Court for the Eastern District of Missouri

---

**BRIEF OF AMICUS CURIAE CLUB FOR GROWTH IN SUPPORT OF AFFIRMATION FOR APPELLEES AND REVERSAL FOR CROSS-APPELLANTS**

---


Michael Donnelly
CLUB FOR GROWTH
2001 L St. NW Suite 600
Washington D.C. 20036
(540) 454-7780
mdonnelly@clubforgrowth.org

John M. Reeves
REEVES LAW LLC
7733 Forsyth Blvd.,
Suite 1100–#1192
St. Louis, MO 63105
(314) 804-2586
reeves@appealsfirm.com

*Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Club for Growth is a non-profit membership corporation organized under the laws of the District of Columbia. It has no parent corporation. Nor does it have any stock, and consequently no publicly held corporation owns 10% or more of Club for Growth's stock.

## TABLE OF CONTENTS


Corporate Disclosure Statement .......... 2

Table of Contents .......... 3

Table of Authorities .......... 4

Introduction and Interest of Amicus Curiae .......... 6

Summary of the Argument .......... 7

Argument .......... 9

- I. The TRO is necessary to vindicate Article 1, §2. .......... 9
- II. Invalidating the primary elections carries with it grave practical consequences and amounts to a violation of equal protection. .......... 12
- III. *Purcell* Forbids Severing an Election Already Under Way. .......... 20
  - A. The rules of an election must be settled before it begins, and this election began before August 4. .......... 20
  - B. The Supreme Court of Missouri ordered a remedy that the election calendar does not permit. .......... 22

Conclusion .......... 24

Certificate of Service .......... 25

Certificate of Compliance .......... 25

## TABLE OF AUTHORITIES

### Cases

*Gray v. Sanders*,
372 U.S. 368 (1963) .......... 19

*In re Rose*,
No. 26-0916,-- S.W.3d --,
2026 WL 2672098 (Tex. Sept. 11, 2026) .......... 10, 11, 12, 23

*Klein v. United States*,
176 F.2d 184 (8th Cir. 1949) .......... 9, 10, 12, 13

*Merrill v. Milligan*,
142 S. Ct. 879 (2022) .......... 20

*Onder v. State*,
No. 4:26-cv-01424-SRC,
2026 WL 2640610
(E.D. Mo. Sept. 8, 2026) .......... 19, 22, 23

*Purcell v. Gonzalez*,
549 U.S. 1 (2006) .......... 20, 22

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*,
589 U.S. 423 (2020) .......... 20

*Reynolds v. Sims*,
377 U.S. 533 (1964) .......... 21

*United States v. Classic*,
313 U.S. 299 (1941) .......... 9, 13, 19, 21

*von Glahn v. Hoskins*,
No. SC101805, -- s.w.3d --, 2026 WL 2628846 (Sept. 3, 2026) .......... 13

### Statutes

52 U.S.C. § 20302(a)(8)(A) .......... 23



Appellate Case: 26-2797 Page: 4 Date Filed: 09/15/2026 Entry ID: 5684065

Mo. Rev. Stat. § 115.125(2) .......................................................... 19, 22

Mo. Rev. Stat. § 115.339 .............................................................. 13

Mo. Rev. Stat. § 115.343 .......................................................... 13, 22

Mo. Rev. Stat. § 115.349 .......................................................... 21, 22

Mo. Rev. Stat. § 115.365 .............................................................. 23

U.S. Const. amend. XIV, cl. 1 .................................................. 7, 8, 19, 20

U.S. Const. art. 1, §2 ............................................................ 8, 9, 12

U.S. Const. art. I, § 4 .................................................................. 19

**Other Authorities**

App. to Emergency Application at 20a, *Hoskins v. von Glahn*, No. 26A304 (U.S. Sept. 4, 2026) ...................................................... 13

H.B. 2117, 101st Gen. Assemb., 2d Reg. Sess. (Mo. 2022) ..................... 15

Mo. Sec'y of State, *State of Missouri – Primary Election, August 04, 2026, Official Results*, available at bit.ly/4xLKj2x ......... 12, 16, 17, 18

Mo. Spatial Data Info. Serv., *HB1 Missouri Congressional Districts 2025 BEF* (Sept. 12, 2025), available at bit.ly/4xZzta3 .................... 15

