Nos. 26-2797 & 26-2827

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

CONGRESSMAN ROBERT ONDER, ET AL.,
Appellees,

v.

STATE OF MISSOURI AND DENNY L. HOSKINS, IN HIS OFFICIAL CAPACITY AS MISSOURI SECRETARY OF STATE,
Appellees,

RICHARD VON GLAHN AND PEOPLE NOT POLITICIANS,
Appellants

On Appeal from the U.S. District Court for the Eastern District of Missouri – St. Louis
(4:26-cv-01424-SRC)

# AMICI CURIAE ONE HUNDRED TEN MISSOURI VOTERS' BRIEF IN SUPPORT OF APPELLANTS

Elad Gross (counsel of record)
**MO RIGHTS**
PO Box 21621
St. Louis, MO 63109
Phone: (314) 252-8069
Email: Elad@MORights.com

Anat Gross
**MO RIGHTS**
PO Box 21621
St. Louis, MO 63109
Phone: (314) 252-8090
Email: Anat@MORights.com

*Counsel for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), *amici curiae* state that they are individual Missourians, not corporations.



Appellate Case: 26-2797 Page: 2 Date Filed: 09/15/2026 Entry ID: 5684071

## TABLE OF CONTENTS

**CORPORATE DISCLOSURE STATEMENT** ........................................ i

**TABLE OF CONTENTS** ........................................ ii

**TABLE OF AUTHORITIES** ........................................ iii

**INTEREST OF AMICI CURIAE** ........................................ 1

**SUMMARY OF ARGUMENT** ........................................ 4

**ARGUMENT** ........................................ 7

- **I. The Referendum Power as Applied to Congressional Redistricting Does Not Violate the Constitution** ........................................ 7
  - a. The Referendum Power Is Deeply Established in the History and Traditions of the United States ........................................ 7
  - b. Missouri's Referendum Is the People's Reserved Legislative Power ........................................ 12
  - c. Missouri's Referendum Power Applies to Congressional Redistricting ........................................ 14
- **II. The 2025 Missouri Redistricting Bill, House Bill 1, Was Never the Law** ........................................ 17
  - a. The Court Should Defer to Missouri's Supreme Court on State Law under Our Federalist System ........................................ 18
  - b. Missouri Properly Determined that House Bill 1 Was Never the Law ........................................ 22
  - c. The Elections Clause Requires the Court to Reject the 2025 House Bill 1 Since It Was Never the law ........................................ 23
- **III. The Only Equitable Remedy Is for Missouri to Implement the Only Legal Congressional Map** ........................................ 24

**CONCLUSION** ........................................ 29

**CERTIFICATE OF COMPLIANCE** ........................................ 31

**CERTIFICATE OF SERVICE** ........................................ 32

## TABLE OF AUTHORITIES

**Cases**

Alden v. Maine, 527 U.S. 706 (1999) .............................................. 18, 19

Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n, 576 U.S. 787 (2015) .............................................................................. 16, 19

*Burford v. Sun Oil Co.,* 319 U.S. 315 (1943) .......................................... 21

*Bush v. Gore*, 531 U.S. 98 (2000) ............................................................ 21

*CBOCS W., Inc. v. Humphries*, 553 U.S. 442 (2008) .............................. 25

*City of Eastlake v. Forest City Enters., Inc.*, 426 U.S. 668 (1976) ...... 4, 12

*Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800 (1976)................................................................................................ 21

*Cruz v. Arizona*, 598 U.S. 17 (2023) ....................................................... 22

*Dolan v. United States*, 560 U.S. 605 (2010) .......................................... 25

*Estes v. State of Tex.*, 381 U.S. 532 (1965) ......................................... 6, 25

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005) ..................................................................................................... 20, 21

*Gray v. Mississippi*, 481 U.S. 648 (1987)............................................ 5, 25

Gregory v. Ashcroft, 501 U.S. 452 (1991) ............................................... 18

Hawke v. Smith, 253 U.S. 221 (1920)..................................................... 15

James v. Valtierra, 402 U.S. 137 (1971) .......... 11

*Maggard v. State*, 733 S.W.3d 411 (Mo. 2026) .......... 24

*Malliotakis v. Williams*, 146 S. Ct. 809 (2026) .......... 26

*Merrill v. Milligan*, 142 S. Ct. 879 (2022) .......... 20, 27

Mo. Gen. Assembly v. Von Glahn, No. 4:25-CV-1535-ZMB, 2025 WL 3514277 (E.D. Mo. Dec. 8, 2025) .......... 24

*Moncrieffe v. Holder*, 569 U.S. 184 (2013) .......... 6, 26

*Moore v. Harper*, 600 U.S. 1 (2023) .......... passim

*Murdock v. City of Memphis*, 87 U.S. 590 (1874) .......... 22, 23

NAACP Mo. State Conf. v. Kehoe, 734 S.W.3d 338 (Mo. 2026) .......... 24

*New State Ice Co. v. Liebmann,* 285 U.S. 262 (1932) .......... 19

Ohio ex rel. Davis v. Hildebrant, 241 U.S. 565 (1916) .......... 4, 15

*Olmstead v. United States*, 277 U.S. 438 (1928) .......... 5, 29

*Oregon v. Ice*, 555 U.S. 160 (2009) .......... 19

*Railroad Comm'n of Tex. v. Pullman Co.,* 312 U.S. 496 (1941) .......... 21

*Smiley v. Holm*, 285 U.S. 355 (1932) .......... 16, 23

*T. M. v. Univ. of Maryland Med. Sys. Corp.*, 146 S. Ct. 1739 (2026) .......... 20

