IN THE UNITED STATES COURT OF APPEALS

FOR THE EIGHTH CIRCUIT

CONGRESSMAN ROBERT ONDER, ET AL.,

Plaintiffs-Appellees,

v. No. 26-2797

STATE OF MISSOURI and DENNY L. HOSKINS,

in his official capacity as Missouri Secretary of State,

Defendants-Appellees,

and

RICHARD VON GLAHN and

PEOPLE NOT POLITICIANS,

Appellants.

BRIEF OF DARRELL LEON McCLANAHAN III AS AMICUS CURIAE IN SUPPORT OF APPELLANTS

INTEREST OF AMICUS CURIAE

Darrell Leon McClanahan III is a Missouri voter residing in Missouri's Fourth Congressional District. He intends to seek the Republican nomination for United States Representative from Missouri's Fourth Congressional District in a future election cycle.

Amicus is also the appellant in McClanahan v. Hoskins et al., Eighth Circuit Case No. 26-2341, a separate pending appeal before this Court presenting distinct questions involving Missouri Secretary of State Denny L. Hoskins in his official capacity. That appeal is not before this panel. Amicus asks this Court to make no finding concerning that appeal, consider its record, or address its merits here. Amicus identifies it solely to explain his concrete interest in the lawful administration of Missouri's congressional-election system. Amicus offers an additional perspective on the reliance interests of Fourth District voters and prospective candidates in stable and lawfully administered congressional district lines.

No party's counsel authored this brief in whole or in part. No party or party's counsel contributed money intended to fund preparing or submitting this brief. No person other than Amicus Curiae contributed money intended to fund preparing or submitting this brief.

## ARGUMENT

### I. LAWFUL AND STABLE DISTRICT LINES ARE ESSENTIAL TO MEANINGFUL CONGRESSIONAL ELECTION PARTICIPATION.

Congressional district boundaries determine which citizens vote together, which communities choose a representative together, and the electorate a prospective candidate must seek to represent. Candidates organize campaigns, communicate with voters, and plan ballot-access efforts based on the legally operative boundaries of the district in which they seek office. Voters depend on lawful district boundaries to know which congressional election they will participate in and which candidates will appear on their ballot. When the governing map is uncertain, changed without legal authority, or applied contrary to controlling law, the burden falls on voters, prospective candidates, local election officials, and the public.

Lawful and stable district lines allow citizens to plan campaigns, organize political activity, communicate with the correct electorate, and understand the congressional election in which they will participate.

States have substantial authority to prescribe the times, places, and manner of congressional elections under Article I, Section 4, Clause 1 of the United States Constitution. But that authority must be exercised through the State's lawful constitutional and legislative processes.

In Ohio ex rel. Davis v. Hildebrandt, 241 U.S. 565 (1916), the Supreme Court held that Ohio's referendum process was part of the State's legislative power for purposes of congressional redistricting. The Court held that Congress had not removed the referendum from that legislative power and that a congressional redistricting act subject to referendum did not take effect until the referendum process had run its course. Id. at 569–70.

In Arizona State Legislature v. Arizona Independent Redistricting Commission, 576 U.S. 787 (2015), the Supreme Court held that the Elections Clause's reference to the "Legislature" does not confine congressional-redistricting authority exclusively to a State's legislative assembly. The Court concluded that a State may vest redistricting authority in a mechanism authorized by the State's own constitution, including direct lawmaking by the people. Id. at 808–09.

In Moore v. Harper, 600 U.S. 1 (2023), the Supreme Court rejected the proposition that state legislatures exercise Elections Clause authority free from ordinary state constitutional constraints and state judicial review. State courts retain authority to review state legislative actions involving federal elections for compliance with state constitutional requirements.

## II. MISSOURI'S REFERENDUM PROCESS IS PART OF THE LAWFUL PROCESS BY WHICH MISSOURI EXERCISES AUTHORITY OVER CONGRESSIONAL DISTRICTS.

The Missouri Supreme Court concluded in von Glahn v. Hoskins, No.SC101805 (Mo. banc Sept. 3, 2026), that the referendum petition challenging House Bill 1 was legal, sufficient, and timely. The court held that the timely petition prevented House Bill 1 from going into effect unless and until it is approved by Missouri voters. The court also held that the Secretary of State's determination to the contrary was incorrect.

The Missouri Supreme Court further concluded that the Secretary's delay in processing and certifying the referendum petition created the confusion, expense, and practical difficulties on which the State relied. It held that those asserted practical obstacles did not permit continued use of House Bill 1 because the 2022 map was the only congressional map then in effect under the Missouri Constitution.

Missouri's referendum process is part of the constitutionally prescribed process through which Missouri exercises legislative power. When Missouri citizens gathered sufficient signatures to invoke that process, they acted through a mechanism the Missouri Constitution provides for direct lawmaking.

Hildebrandt recognizes that a referendum procedure can be part of the legislative power through which a State acts for purposes of congressional redistricting. 241 U.S. at 569–70. Arizona Independent Redistricting Commission confirms that the Elections Clause does not authorize state officials to bypass state constitutional lawmaking constraints. 576 U.S. at 808–09. Moore confirms that state constitutional law constrains the exercise of Elections Clause authority and that state courts retain authority to enforce those constraints.

## III. THE COURT'S RESOLUTION AFFECTS VOTERS AND PROSPECTIVE CANDIDATES WHO RELY ON DEFINITE AND LAWFUL DISTRICT LINES.

A voter cannot participate meaningfully in a congressional election without knowing which district the voter is assigned to. A prospective candidate cannot effectively seek federal office without understanding the electorate the candidate

seeks to represent and the district boundaries within which the candidate must organize and seek ballot access.

These reliance interests explain why this Court's resolution of the governing-map question has consequences beyond the governmental entities immediately before the Court. A lawful and stable map protects the ability of Missouri citizens to vote, associate, organize, campaign, and participate meaningfully in congressional elections.

The state constitutional referendum procedure at issue here is the mechanism through which Missouri citizens directly exercise legislative power over their congressional representation. The lawful operation of that procedure matters to voters and to prospective candidates who must rely on legally operative district lines to participate in future congressional elections.

Amicus respectfully submits that this Court should resolve this appeal consistently with Missouri's constitutionally prescribed referendum process and with the principles established in Hildebrandt, Arizona State Legislature, and Moore v. Harper: congressional district lines must be administered through the State's lawful constitutional procedures.

CONCLUSION

Amicus Curiae Darrell Leon McClanahan III respectfully supports Appellants Richard von Glahn and People Not Politicians and urges the Court to resolve this appeal in a manner consistent with Missouri's lawful referendum process and the requirement that congressional district lines be administered through constitutionally valid state procedures.

Dated: September 16, 2026

In the Interest of Justice.

Respectfully submitted,

/s/ Darrell Leon McClanahan III

Darrell Leon McClanahan III

Pro Se Amicus Curiae

24346 South 2425 Road

Milo, Missouri 64767

darrell4mogov@gmail.com

417-388-9595

CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) and Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 1,282 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and 32(a)(6) because it was prepared in a proportionally spaced typeface using 14-point font.

/s/ Darrell Leon McClanahan III

Darrell Leon McClanahan III

CERTIFICATE OF SERVICE

I certify that this proposed brief is attached to and served with Amicus Curiae's Motion for Leave to File Brief as Amicus Curiae Out of Time, filed through the Court's CM/ECF system on September 16, 2026.

/s/ Darrell Leon McClanahan III

Darrell Leon McClanahan III