Nathaniel Rakich, *A Detailed Analysis of Missouri's New Congressional Map*, Inside Elections (Sept. 29, 2025), available at bit.ly/4yDAnbZ ........................................................................................ 14

Response of Respondents Onder et al., *People Not Politicians v. Onder*, No. 26A326 (U.S. Sept. 10, 2026) .................................................. 12

U.S. Census Bureau, 2020 Census Redistricting Data (P.L. 94-171), Table P1, Total Population, by county (Missouri), available at bit.ly/4h2ZnSQ ............................................................................ 16

## INTRODUCTION AND INTEREST OF AMICUS CURIAE[1]

Club for Growth is a national membership organization of more than 500,000 members dedicated to economic growth, limited government, and free markets. It advances those principles by educating the public, endorsing candidates, and, through its affiliated political committees, supporting the election of candidates who share those principles. More than 29,000 of those members live in Missouri. The Club's PAC has endorsed Rick Brattin for Congress in Missouri's newly-drawn Fifth District. Many Club members contributed to his campaign and worked to elect him in the August primary conducted under the 2025 congressional maps enacted by the Missouri General Assembly. The Club's affiliated PAC and independent-expenditure committees together spent nearly $2.5 million of its members' money to nominate him in that primary. They intend to spend more to elect him in the general election.

[1] All parties have consented to the filing of this brief. No party's counsel authored this brief in whole or in part, and no party, party's counsel, or other person—other than amicus curiae and its counsel—contributed money that was intended to fund preparing or submitting this brief.



Appellate Case: 26-2797 Page: 6 Date Filed: 09/15/2026 Entry ID: 5684065

Setting aside the 2025 map for this year's November general election directly injures Club members. Those who live in the district in which Mr. Brattin was nominated under the new map are completely disenfranchised—the candidate they selected in the primary is no longer on their general election ballot. Club members returned to prior districts under the old map fare no better. Their primary votes are nullified. Absent relief, they will be compelled to choose from candidates in whose nomination they had no voice. Both situations either eliminate or dilute Club members' votes. The Club submits this brief to explain how severing the general election from the preceding primary contravenes Supreme Court precedents, denies its members the right to choose their Representatives under Article I, § 2 of the United States Constitution, and also denies its members equal protection under the Fourteenth Amendment.

## SUMMARY OF THE ARGUMENT

The Club and its affiliated PAC and Super PAC have together spent millions of dollars in their members' donations to support the election of Rick Brattin as a member of the U.S. House of Representatives for Missouri's newly-drawn Fifth District. With Club members' help and

votes, Brattin was elected the Republican nominee for that newly-drawn Fifth District during the primary elections of August 4, 2026.

By campaigning for and electing Rep. Brattin as the Republican nominee to the new Fifth District, the Club's members received a vested Constitutional right in having Brattin be on the ballot for that new district in Missouri's general election. Supreme Court Precedent, Article 1, § 2 to the United States Constitution, and the Fourteenth Amendment's Equal Protection Clause support and guarantee this right. But the Supreme Court of Missouri violated it by claiming to retroactively invalidate those primary elections and ordering that the old map be used in the upcoming general election. This violates long standing federal constitutional principles. The district court was right to issue a temporary restraining order mandating that Secretary of State Hoskins only use the new map in the November general election.

Voting for Members of the House of Representatives is a constitutional right. U.S. Const. art. 1, §2. When Missouri chooses to include primary elections as an essential part of its election process for its citizens to choose their federal representatives the State cannot retroactively invalidate that election without meeting the strictest of

judicial scrutiny. But even if the state could meet this burden, the remedy it has enacted is not available.

## Argument

### I. The TRO is necessary to vindicate Article 1, §2.

The U.S. Constitution, under Article I, § 2, vests the "People of the several States" with the right to choose the members of the House of Representatives. While the Supreme Court has not recognized a constitutional right to vote in a primary election for a particular party's nominee as a candidate for a House seat, "[w]here state law has made the primary an integral part of the procedure of choice . . . . the right of the elector to have his ballot counted at the primary is, likewise, included in the right protected by Article 1, Section 2." *United States v. Classic*, 313 U.S. 299, 318 (1941). This Court has held that Missouri's primary system is "an integral part of the general election laws of the state for the election of public officers, including Members of Congress." *Klein v. United States*, 176 F.2d 184, 187 (8th Cir. 1949). Reviewing a Missouri law, this Court held that "[i]t is clear that the vote at the primary election determines the name of the candidate of a political

party to appear on the ballot at the general election, and we think it follows that the right to vote at such a primary for the nomination of candidates for Congress, and to have the vote counted as cast, is a right secured by the Federal Constitution." *Id.* at 187.