*U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995) .......... 23

*United States v. Young*, 470 U.S. 1 (1985) .......... 25

*Utah v. Strieff*, 579 U.S. 232 (2016) ........ 25

*Von Glahn v. Hoskins*, No. SC 101805, 2026 WL 2628846 (Mo. Sept. 3, 2026) ........ passim

*Younger v. Harris,* 401 U.S. 37 (1971) ........ 21, 26

**Statutes**

Missouri Revised Statutes §§ 128.461-469 (2022) ........ 5, 23, 27, 29

**Other Authorities**

Abram English Brown, Faneuil Hall and Faneuil Hall History (1900) .. 8

Declaration of Independence (U.S. 1776) ........ 9, 28

Federalist No. 43 (Madison) ........ 18

Federalist No. 49 (Madison) ........ 4, 10

National Conference on State Legislatures, Initiative and Referendum Processes, https://www.ncsl.org/elections-and-campaigns/initiative-and-referendum-processes (updated Nov. 24, 2025) ........ 10, 11

Steven L. Piott, The Origins of the Initiative and Referendum in South Dakota, Great Plains Quarterly 12 (Summer 1992) ........ 10

The Massachusetts Body of Liberties (1641) ........ 4, 7, 8

**Constitutional Provisions**

Mass. Const., Art. LXXXI, § 4 ........ 14

Md. Const., Art. XVI, § 3 .......... 14

Mo. Const. Art. I, § 1 .......... 12

Mo. Const. Art. I, § 3 .......... 12

Mo. Const. Art. III, § 3 .......... 15

Mo. Const. Art. III, § 45 .......... 14

Mo. Const. Art. III, § 49 .......... 4, 13

Mo. Const. Art. III, § 52(a) .......... 4, 13, 14

Mo. Const. Art. III, § 7 .......... 15

Mo. Const. Art. XIII, §§ 1-2 (1820) .......... 12

N.D. Const., Art. III, § 4 .......... 14

Or. Const., Art. IV, § 1(3)(b) .......... 14

U.S. Const. Art. I, §4 .......... 4, 15, 23

Wash. Const., Art. II, § 1(b) .......... 14



Appellate Case: 26-2797 Page: 7 Date Filed: 09/15/2026 Entry ID: 5684071

## INTEREST OF AMICI CURIAE

*Amici curiae* are 110 individual Missouri voters from throughout the state who support the only Missouri congressional maps in effect, codified in Missouri Revised Statutes §§ 128.461-469 (2022). These voters are committed to the rule of law and wish to prevent the government from violating Missouri's Constitution.

Of these voters, 78 were required to vote in a different district during the August 2026 primary election under a map that was never supposed to be in effect. These voters are:

Johnathon Cunningham, Ethan Strohmeyer, Rebecca VanVactor, Kelly Collins, Susan M Williams, Seth P. Smith, Rachel E. Wrenn, Steven M. Zerr, David Kreiner, Gregory Markway, Royce Haynes, Susan Gibson, Kimberly E. Camp, Gina Meyer, Adam Vaughn, Jodi Walsh, James Green, Amy Middaugh, Anita G Hill, Jill D Cederburg, Thomas Minihan, Alexa Wirth Kitchen, Kathy Krause, Amy Adam, Ashley Robinson, Tammy Luke, Blythe L. Robertson, Madrene Fisher, Brittany Montoya, Laurie J Hines, Annette Lynne Barry, Kendall Crockett, Shian Smith, Matthew P. Downs, Robert G Schwartz, Sarah A. Swisher, Kate Huls, Anne L Wiese, Katherine Jackson, Mona McCormack, Julie Francois,

Linda A. Meuth, Keith David Strassner, Robert Alan Bowness, Jean Probert, Mary E. Conlon, Don Meuth, Lorna Puls, Terry Daley Schwartze, Bethany Green, Rune Lea, Roberta Courtaway, Cara Voss, Marcia C. Pasqualini, Laurie Mozley, Katherine Nelson, Stephanie Newberg, Christy Bullock, Robert L. Jewett, Ross Buehre, James William OLoughlin, William D. White, Jr., Laura Hillman, Debra Tichenor, Jennifer K. Suits, Peggy J. Self, Erich Arvidson, Katherine Stone Underwood, Stephen D Scott, Sean Foley, Miriam Kathleen Smith, Mary Drummond, Charles Ray Guthrie, Deborah Deppong, Oliver Deppong, Casey Bergthold, Susan Lynn, and Laura Swofford.