*Klein's* rationale upholding primary elections as integral to the electoral process applies just as much to the geographical borders. A district's geographical borders are inextricably intertwined with the candidate. When district borders used in a primary election differ from those used in the subsequent general election, it necessarily follows that some voters will be deprived of a general election ballot listing the candidate who won the primary election they voted in. That is exactly what has happened here with the Supreme Court of Missouri's ruling, and why the district court's TRO should be affirmed.

The Supreme Court of Texas recently confronted a similar peril. *In re Rose*, No. 26-0916, -- S.W.3d --, 2026 WL 2672098 (Tex. Sept. 11, 2026). There, the Congressional primary election took place under a particular districting map, but after the primary election the commissioners of Galveston County enacted a new redistricting map and mandated that this map for the general election. *Id.* at *1. The



Appellate Case: 26-2797 Page: 10 Date Filed: 09/15/2026 Entry ID: 5684065

Texas high court held that the "claim that a governmental authority may unsettle the electoral map during an ongoing election for any reason (or none at all) implicates serious constitutional concerns. *Id*. at *2 This was because, under Texas state election law, "[a] 'primary] election' and a 'general election' are not, as the County would have it, wholly distinct and unrelated elections. They operated together to facilitate *one election* for *each precinct*." *Id*. at *3. The County's desire to have a general election based on a map different from that used in the primary election "would unmoor the general election from its corresponding primary." *Id*. Since the very purpose of the primary election was to choose specific candidates for election to a specific constituency, "[d]ecoupling the two [elections] changes the nature of both." *Id*. It would mean that the candidates "would be running in a different race than the one they started," and also present voters "with candidates on their general-election ballot for whom they had no opportunity to vote in the primary." *Id*. Such a result could not be upheld. *Id*. at *4.

The Supreme Court of Texas based its holding on Texas state law, and not federal law. *See id*. at **3-4 But this is a distinction without a



Appellate Case: 26-2797 Page: 11 Date Filed: 09/15/2026 Entry ID: 5684065

difference because the Texas law, like this Court in *Klein*, recognized that Texas's primary election and general election were, in fact, a single, unified election. *In re Rose*, 2026 WL at *3. In *Klein* this court recognized that Article I, § 2 of the U.S. Constitution applies and Missouri's primary elections are an integral part to voting for members of Congress which could not be sundered from the general election. *See Klein*, 176 F.2d at 187. Accordingly, this Court should follow the principles in *Rose* and affirm the TRO.

## II. Invalidating the primary elections carries with it grave practical consequences and amounts to a violation of equal protection.

The scale of the dislocation the Missouri Supreme Court's order works is not theoretical. On August 4, 2026, a total 1,210,016 Missouri citizens cast ballots in congressional primaries conducted in the eight districts drawn by House Bill 1.[2] Those primaries produced nominees who, under

[2]Mo. Sec'y of State, *State of Missouri – Primary Election, August 04, 2026, Official Results* (as announced by the Board of State Canvassers Aug. 25, 2026), available at bit.ly/4xLKj2x (County Results for each of Missouri's 116 election jurisdictions, race "U.S. Representative – District 1" through "District 8"). The State itself has represented to that "more than 1.2 million Missourians voted" in the congressional primaries under the HB 1 plan. Response of Respondents Onder et al., at 2, *People Not Politicians v. Onder*, No. 26A326 (U.S. Sept. 10, 2026) (citing pre-certification total of 1,206,871).



Appellate Case: 26-2797 Page: 12 Date Filed: 09/15/2026 Entry ID: 5684065

Missouri law, are now "the only candidate[s] of [their] party for the office at the general election." Mo. Rev. Stat. § 115.343. As noted above, this primary was not a preliminary; it was the first half of a single, integrated election. *See Classic*, 313 U.S. at 318; *Klein*, 176 F.2d at 187; Mo. Rev. Stat. § 115.339.