The other 32 *amici curiae* reside in areas where their congressional district went unchanged, but they have an interest in denying the government authority it does not have under Missouri law. These *amici curiae* include:

Michelle M. Heitman, Kevin Kirk, Kandis Neumeier, Daniel Bogard, Andrew R Krapfl, Diane Kassner, Clint T Crabtree, Amanda Perryman-Jenkins, Jacqueline Farr, Ashley Casey, Robert A Foster, Virginia Staabs, Lisa A Ward, Sharon L. Neuer, Amanda Mercer, Adam Testerman, Lynn D Alsup, Nancy L Bateman, Marc Becker, Joann

Stephan, Jeanette Cass, Kari J Craun, Victoria S Winfrey, Kelly Walker, Robin L Espy, Amanda King, Kerry Madison, Shawn Walsh, Kenneth Haller, Charles E. Holley, Reiley Nesbitt, and Laura Burkhardt.

These voters have a particular interest in the litigation and a unique perspective. This Court will determine whether some vote in the districts they should be voting in. All of these Missourians have witnessed firsthand the electoral impact of the government's refusal to follow Missouri's Constitution. The government's decision not to follow Missouri's Constitution also implicates the rule of law and the rights Missourians have beyond the voting context. Missourians have a right to a state government bound by the state's Constitution and laws.

No counsel for any party authored this brief in whole or in part, and no entity or person, aside from *amici curiae* or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief. All parties consented to the filing of this brief.

## SUMMARY OF ARGUMENT

Missourians have explicitly reserved the legislative referendum to themselves through their state Constitution. Mo. Const. Art. III, § 49. That referendum power suspends the effect of the bill subject to the referendum so that the bill does not become a law until it is approved by the People. Mo. Const. Art. III, § 52(a). Missouri's referendum power is typical of those found in other states, and it is a constitutionally valid power deeply rooted in our Nation's history and traditions. *See, e.g.,* The Massachusetts Body of Liberties, p. 263 (1641) available at https://history.hanover.edu/texts/masslib.html; Federalist No. 49 (Madison); *Ohio ex rel. Davis v. Hildebrant*, 241 U.S. 565, 569-70 (1916); *City of Eastlake v. Forest City Enters., Inc.*, 426 U.S. 668, 672–73 (1976). The federal Elections Clause requires Missouri to set its congressional districts in accordance with the state constitution, including the referendum provision. *See* U.S. Const. Art. I, §4; *Moore v. Harper*, 600 U.S. 1, 26 (2023).

Missouri's Supreme Court appropriately reached the only conclusion permitted under Missouri law: because it was subject to the referendum, the 2025 congressional redistricting bill, House Bill 1, has



Appellate Case: 26-2797 Page: 11 Date Filed: 09/15/2026 Entry ID: 5684071

never been and continues not to be the law in Missouri. *Von Glahn v. Hoskins*, No. SC 101805, 2026 WL 2628846, at *7 (Mo. Sept. 3, 2026). The only lawful congressional districts are codified in Missouri Revised Statutes §§ 128.461-469 (2022). Missouri's Supreme Court based its decision on the only fair reading of Missouri law. *See Moore*, 600 U.S. at 35; *see also Moore*, 600 U.S. at 38-39 (Kavanaugh, J. concurring). The Elections Clause requires that the 2025 House Bill 1 map be rejected and that the only lawful congressional map, the one passed into law in 2022, be used for any Missouri congressional election.

Appellees essentially assert that the Secretary of State violated the law so badly during the August primary election that this Court should allow him to continue violating the law. That cannot be this Court's ruling. *See Olmstead v. United States*, 277 U.S. 438, 485 (1928) (Brandeis, J. dissenting) ("[A] court will not redress a wrong when he who invokes its aid has unclean hands.... If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy"). Lawlessness cannot be remedied by more lawlessness. *See, e.g., Gray v. Mississippi*, 481 U.S. 648, 663 (1987) ("Two wrongs do not make a right"); *Moncrieffe v. Holder*, 569 U.S. 184, 203



Appellate Case: 26-2797 Page: 12 Date Filed: 09/15/2026 Entry ID: 5684071

(2013) (The "cure [should not be] worse than the disease…"); *Estes v. State of Tex.*, 381 U.S. 532, 592 (1965) (Warren, C.J., concurring) (the Court should avoid "mak[ing] a bad situation worse"). Requiring all Missourians to use an unlawful congressional map in the November 2026 general election would not only prolong the clear federal and state constitutional violations. It would also encourage future violations of the law by Missouri's elected officials seeking to gain political advantage at the expense of their constituents' rights.

For these reasons, the Court should overturn the trial court's temporary restraining order and conclude the government's unlawful quest for power at the expense of Missourians and their Constitution.

## ARGUMENT

### I. The Referendum Power as Applied to Congressional Redistricting Does Not Violate the Constitution

The referendum power as applied to congressional redistricting does not violate the United States Constitution. The referendum is deeply established in the history and traditions of the United States, and Missouri's referendum is in line with those long-held practices. Missourians clearly reserved the right to referendum with respect to congressional redistricting.

#### a. The Referendum Power Is Deeply Established in the History and Traditions of the United States

The referendum power, and the People being the ultimate check on government, is deeply established in the history and traditions of the United States. The first code of laws established in New England, the Massachusetts Body of Liberties of 1641, protected the rights of all residents to have a voice in their government. Liberty number 12 stated:

> Every man whether Inhabitant or fforreiner, free or not free shall have libertie to come to any publique Court, Councel, or Towne meeting, and either by speech or writeing to move any lawfull, seasonable, and materiall question, or to present any necessary motion, complaint, petition, Bill or information, whereof that meeting hath proper



Appellate Case: 26-2797 Page: 14 Date Filed: 09/15/2026 Entry ID: 5684071

> cognizance, so it be done in convenient time, due order, and respective manner.
> The Massachusetts Body of Liberties, p. 263 (1641) available at https://history.hanover.edu/texts/masslib.html.