Substituting the 2022 map for the general election breaks that election in two for much of the electorate. The Cole County Circuit Court found as a matter of fact—and the State has repeated the finding in every filing since—that reverting to the 2022 plan "would move hundreds of thousands of voters into different districts for the imminent 2026 general election compared to the districts in which they cast their ballots in the August primary elections."[3] The finding is easily confirmed. Under HB 1 the Seventh and Eighth Districts are identical to the 2022 districts and only six percent of the First District's residents

[3]Judgment ¶ 20, *von Glahn v. Hoskins* (Cole Cnty. Cir. Ct. Aug. 19, 2026), *reprinted in* App. to Emergency Application at 20a, *Hoskins v. von Glahn*, No. 26A304 (U.S. Sept. 4, 2026), *rev'd on state-law grounds*, No. SC101805, -- s.w.3d --, 2026 WL 2628846 (Sept. 3, 2026). The Secretary of State adopted the finding before the Supreme Court, Emergency Application at 4, 12, *Hoskins*, No. 26A304 ("hundreds of thousands of voters will be forcibly switched to new districts and forced to vote on General Election candidates they had no role in choosing"), as did Respondents Onder et al., Response at 2, 7, 23, No. 26A326.



Appellate Case: 26-2797 Page: 13 Date Filed: 09/15/2026 Entry ID: 5684065

are moved; every other district changes.[4] The Fifth District changed most: by the Associated Press's estimate, only about two in five residents of the 2022 Fifth District were included in HB 1's Fifth District, and the remaining three in five cast their August 4 ballots in HB 1's Fourth or Sixth Districts.[5] Using the 2020 Census populations and the State's own district data shows that 1,419,242 Missourians—approximately 23.1 percent of the State's population—reside in different districts under the two maps; 57 percent of HB 1's Fifth District is reassigned to the Third, Fourth, and Sixth, while 38 to 40

[4]Nathaniel Rakich, *A Detailed Analysis of Missouri's New Congressional Map*, Inside Elections (Sept. 29, 2025), available at bit.ly/4yDAnbZ ("the 1st District changes little under the new plan, and the southern-Missouri-based 7th and 8th districts are exactly the same"; describing changes to the 2nd, 3rd, 4th, 5th, and 6th); Nick Ingram et al., *Congressional Map Changes Triggered Frustration More Than Confusion for Some Voters*, Associated Press (Sept. 10, 2026), available at bit.ly/4AcLslQ (the HB 1 map "left just two of the state's eight congressional districts unchanged").

[5]Ingram et al., *supra* note 5 (the 5th District "had the biggest change, with only about 2 in 5 voters in the old district included in the new one"). The remaining three in five residents of the 2022 Fifth District lie in areas that HB 1 assigned to its Fourth District (principally Kansas City west of Troost Avenue and eastern Jackson County) and its Sixth District (principally Clay County). *See* Rakich, *supra* note 5.



Appellate Case: 26-2797 Page: 14 Date Filed: 09/15/2026 Entry ID: 5684065

percent of the residents of the Third and Fourth Districts are moved.[6] In total, approximately 284,000 primary voters—that is, 23.5 percent of all who cast a congressional primary ballot—voted in one district but will receive a general-election ballot for another.[7]

Even setting every estimate aside, the two statutes and the certified returns set the floor. Twenty-one counties are entirely within one district under the new map and entirely within a different district

---

[6]HB 1 district assignments are taken from the State's block equivalency file, Mo. Spatial Data Info. Serv., *HB1 Missouri Congressional Districts 2025 BEF* (Sept. 12, 2025), available at bit.ly/4xZzta3 (assigning each of Missouri's 253,632, 2020 census blocks to a district). The 2022 districts are those enacted by H.B. 2117, 101st Gen. Assemb., 2d Reg. Sess. (Mo. 2022), as published by MSDIS, *MO_Congressional_House_Districts*. Block populations are from the 2020 Census, P.L. 94-171 Redistricting Data. Each district under both plans totals approximately 769,364 persons and the statewide total is 6,154,913, confirming that the assignments reproduce the enacted plans. Population moved by HB 1 district: District 1, 46,656 (6.1%); District 2, 175,007 (22.7%); District 3, 304,608 (39.6%); District 4, 293,271 (38.1%); District 5, 440,537 (57.3%); District 6, 159,163 (20.7%); Districts 7 and 8, none. The 57.3 percent figure for the Fifth District corresponds to the Associated Press's independent "2 in 5" estimate, *supra* note 5.