Liberty number 66 provided even greater rights to freemen: "The Freemen of every Towneship shall have power to make such by laws and constitutions as may concerne the wellfare of their Towne…." *Id.* at p. 269. This tradition of self-governance and public participation in government continued through the colonial period and played a critical role in the formation of the United States of America. *See, e.g.,* Abram English Brown, Faneuil Hall and Faneuil Hall History (1900) (including a discussion of the history of the public meetings leading to the Boston Tea Party on p. 193).

One hundred and thirty-five years after the Massachusetts Body of Liberties was completed, the colonists declared their right to self-governance in their Declaration of Independence, in which they affirmed their belief that the source of legislative power was the People:

> He [the King of Great Britain] has refused for a long time, after such dissolutions, to cause others to be elected; whereby the Legislative powers, incapable of Annihilation, have returned to the People at large for their exercise; the State remaining in the mean time exposed to all the

> dangers of invasion from without, and convulsions within.
> Declaration of Independence (U.S. 1776)

The legislative power exists with or without government. The People determine what degree of that power is delegated to the government.

Maintaining a referendum to check government was discussed by the Founders as they brought their case for the federal system and the Constitution to the People. In Federalist No. 49, James Madison debated the referendum power with Thomas Jefferson. Madison paraphrased Jefferson's argument in favor of a popular referendum:

> As the people are the only legitimate fountain of power, and it is from them that the constitutional charter, under which the several branches of government hold their power, is derived, it seems strictly consonant to the republican theory, to recur to the same original authority, not only whenever it may be necessary to enlarge, diminish, or new-model the powers of the government, but also whenever any one of the departments may commit encroachments on the chartered authorities of the others. The several departments being perfectly co-ordinate by the terms of their common commission, none of them, it is evident, can pretend to an exclusive or superior right of settling the boundaries between their respective powers; and how are the encroachments of the stronger to be prevented, or the wrongs of the weaker to be redressed, without an appeal to the people themselves, who, as the



Appellate Case: 26-2797 Page: 16 Date Filed: 09/15/2026 Entry ID: 5684071

> grantors of the commissions, can alone declare its true meaning, and enforce its observance?
> Federalist No. 49 (Madison)

Although Madison disagreed with Jefferson on the propriety of the referendum at the national level, even he agreed that Jefferson's argument had merit, especially in extraordinary circumstances:

> There is certainly great force in this reasoning, and it must be allowed to prove that a constitutional road to the decision of the people ought to be marked out and kept open, for certain great and extraordinary occasions.
> Federalist No. 49 (Madison).

As the United States grew, eventually every state but Delaware required state constitutional changes be subject to referenda. National Conference on State Legislatures, Initiative and Referendum Processes, https://www.ncsl.org/elections-and-campaigns/initiative-and-referendum-processes (updated Nov. 24, 2025). In 1898, South Dakota became the first state to adopt the referendum. Steven L. Piott, The Origins of the Initiative and Referendum in South Dakota, Great Plains Quarterly 12 (Summer 1992), 181-93, available online at https://digitalcommons.unl.edu/cgi/viewcontent.cgi?article=1673&context=greatplainsquarterly. Other states followed, and, today, 23 states have a referendum. National Conference on State Legislatures, Initiative and

Referendum Processes, https://www.ncsl.org/elections-and-campaigns/initiative-and-referendum-processes (updated Nov. 24, 2025).

The referendum power has been reviewed favorably by the United States Supreme Court. In *James v. Valtierra*, the Court noted that "[p]rovisions for referendums demonstrate devotion to democracy…." 402 U.S. 137, 141 (1971). In *City of Eastlake v. Forest City Enterprises, Inc.*, the Court further found the referendum power to be clearly established in America's historical tradition:

> A referendum cannot, however, be characterized as a delegation of power. Under our constitutional assumptions, all power derives from the people, who can delegate it to representative instruments which they create. See, E. g., The Federalist No. 39 (v. Madison). In establishing legislative bodies, the people can reserve to themselves power to deal directly with matters which might otherwise be assigned to the legislature. *Hunter v. Erickson*, 393 U.S. 385, 392 (1969).
>
> The reservation of such power is the basis for the town meeting, a tradition which continues to this day in some States as both a practical and symbolic part of our democratic processes. The referendum, similarly, is a means for direct political participation, allowing the people the final decision, amounting to a veto power, over enactments of representative bodies. The practice is designed to "give citizens a voice on questions of public policy."

> *City of Eastlake v. Forest City Enters., Inc.*, 426 U.S. 668, 672–73 (1976) (quoting *Valtierra*, 402 U.S. at 141) (cleaned up).

The referendum is not a delegated power, but a power reserved by the People that Americans have always had.