[7]Derived by applying the Secretary of State's certified county-level congressional primary returns, *supra* note 2, to the population shifts described in note 6. Where an entire county (or the entire portion of a county within an HB 1 district) moves, the figure is the certified vote count itself; where a county portion is split between destination districts, the estimate assumes uniform turnout within the portion.



Appellate Case: 26-2797 Page: 15 Date Filed: 09/15/2026 Entry ID: 5684065

under the old map: Cole, Lincoln, Johnson, Pettis, Lafayette, Audrain, Miller, Randolph, Washington, Saline, Crawford, Morgan, Pike, Cooper, Moniteau, Gasconade, Osage, Ralls, Howard, Monroe, and Maries.[8] Those counties are home to 547,974 Missourians, and 107,743 of them cast congressional primary ballots on August 4.[9] Adding the two county

[8] Mo. Rev. Stat. §§ 128.471–128.478, as enacted by H.B. 1, 103d Gen. Assemb., 2d Extraordinary Sess. (Mo. 2025) (enumerating the counties, voting districts, and census blocks composing each district); Mo. Rev. Stat. §§ 128.461–128.468 (enacted by H.B. 2909, 101st Gen. Assemb., 2d Reg. Sess. (Mo. 2022), eff. May 18, 2022) (same). HB 1 placed Cole, Johnson, Lafayette, Pettis, Saline, Cooper, Howard, Moniteau, Miller, Morgan, Maries, Osage, and Randolph Counties in the Fifth District, § 128.475; Lincoln, Pike, Ralls, Monroe, and Audrain in the Third, § 128.473; and Crawford, Gasconade, and Washington in the Second, § 128.472. Under the 2022 plan, Cole, Cooper, Moniteau, Miller, Maries, Osage, Crawford, Gasconade, and Washington lie in the Third District, § 128.463; Johnson, Lafayette, Pettis, Saline, Howard, and Morgan in the Fourth, § 128.464; and Randolph, Lincoln, Pike, Ralls, Monroe, and Audrain in the Sixth, § 128.466

[9]U.S. Census Bureau, 2020 Census Redistricting Data (P.L. 94-171), Table P1, Total Population, by county (Missouri), available at bit.ly/4h2ZnSQ (Cole 77,279; Lincoln 59,574; Johnson 54,013; Pettis 42,980; Lafayette 32,984; Audrain 24,962; Miller 24,722; Randolph 24,716; Washington 23,514; Saline 23,333; Crawford 23,056; Morgan 21,006; Pike 17,587; Cooper 17,103; Moniteau 15,473; Gasconade 14,794; Osage 13,274; Ralls 10,355; Howard 10,151; Monroe 8,666; Maries 8,432); Mo. Sec'y of State, *State of Missouri – Primary Election, August 04, 2026, Official Results*, available at bit.ly/4xLKj2x (County Results) (congressional primary votes cast: Cole 19,409; Lincoln 11,027; Johnson 8,740; Pettis 7,763; Lafayette 7,334; Miller 5,153; Audrain 4,496; Randolph 4,431; Saline 3,747; Morgan 3,681; Cooper 3,555; Osage 3,552; Crawford 3,483; Gasconade 3,344; Moniteau 3,331;



Appellate Case: 26-2797 Page: 16 Date Filed: 09/15/2026 Entry ID: 5684065

portions the Secretary of State reports separately by district—that is, Jefferson County's HB 1 Second District portion (68,220 residents; 13,254 primary votes; now wholly in the Third) and Boone County's HB 1 Fifth District portion (33,030 residents; 6,917 primary votes; now in the Third and Fourth)—more than 649,000 Missourians and roughly 128,000 primary voters have changed districts in their entirety.[10] That floor omits the split metropolitan counties—Jackson, Clay, St. Charles, and St. Louis—where most of the remaining movement occurs.

For example, a resident of Cole County who voted on August 4 in the Republican or Democratic primary for the Fifth District will vote on November 3 in the Third District. This resident will now have to choose between nominees selected by other voters from a county electorate she

---

Washington 3,087; Pike 2,930; Ralls 2,534; Howard 2,172; Maries 2,171; Monroe 1,803).