#### b. Missouri's Referendum Is the People's Reserved Legislative Power

Missouri's referendum is the People's reserved legislative power. Since its founding, Missouri has always held the view that all governmental power derives from the People. The current Constitution, adopted in 1945, clearly announces:

> That all political power is vested in and derived from the people; that all government of right originates from the people, is founded upon their will only, and is instituted solely for the good of the whole.
> Mo. Const. Art. I, § 1.

Missouri's Constitution further acknowledges "[t]hat the people of this state have the inherent, sole and exclusive right to regulate the internal government and police thereof…." Mo. Const. Art. I, § 3 . This language has been consistent since the founding of Missouri. *See* Mo. Const. Art. XIII, §§ 1-2 (1820) ("That all political power is vested in, and derived from, the people. That the people of this state have the inherent, sole,



Appellate Case: 26-2797 Page: 19 Date Filed: 09/15/2026 Entry ID: 5684071

and exclusive right of regulating the internal government and police thereof….”).

Missouri’s referendum is a reserved power codified in Article III, § 49 of the state Constitution:

> The people reserve power to propose and enact or reject laws and amendments to the constitution by the initiative, independent of the general assembly, and also reserve power to approve or reject by referendum any act of the general assembly, except as hereinafter provided.

Article III, § 52(a) describes how the referendum power is exercised in Missouri:

> A referendum may be ordered (except as to laws necessary for the immediate preservation of the public peace, health or safety, and laws making appropriations for the current expenses of the state government, for the maintenance of state institutions and for the support of public schools) either by petitions signed by five percent of the legal voters in each of two-thirds of the congressional districts in the state, or by the general assembly, as other bills are enacted. Referendum petitions shall be filed with the secretary of state not more than ninety days after the final adjournment of the session of the general assembly which passed the bill on which the referendum is demanded.

Missouri’s referendum power is not much different than the referendum power reserved by the People in other states. In

Massachusetts, only two percent of voters are needed to suspend a law and subject it to a referendum. Mass. Const., Art. LXXXI, § 4. In Maryland, one percent of voters can suspend a law temporarily until further signatures are gathered to reach the three percent threshold for a referendum. Md. Const., Art. XVI, § 3. In North Dakota, two percent of the population can trigger a referendum. N.D. Const., Art. III, § 4. In Oregon, four percent of voters are needed. Or. Const., Art. IV, § 1(3)(b). The same is true in Washington. Wash. Const., Art. II, § 1(b). Unlike some states, Missouri requires signatures to be collected from multiple congressional districts, preventing all needed signatures from being collected in higher population areas of the state. Mo. Const. Article III, § 52(a). Generally, Missouri's referendum is typical of other states' referenda. It is a traditional reservation of power for the People and a constitutionally accepted limitation on state power.

**c. Missouri's Referendum Power Applies to Congressional Redistricting**

Missouri's referendum power applies to congressional redistricting. The plain language of Missouri's referendum clearly permits its use for congressional redistricting bills passed by the state legislature. *See* Mo. Const. Art. III, § 45 (describing congressional redistricting without



Appellate Case: 26-2797 Page: 21 Date Filed: 09/15/2026 Entry ID: 5684071

limiting the referendum power) and compare with Mo. Const. Art. III, § 3(i) (describing state house of representatives redistricting and expressly denying that the referendum applies) and Mo. Const. Art. III, § 7(h) (describing state senate redistricting and expressly denying that the referendum applies). Missouri's Supreme Court recently upheld Missourians' referendum power over congressional redistricting. *Von Glahn v. Hoskins*, No. SC 101805, 2026 WL 2628846, at *1 (Mo. Sept. 3, 2026).

The use of the referendum for congressional redistricting has long been found to comply with the U.S. Constitution. The Elections Clause, found in Article I, § 4 of the federal Constitution, states:

> The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators.

The state legislature's role in setting the times, places, and manner of congressional elections is subject to the referendum. *Ohio ex rel. Davis v. Hildebrant*, 241 U.S. 565, 569-70 (1916) (specifically finding that the referendum power is encompassed in the legislative power discussed in the Elections Clause); *Hawke v. Smith*, 253 U.S. 221, 230-31 (1920)



Appellate Case: 26-2797 Page: 22 Date Filed: 09/15/2026 Entry ID: 5684071

(affirming the holding in *Hildebrant*); *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 805 (2015) (affirming the holding in *Hildebrant*); *id.* at 840 (Roberts, C.J., dissenting) (affirming the holding in *Hildebrant* and noting that the referendum does not ultimately remove the authority of the legislature to redraft a redistricting plan). The same logic applies for the Governor's veto; although not explicitly included in the Elections Clause, the Governor's veto, like the People's referendum, is considered part of the state legislative process:

> We find no suggestion in the federal constitutional provision of an attempt to endow the Legislature of the state with power to enact laws in any manner other than that in which the Constitution of the state has provided that laws shall be enacted. Whether the Governor of the state, through the veto power, shall have a part in the making of state laws, is a matter of state polity.
> *Smiley v. Holm*, 285 U.S. 355, 367–68 (1932)

The respect for state procedures in the redistricting context, including the use of the referendum and veto, was again upheld by the Supreme Court three years ago in *Moore v. Harper*, 600 U.S. 1, 26 (2023) ("The reasoning we unanimously embraced in *Smiley* commands our continued respect: A state legislature may not 'create congressional districts



Appellate Case: 26-2797 Page: 23 Date Filed: 09/15/2026 Entry ID: 5684071

independently of' requirements imposed 'by the state constitution with respect to the enactment of laws'") (quoting *Smiley*, 285 U.S. at 373).