[10]Mo. Sec'y of State, *State of Missouri – Primary Election, August 04, 2026, Official Results* (as announced by the Board of State Canvassers Aug. 25, 2026), available at bit.ly/4xLKj2x (County Results) (Jefferson County and Boone County pages, each reporting congressional primary votes separately for each district within the county). Under HB 1, Jefferson County was divided between the Second and Eighth Districts and Boone County between the Third and Fifth; under the 2022 plan Jefferson lies in the Third and Eighth and Boone in the Third and Fourth.



Appellate Case: 26-2797 Page: 17 Date Filed: 09/15/2026 Entry ID: 5684065

was never part of.[11] This resident had no vote in selecting either candidate on her ballot, and the vote she did cast helped nominate candidates who will no longer appear on this ballot. The same is true for the electorate of the 2022 Fifth District: roughly 89,600 of its general-election voters, drawn from Clay County and eastern Jackson County, cast their primary ballots in the newly drawn Fourth and Sixth Districts and had no role in choosing either nominee they will be presented on November 3.[12] Missouri has, in effect, created two classes of voters; those who participated in both stages of their district's election and those permitted to participate in only one. The U.S. Constitution permits no such distinction "wherever their home may be

[11]Under HB 1, Cole County lay entirely within District 5; under the 2022 plan it lies entirely within District 3. The 2022 Third District's nominees were selected in HB 1's Third District primary, whose electorate was drawn principally from St. Charles, Boone, Callaway, Lincoln, and Warren Counties. Mo. Sec'y of State, *State of Missouri – Primary Election, August 04, 2026, Official Results* (as announced by the Board of State Canvassers Aug. 25, 2026), available at bit.ly/4xLKj2x (County Results).

[12]Applying certified county returns for Clay and Jackson Counties and the Kansas City Election Board, *supra* note 2, to the population shifts described in note 6, an estimated 89,600 primary voters fall in that category. The Associated Press's estimate that only two in five residents of the 2022 Fifth District were included in HB 1's Fifth, *supra* note 5, independently confirms the scale.

in that geographical unit." *See Gray v. Sanders*, 372 U.S. 368, 379 (1963).

This harm cannot be cured by recount or by reprinting. The primary ballots cannot be re-tabulated under the 2022 lines because the candidates on them were different, and the moved voters cannot be offered a second primary because the statutory deadlines have passed.[13] The remedy consistent with *Classic* and the Equal Protection Clause is the one the district court ordered: complete the election under the districts in which it began. Whatever the merits of Missouri's referendum procedure as a matter of state law, a state court cannot, consistent with the United States Constitution, redraw the geographic unit of a federal election after 1.2 million citizens have already voted in it. The referendum, like any other exercise of legislative power over the "Times, Places and Manner" of congressional elections, U.S. Const. art. I, § 4, must operate prospectively and not deny the votes of nearly a

[13]*See Onder v. State*, No. 4:26-cv-01424-SRC, 2026 WL 2640610, at *2 (E.D. Mo. Sept. 8, 2026) ("The primary ballots cannot simply be recounted under the 2022 districts, as the district boundaries and candidates would not be the same for all voters."); Mo. Rev. Stat. § 115.125(2) (ballot-certification deadline of eighth Tuesday before the general election).



Appellate Case: 26-2797 Page: 19 Date Filed: 09/15/2026 Entry ID: 5684065

quarter of its primary voting electorate. Such an outcome is contemptuous of common sense, republican principles of equality of voting power and, most important, the Equal Protection guaranteed by the Fourteenth Amendment to the United States Constitution.

## III. *Purcell* Forbids Severing an Election Already Under Way.

### A. The rules of an election must be settled before it begins, and this election began before August 4.

"Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (per curiam). The Supreme Court has "repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020) (per curiam). "When an election is close at hand, the rules of the road must be clear and settled," because "late judicial tinkering with election laws can lead to disruption and to unanticipated and unfair consequences for candidates, political parties, and voters." *Merrill v. Milligan*, 142 S. Ct. 879, 880–81 (2022) (Kavanaugh, J., concurring).



Appellate Case: 26-2797 Page: 20 Date Filed: 09/15/2026 Entry ID: 5684065

The principle is not a rule about federal courts alone; it is a rule of equity about the timing of any judicial intervention in a live election. *See Reynolds v. Sims*, 377 U.S. 533, 585 (1964) (a court "should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles" to "avoid a disruption of the election process which might result from requiring precipitate changes").