Missouri's referendum power applies to congressional redistricting as a matter of state and federal law. Missouri voters have the right to send the legislature back to the drawing board when they disapprove of whatever maps they draw. This is especially true in the context faced by this Court "involving an optional, mid-decade redistricting in no way necessary for 'the immediate preservation of the public peace' because the 2022 congressional districts established by the General Assembly remain in place…." *Von Glahn*, No. SC 101805, 2026 WL 2628846, at *4. The 2025 redistricting bill, which was effectively suspended by the referendum pending a vote by the people, should never have been used, and the only map in effect before the primary, during the primary, and after the primary election was the 2022 congressional map. *Id.* at *1. That is the only map that can be used in the November 2026 general election.

## II. The 2025 Missouri Redistricting Bill, House Bill 1, Was Never the Law

The 2025 Missouri redistricting bill, House Bill 1, was never the law in Missouri. This Court should defer to Missouri's Supreme Court on



Appellate Case: 26-2797 Page: 24 Date Filed: 09/15/2026 Entry ID: 5684071

that matter of state law, and Missouri's Supreme Court, after conducting multiple reviews of Missouri's Constitution, determined that House Bill 1 was never in effect. House Bill 1, therefore, was not a valid legislative act, and, as a result, the federal Elections Clause requires that House Bill 1 not be used for the November 2026 election.

**a. The Court Should Defer to Missouri's Supreme Court on State Law under Our Federalist System**

The Court should defer to Missouri's Supreme Court on matters of state law under our federalist system. Deference to the states when they choose the inner workings of their governments is a critical aspect and a long-noted strength of federalism. James Madison, in Federalist No. 43, noted that "[w]henever the States may choose to substitute other republican forms, they have a right to do so, and to claim the federal guaranty for the latter." "A State is entitled to order the processes of its own governance." *Alden v. Maine,* 527 U.S. 706, 752 (1999). "Through the structure of its government, and the character of those who exercise government authority, a State defines itself as a sovereign." *Gregory v. Ashcroft,* 501 U.S. 452, 460 (1991). "When the Federal Government asserts authority over a State's most fundamental political processes, it



Appellate Case: 26-2797 Page: 25 Date Filed: 09/15/2026 Entry ID: 5684071

strikes at the heart of the political accountability so essential to our liberty and republican form of government." *Alden*, 527 U.S. at 751.

Justice Brandeis famously noted that "[i]t is one of the happy incidents of the federal system that a single courageous state may, if its citizens choose, serve as a laboratory; and try novel social and economic experiments without risk to the rest of the country." *New State Ice Co. v. Liebmann,* 285 U.S. 262, 311 (1932) (dissenting). The Supreme Court has "long recognized the role of the States as laboratories devising solutions to difficult legal problems." *Oregon v. Ice*, 555 U.S. 160, 171 (2009) (considering the "historic dominion" of states in the area that would be potentially regulated by a federal ruling and expressing an interest in not "straitjacketing the States…."). In *AIRC*, the Court, under this same reasoning, chose not to "read[] the Elections Clause to single out federal elections as the one area in which States may not use citizen initiatives as an alternative legislative process. Nothing in that Clause instructs, nor has this Court ever held, that a state legislature may prescribe regulations on the time, place, and manner of holding federal elections in defiance of provisions of the State's constitution." *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 817-18 (2015).

Over time, the Courts have developed multiple doctrines counseling federal courts to avoid governing state elections. The *Purcell* principle has established "(i) that federal district courts ordinarily should not enjoin state election laws in the period close to an election, and (ii) that federal appellate courts should stay injunctions when, as here, lower federal courts contravene that principle." *Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J. and Alito, J. concurring) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam). The *Rooker-Feldman* doctrine established that "federal district courts lack jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *T. M. v. Univ. of Maryland Med. Sys. Corp.*, 146 S. Ct. 1739, 1744 (2026) (citing *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005)). The Courts have also developed several "[c]omity or abstention doctrines[, which] may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005) (citing as examples *Colorado River*



Appellate Case: 26-2797 Page: 27 Date Filed: 09/15/2026 Entry ID: 5684071

*Water Conservation Dist. v. United States,* 424 U.S. 800 (1976); *Younger v. Harris,* 401 U.S. 37 (1971); *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943); *Railroad Comm'n of Tex. v. Pullman Co.,* 312 U.S. 496 (1941)). Issue preclusion and *res judicata* also counsel federal courts to defer to preexisting decisions of state courts. *Id.* at 293.