Missouri's 2026 congressional election did not begin in September. It began when candidate filing closed in March, Mo. Rev. Stat. § 115.349, and its first half was completed when 1.2 million voters cast primary ballots on August 4 in the HB 1 districts the Secretary of State had implemented. Because Missouri law makes the primary an "integral part" of the election of Representatives, *Classic*, 313 U.S. at 318, the rules of this election—including the applicable geographic units for House districts—were fixed on that day. The Missouri Supreme Court's September 3 order does not alter the rules on the eve of the election; it alters them in the middle of it. That is the very harm *Purcell* sought to prevent, and it produced exactly what *Purcell* warned against—upsetting the status quo on the eve of a general election, creating

nothing but uncertainty and confusion. Had the Supreme Court of Missouri adhered to the principles in *Purcell*, none of this uncertainty and confusion would have arisen. The Supreme Court of Missouri's unjustified upsetting of the status quo on the eve of a general election has created what the district court rightly described as a "reverse *Purcell* situation" that makes it appropriate for a federal court to intervene as a means of upholding federal constitutional rights which require certainty as to the election. *See Onder v. State*, No. 4:26-cv-01424-SRC, 2026 WL 2640610, at *6 (E.D. Mo. Sept. 8, 2026).

**B. The Supreme Court of Missouri ordered a remedy that the election calendar does not permit.**

A remedy that cannot be lawfully implemented is not a remedy. By September 3, every statutory step needed to conduct the general election in different districts had already passed. Candidate filing closed in March. Mo. Rev. Stat. § 115.349. Nominations were fixed by the primary, and each nominee became "the only candidate of that party for the office at the general election." Mo. Rev. Stat. § 115.343. The deadline to certify the general-election ballot fell on September 8, the eighth Tuesday before the election. Mo. Rev. Stat. § 115.125(2).

Ballots for military and overseas voters must be transmitted by September 19. 52 U.S.C. § 20302(a)(8)(A)..

The primary ballots cannot be re-tabulated under the 2022 lines, because "the district boundaries and candidates would not be the same for all voters." *Onder*, 2026 WL  at *2. There is no authority for a second primary, and the vacancy provisions permit party committees to fill a nomination only when a nominee dies, withdraws, or is disqualified—not to nominate candidates for districts that did not exist when the primary was held. *See* Mo. Rev. Stat. § 115.365. The order thus does not restore the 2022 districts to the electoral process; it places 2022 districts on the ballot with nominees chosen by 2025 electorates. As noted, the Supreme Court of Texas confronted the same maneuver last week and held that a primary and general election "operate[] together to facilitate one election" and that "[d]ecoupling the two changes the nature of both," leaving candidates "running in a different race than the one they started" and voters "with candidates on their general-election ballot for whom they had no opportunity to vote in the primary." *Rose*, 2026 WL at *3. Courts cannot sever elections like this without running afoul of



Appellate Case: 26-2797 Page: 23 Date Filed: 09/15/2026 Entry ID: 5684065

the U.S. Constitution. The proper time to change a district map is before the election in which it will be used, not between its two halves.

## CONCLUSION

This Court should affirm the district court's granting of the TRO in the direct appeal and reverse its denial in the cross-appeal.

Respectfully submitted,

*/s/ John M. Reeves*
John M. Reeves
REEVES LAW LLC
7733 Forsyth Blvd., Suite 1100–#1192
St. Louis, MO 63105
(314) 804-2586
reeves@appealsfirm.com

Michael Donnelly
Club for Growth
2001 L St. NW Suite 600
Washington D.C. 20036
540.454.7780
mdonnelly@clubforgrowth.org

*Counsel for Amicus Curiae Club for Growth*

## Certificate of Service

I hereby certify that on **September 15, 2026,** I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ John M. Reeves*

## Certificate of Compliance

I certify that this brief contains **4,152** words, excluding those parts exempted by Fed. R. App.P. 32(f).

I further that certify this brief complies with the typeface requirements of Fed. R. App.P. 32(a)(5) and the type style requirements of Fed. R. App.P. 32(a)(6) as it is written in proportionally-spaced, 14-point Century font using Microsoft Office Word 2016.

Finally, I certify, pursuant to Local Rule 28(h), that both this brief has been scanned for viruses and both documents are virus free.

*/s/ John M. Reeves*



Appellate Case: 26-2797 Page: 25 Date Filed: 09/15/2026 Entry ID: 5684065