The Court should defer to Missouri's Supreme Court and its interpretation of the propriety of the referendum power. Missouri's Supreme Court properly considered Missouri's Constitution, the limits on state power, and the proper procedure that the state should have followed with respect to the referendum exercised here. Missouri's Supreme Court based its decision on the only fair reading of Missouri law. *See Moore*, 600 U.S. at 35; *see also Moore*, 600 U.S. at 38-39 (Kavanaugh, J. concurring) (recommending the adoption of Chief Justice Rehnquist's standard of review of state court decisions interpreting state law in light of the Elections Clause: "whether the state court 'impermissibly distorted' state law 'beyond what a fair reading required'") (citing *Bush v. Gore*, 531 U.S. 98 (2000)). This case and the ruling of Missouri's Supreme Court fit squarely within the deferential framework



Appellate Case: 26-2797 Page: 28 Date Filed: 09/15/2026 Entry ID: 5684071

discussed in *Moore*. This Court should deny the suggestion to overturn *Moore* and should maintain comity between federal and state courts.

### b. Missouri Properly Determined that House Bill 1 Was Never the Law

Missouri properly determined that the 2025 redistricting bill, House Bill 1, was never the law.

> Because the referendum petition was legal, sufficient, and timely, HB 1 never took effect and was referred to the voters as of December 9, 2025. The congressional districts the General Assembly established in 2022 remain in full force and effect for the November 2026 general election, and HB 1 will not take effect unless and until approved by the voters at the November 2026 general election. *Von Glahn v. Hoskins*, No. SC 101805, 2026 WL 2628846, at *7 (Mo. Sept. 3, 2026)

"The State courts are the appropriate tribunals, as this court has repeatedly held, for the decision of questions arising under their local law, whether statutory or otherwise." *Murdock v. City of Memphis*, 87 U.S. 590, 626 (1874). Federal courts are "powerless to revise a state court's interpretation of its own law. We thus cannot disturb state-court rulings on state-law questions that are independent of federal law." *Cruz v. Arizona*, 598 U.S. 17, 32–33 (2023) (Barrett, J., Thomas, J., Alito, J., and Gorsuch, J. dissenting) (citing *Murdock*, 87 U.S. 590). "The judging

of questions concerning rights which depend on state law is not, however, normally assigned to federal tribunals." *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 812 (1995) (citing *Murdock*, 87 U.S. at 636). This Court is bound by the decision of Missouri's Supreme Court, supported by the plain and clear language of Missouri's Constitution: House Bill 1 was never the law. *See Moore*, 600 U.S. at 35.

**c. The Elections Clause Requires the Court to Reject the 2025 House Bill 1 Since It Was Never the law**

The Elections Clause, U.S. Const. Art. I, § 4, requires the Court to reject the 2025 House Bill 1 since it was never the law. Instead, the Court must abide by existing legislative authority. "A state legislature may not 'create congressional districts independently of' requirements imposed 'by the state constitution with respect to the enactment of laws.'" *Moore*, 600 U.S. at 26 (citing *Smiley*, 285 U.S. at 373). For House Bill 1 to go into effect, Missouri's legislative authority must be exercised in accordance with the state Constitution's referendum provision. *Von Glahn*, No. SC 101805, 2026 WL 2628846, at *7. Until it is, Missouri's only congressional districts, which have been in effect since 2022, are still in effect. RSMo. §§ 128.461-469 (2022). This is the law now, will be the law for the November 2026 general election, and was the law during the August 2026



Appellate Case: 26-2797 Page: 30 Date Filed: 09/15/2026 Entry ID: 5684071

primary. Any other result would violate the U.S. Constitution's Elections Clause. This Court should prohibit that constitutional violation and find that the November general election can only be held using valid Missouri law.

### III. The Only Equitable Remedy Is for Missouri to Implement the Only Legal Congressional Map

The only equitable remedy available is for Missouri to implement the only legally valid congressional map. Missouri's Secretary of State ordered the use of House Bill 1 for the August 2026 primary. His use of House Bill 1 was not authorized by Missouri law. The Secretary was warned of this fact multiple times. *Von Glahn*, No. SC 101805, 2026 WL 2628846, at *6 n.8 (noting that the Secretary had prior notice not only from the plain language of Missouri law, but also from multiple court actions well in advance of the August 2026 primary election, including one in federal court (*Mo. Gen. Assembly v. Von Glahn*, No. 4:25-CV-1535-ZMB, 2025 WL 3514277, at *2 (E.D. Mo. Dec. 8, 2025)) and two in state court (*Maggard v. State*, 733 S.W.3d 411, 419-20 (Mo. 2026) and *NAACP Mo. State Conf. v. Kehoe*, 734 S.W.3d 338, 341 n.4 (Mo. 2026)).

There is no question that the Secretary violated Missouri law. The remaining question is: What is the proper remedy? Lawlessness cannot



Appellate Case: 26-2797 Page: 31 Date Filed: 09/15/2026 Entry ID: 5684071

be cured by more lawlessness. "Two wrongs do not make a right." *Gray v. Mississippi*, 481 U.S. 648, 663 (1987) ("[W]e cannot condone the 'correction' of one error by the commitment of another"); *United States v. Young*, 470 U.S. 1, 11 (1985) ("Clearly two improper arguments—two apparent wrongs—do not make for a right result"); *Dolan v. United States*, 560 U.S. 605, 629 (2010) (Roberts, C.J., Stevens, J., Scalia, J., and Kennedy, J. dissenting) (opposing a trial court amending a criminal sentence improperly after failing to order mandatory restitution in sentencing); *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 470 (2008) (Thomas, J. and Scalia, J. dissenting); *Utah v. Strieff*, 579 U.S. 232, 245 (2016) (Sotomayor, J. and Ginsburg, J. dissenting) (citing cases involving violations of the Fourth Amendment).

Forcing every Missourian to use an illegitimate map during the general election, in violation of both the federal Elections Clause and the referendum provision of the Missouri Constitution, will only add more illegality to an already precarious situation. When assessing the remedy, the Court should avoid "mak[ing] a bad situation worse." *Estes v. State of Tex.*, 381 U.S. 532, 592 (1965) (Warren, C.J., concurring) (discussing how additional publicity can violate fair trial rights in a case already involving

much publicity). The "cure [should not be] worse than the disease…." *Moncrieffe v. Holder*, 569 U.S. 184, 203 (2013). In addition to prolonging the federal and state constitutional violations, forcing Missourians to continue using the House Bill 1 map in the November 2026 election would encourage future violations of the law by Missouri's elected officials seeking to gain political advantage at the expense of their constituents' rights.

When faced with this decision just days ago, Missouri's Supreme Court chose to require the use of the only legitimate congressional map in Missouri. *Von Glahn*, No. SC 101805, 2026 WL 2628846, at *7. Federal courts should respect Missouri's courts under "the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger v. Harris*, 401 U.S. 37, 44 (1971). This is especially true under the *Purcell* principle when an election is fast approaching. *See Malliotakis v. Williams*, 146 S. Ct. 809, 811 (2026) (Alito, J. concurring). "This Court has repeatedly stated that



Appellate Case: 26-2797 Page: 33 Date Filed: 09/15/2026 Entry ID: 5684071

federal courts ordinarily should not enjoin a state's election laws in the period close to an election, and this Court in turn has often stayed lower federal court injunctions that contravened that principle." *Merrill*, 142 S. Ct. at 880 (2022) (citing multiple cases). "It is one thing for a State on its own to toy with its election laws close to a State's elections. But it is quite another thing for a federal court to swoop in and re-do a State's election laws in the period close to an election." *Id.* at 881.

There is only one set of laws in effect for Missouri's congressional map, and only one set of laws has ever been in effect during the entirety of this dispute: RSMo. §§ 128.461-469 (2022). There is no alternative law in effect to form the basis for Missouri's congressional election in November 2026. While the Court has not had to specifically determine how abstention and deference doctrines apply when state election officials violate the law, perhaps *Von Glahn* abstention will stand for the same principle as its predecessors have: the states' highest courts' decisions regarding elections should be respected, especially this close to an election, especially when the state ruling fairly reads state law, and especially when any alternative federal remedy would only apply a cure worse than the disease.

The behavior exhibited here by Missouri's Secretary of State is not unlike that which the colonists complained of when choosing to found the United States. The list of the King's transgressions included in the Declaration of Independence's mentioned:

> He has combined with others to subject us to a jurisdiction foreign to our constitution, and unacknowledged by our laws; giving his Assent to their Acts of pretended Legislation:

The Secretary's acts here were foreign to Missouri's Constitution, unacknowledged by Missouri law, and gave assent to a pretended House Bill 1 that was never the law. Fortunately for Missouri, the state is not known for its tea and harbors. Unfortunately for Missourians, the Secretary now asserts that he violated the law so badly that this Court should allow him to continue violating the law. That cannot be this Court's ruling.

> Will this court, by sustaining the judgment below, sanction such conduct on the part of the executive? The governing principle has long been settled. It is that a court will not redress a wrong when he who invokes its aid has unclean hands….
> Decency, security, and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously. Our government is the



Appellate Case: 26-2797 Page: 35 Date Filed: 09/15/2026 Entry ID: 5684071

> potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy.
>
> *Olmstead v. United States*, 277 U.S. 438, 485 (1928) (Brandeis, J. dissenting).

This Court should overturn the trial court's temporary restraining order and conclude the government's unlawful quest for power at the expense of Missourians and their Constitution.

## CONCLUSION

Missouri's referendum power, in accordance with longstanding precedent, invalidated the 2025 redistricting bill, House Bill 1. House Bill 1 was never the law, and the Elections Clause requires the only valid legislative act – RSMo. §§ 128.461-469 (2022) – to be the basis of the congressional map used in the November 2026 general election. The Court should overturn the trial court's temporary restraining order.



Appellate Case: 26-2797 Page: 36 Date Filed: 09/15/2026 Entry ID: 5684071

Respectfully submitted,

Elad Gross (counsel of record)
**MO RIGHTS**
PO Box 21621
St. Louis, MO 63109
Phone: (314) 252-8069
Email: Elad@MORights.com

Anat Gross
**MO RIGHTS**
PO Box 21621
St. Louis, MO 63109
Phone: (314) 252-8090
Email: Anat@MORights.com

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) and 32(a)(7)(B)(i) because the brief contains 5809 words, excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

Pursuant to Eighth Circuit Rule 28, I certify that the brief has been scanned and is virus free.



Appellate Case: 26-2797 Page: 38 Date Filed: 09/15/2026 Entry ID: 5684071

## CERTIFICATE OF SERVICE

I certify that on the 15th day of September 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit via the CM/ECF system for service upon all parties.