**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

**Case Nos. 26-2797 and 26-2827 (Consolidated)**

---

CONGRESSMAN ROBERT "BOB" ONDER,
RICHARD "RICK" BRATTIN, PATRICIA THOMAS,
and DEBRA HAVENS,
*Plaintiffs-Appellees*,

*v.*

STATE OF MISSOURI and DENNY HOSKINS,
in his official capacity as Missouri Secretary of State,
*Defendants-Appellees,*

*and*

PEOPLE NOT POLITICIANS and RICHARD VON GLAHN,
*Intervenor-Defendants/Appellants.*

---

On Appeal from the United States District Court
for the Eastern District of Missouri
Case No. 4:26-cv-01424-SRC

---

# EMERGENCY MOTION TO RECALL THE MANDATE AND STAY THIS COURT'S ORDER, AND THE PERMANENT INJUNCTION AND JUDGMENT ISSUED PURSUANT TO THAT ORDER, PENDING RESOLUTION OF THE SUPREME COURT APPEAL


Charles W. Hatfield
Jeremy A. Root
Alexander C. Barrett
Alixandra S. Cossette
Greta M. Bax

**STINSON LLP**
230 W. McCarty Street
Jefferson City, MO 65101
Telephone: (573) 636-6263

*Counsel for Intervenor-Defendants/Appellants*

## TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

PROCEDURAL BACKGROUND .......... 3

LEGAL STANDARD .......... 6

ARGUMENT .......... 7

I. THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR A STAY .......... 7

A. The *Purcell* Principle Favors Appellants .......... 7

B. Appellees Have No Cognizable Equitable Interest in HB 1 .......... 9

C. A Stay Preserves the Lawful Status Quo and Orderly Election Administration .......... 10

II. THE SUPREME COURT IS LIKELY TO GRANT CERTIORARI AND REVERSE .......... 11

A. The Supreme Court's Stay Bars the Relief this Court Ordered .......... 11

B. The District Court and this Court Lacked Jurisdiction Under Section 2284 14

C. This Court's Merits Holdings Misread Binding Precedent .......... 16

III. APPELLANTS AND THE PUBLIC WILL SUFFER IRREPARABLE HARM ABSENT A STAY .......... 18

CONCLUSION .......... 20

CERTIFICATE OF COMPLIANCE .......... 21

CERTIFICATE OF SERVICE .......... 21

## TABLE OF AUTHORITIES

**Cases**

*Aaron v. Cooper*, 261 F.2d 97 (8th Cir. 1958)......................................................15

*Abbott v. League of United Latin Am. Citizens*, 146 S. Ct. 418 (2025).....................7

*Allen v. Milligan*, 608 U.S. 511 (2026)......................................................................9

*Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 172 F.4th 361 (4th Cir. 2026) ..................................................................... 1, 12, 14

*Armour v. Ohio*, 925 F.2d 987 (6th Cir. 1991) ...................................................2, 15

*Carson v. Simon*, 978 F.3d 1051 (8th Cir. 2020)......................................................8

Department of Homeland Security v. D.V.D., 145 S. Ct. 2627 (2025)..................13

*Eggers v. Evnen*, 48 F.4th 561 (8th Cir. 2022) ......................................................19

*Gen. Atomic Co. v. Felter*, 436 U.S. 493 (1978) ...................................................13

*Hale v. Lee*, No. 3:26-CV-00603, 2026 WL 1433312 (M.D. Tenn. May 21, 2026) ..........................................................................................................14

*Hill v. McDonough*, 547 U.S. 573 (2006)...............................................................9

*Hollingsworth v. Perry*, 558 U.S. 183 (2010)..........................................................6

*Kalson v. Paterson*, 542 F.3d 281 (2d Cir. 2008)...............................................2, 14

*LULAC of Texas v. Texas*, 318 F. App'x 261 (5th Cir. 2009)................................15

*Maggard v. State*, 733 S.W.3d 411 (Mo. banc 2026)...............................................4

*Merrill v. Milligan*, 142 S. Ct. 879 (2022)...............................................................7

*Moore v. Harper*, 600 U.S. 1 (2023) .......................................................................8

*New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42 (2d Cir. 2020) ............1, 12

*Nken v. Holder*, 556 U.S. 418 (2009) .................................................................6, 10

*Onder v. Missouri*, No. 26-cv-01424 (E.D. Mo. Sep. 8, 2026) ..............................18

*Page v. Bartels*, 248 F.3d 175 (3d Cir. 2001)................................................. 15, 16

*People Not Politicians v. Onder*, No. 26A326 .............................................. *passim*

*Phelps-Roper v. Nixon*, 545 F.3d 685 (8th Cir. 2008).................................... 10, 19

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423 (2020).......2, 7

*Rodriguez v. Popular Democratic Party*, 457 U.S. 1 (1982) ................................17

*Sibbald v. United States*, 37 U.S. 488 (1838) .......................................................14

*Stratton v. St. Louis Sw. Ry. Co.*, 282 U.S. 10 (1930) ...........................................16

Trump v. Boyle, 145 S. Ct. 2653 (2025) ................................................................13

*United States v. Classic*, 313 U.S. 299 (1941).......................................................17

*von Glahn v. Hoskins*, 2026 WL 2628846 (Mo. Sep. 3, 2026) ...................... *passim*

**Statutes**

2 U.S.C. § 2..........................................................................................................18

28 U.S.C. § 2101 ...................................................................................................20

28 U.S.C. § 2284 .....................................................................................................2

52 U.S.C. § 20302 ........................................................................................... 3, 5, 8

Mo. Rev. Stat. § 115.279 ................................................................................ 3, 5, 8

**Other Authorities**

Mark Maxwell, *Missouri's first ballots are in the mail as federal court weighs congressional map*, KSDK (Sep. 20, 2026) ........................................................3

Mo. Const. art. III, § 39 ...........................................................................................3

Mo. Const. art. III, § 49 ...........................................................................................3

Mo. Const. art. III, § 52(a) ........................................................................................3

Mo. Const. art. III, § 52(b)................................................................................ 3, 4, 19

Rudi Keller, *Missouri election officials begin mailing ballots as they await ruling on congressional map*, Mo. Indep. (Sep. 19, 2026) .............................................3

**Rules**

Fed. R. App. P. 27 ...................................................................................................20

Fed. R. App. P. 41 ........................................................................................20
Supreme Court Rule 23 ........................................................................................3

## INTRODUCTION

Intervenor-Defendants People Not Politicians ("PNP") and Richard von Glahn (collectively, "Intervenors") respectfully move this Court to recall the mandate and both this Court's judgment and the permanent injunction entered by the district court on September 21, 2026, pending the filing and disposition of a petition for a writ of certiorari and, if certiorari is granted, pending final disposition.

This Court's decision and the permanent injunction entered in compliance with it, should be stayed. At least three independent grounds compel a stay:

**First, this Court's judgment violates the Supreme Court's stay.** In *People Not Politicians v. Onder*, No. 26A326, the full Court stayed the district court's TRO with no noted dissents, preserving the 2022 map "pending the disposition of the appeal in the United States Court of Appeals for the Eighth Circuit and disposition of a petition for a writ of certiorari in this Court, if such a writ is timely sought." That stay remains in effect. And other circuits considering identically-worded stay have consistently recognized that such language bars the court of appeals from reviving stayed relief. *See Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 172 F.4th 361, 374 (4th Cir. 2026); *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 88 (2d Cir. 2020). This Court ordered the very relief the Supreme Court's stay foreclosed.

**Second, the district court and this Court lacked jurisdiction.** Federal law requires a "district court of three judges" when "an action is filed challenging the constitutionality of the apportionment of congressional districts." 28 U.S.C. § 2284(a). This language "creates an obligation impervious to judicial discretion." *Shapiro v. McManus*, 577 U.S. 39, 43 (2015). Circuit courts uniformly hold that § 2284 is jurisdictional and does not require a party to request a three-judge panel. *See Kalson v. Paterson*, 542 F.3d 281, 286-87 (2d Cir. 2008); *Armour v. Ohio*, 925 F.2d 987, 989 (6th Cir. 1991); *Aaron v. Cooper*, 261 F.2d 97, 105 (8th Cir. 1958).

And here, Intervenors *did* make a request by asserting that the case could only be decided by a three-judge court; no law supports this Court's conclusion that the request was somehow insufficient because it lacked particular wording or was not filed as a separate motion. And this Court's alternative holding that the district court was still empowered to issue a TRO is belied by its own conclusion that here, the TRO functioned as a preliminary injunction. The district court had no jurisdiction to issue its order, and this court lacked jurisdiction to affirm it on the merits.

**Third, *Purcell* prohibits exactly this.** "[L]ower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020). Missouri's 116 local election authorities are implementing the 2022 map—the only lawful map under Missouri law. Voting has already begun: military ballots were transmitted

September 18 as required by law (52 U.S.C. § 20302(a)(8)), and absentee voting begins tomorrow, September 22. Mo. Rev. Stat. § 115.279.[1] This Court's decision would force Missouri to revert to HB 1, a map the Missouri Supreme Court unanimously held "is not the law and has never been the law." *von Glahn v. Hoskins*, 2026 WL 2628846, at *6 n.8 (Mo. Sep. 3, 2026).

A stay is necessary to prevent irreparable harm, preserve the Supreme Court's jurisdiction, and ensure Missouri's election proceeds under the only lawful congressional map. Intervenors intend to seek emergency relief from the United States Supreme Court following disposition of this Motion or upon close of business on September 22, 2026, whichever arrives first. Supreme Court Rule 23.

## PROCEDURAL BACKGROUND

On September 12, 2025, the Missouri Legislature passed HB 1 without an emergency clause, making it subject to referendum. Mo. Const. art. III, § 39; Mo. Const. art. III, § 49; Mo. Const. art. III, § 52(b). That same day, PNP proposed a referendum on the legislation.

On December 9, 2025, PNP submitted more than 300,000 signatures—far exceeding the constitutional requirement. Mo. Const. art. III, § 52(a). Under

[1] *See* Rudi Keller, *Missouri election officials begin mailing ballots as they await ruling on congressional map*, Mo. Indep. (Sep. 19, 2026); Mark Maxwell, *Missouri's first ballots are in the mail as federal court weighs congressional map*, KSDK (Sep. 20, 2026).

Missouri law, a sufficient referendum petition suspends the targeted legislation until approved by the people. Mo. Const. art. III, § 52(b); *Maggard v. State*, 733 S.W.3d 411, 420 (Mo. banc 2026).

The Secretary delayed certification until August 4, 2026—primary election day—then issued a certificate of insufficiency, claiming the Missouri Constitution does not authorize a referendum on congressional redistricting. The Attorney General publicly acknowledged: "As long as the status quo is the new maps, delay works in our favor."

On September 3, 2026, the Missouri Supreme Court unanimously reversed, holding the Missouri Constitution authorizes referenda on congressional redistricting and HB 1 "is not the law and has never been the law." *von Glahn*, 2026 WL 2628846, at *5, *6 n.8. The court ordered the Secretary to issue a certificate of sufficiency, place the referendum on the ballot, and cease using HB 1. The court also held the Secretary had "waived and abandoned" his federal constitutional objections.

The Secretary filed an emergency stay application with the Supreme Court. *Hoskins v. von Glahn*, No. 26A304. Justice Kavanaugh denied the application on September 8, 2026. The Secretary then directed local election officials to implement the Missouri Supreme Court's order using the 2022 map.

On September 4, 2026, Plaintiffs filed a federal suit asserting the same federal constitutional claims; the Secretary consented to a temporary restraining order.

On September 8, 2026, the district court entered a TRO enjoining use of any map other than HB 1 for the November election. It did not convene a three-judge panel and relied on a novel "*Purcell* in reverse" theory. On September 9, this Court denied PNP's emergency motion to stay the TRO.

On September 10, 2026, the Supreme Court stayed the TRO with no noted dissents "pending the disposition of the appeal in the United States Court of Appeals for the Eighth Circuit and disposition of a petition for a writ of certiorari in this Court, if such a writ is timely sought." *People Not Politicians v. Onder*, No. 26A326. The Secretary directed election officials to use the 2022 map.

Local election officials implemented the 2022 map. UOCAVA ballots were transmitted September 18, 2026, as required by law. 52 U.S.C. § 20302(a)(8). Absentee voting begins tomorrow. Mo. Rev. Stat. § 115.279.

This Court ordered expedited briefing and held oral argument on September 17, 2026. On September 21, this Court held that using a different map for the general election than was used for the primary violates Article I, Section 2, without reaching the Elections Clause or Equal Protection theories. The Court affirmed and remanded for entry of a permanent injunction, without further hearing, evidence, or a three-judge court.

The district court then entered a permanent injunction without a hearing. The only evidence in the record consists entirely of affidavits. The district court administratively stayed the injunction until September 28, 2026, at 5:00 p.m. CDT.

**LEGAL STANDARD**

A stay pending certiorari is appropriate when: (1) there is a "reasonable probability" the Supreme Court will grant certiorari; (2) there is a "fair prospect" of reversal; (3) irreparable harm will result from denial of a stay; and (4) the balance of equities favors the applicant. *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010); *Nken v. Holder*, 556 U.S. 418, 433-34 (2009).

These factors are interrelated and considered on a "sliding scale." *Nken*, 556 U.S. at 434. The applicant need not establish that certiorari will be granted or reversal is certain—only a reasonable probability of review and a fair prospect of reversal. *Hollingsworth*, 558 U.S. at 190. All four factors favor a stay.

Intervenors address the balance of equities first because the *Purcell* principle is dispositive: it cautions against federal court interference in Missouri's ongoing election, conducted under the 2022 map in compliance with the Missouri Supreme Court's ruling and the Supreme Court's stay.

## ARGUMENT

### I. THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR A STAY

The balance of equities favors staying the permanent injunction. A stay ensures fidelity to *Purcell*, protects Intervenors' referendum rights, and preserves Missouri's only lawful congressional map.

A. The *Purcell* Principle Favors Appellants

The *Purcell* principle is clear: "lower federal courts should ordinarily not alter the election rules on the eve of an election." *Abbott v. League of United Latin Am. Citizens*, 146 S. Ct. 418, 419 (2025); *Republican Nat'l Comm.*, 589 U.S. at 424. "It is one thing for a State on its own to toy with its election laws close to a State's elections. But it is quite another thing for a federal court to swoop in and re-do a State's election laws in the period close to an election." *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring). That is exactly what this Court's decision accomplishes.

The Missouri Supreme Court unanimously established the lawful status quo on September 3: HB 1 "is not the law and has never been the law," and the 2022 map is the "only valid congressional redistricting in effect." *von Glahn*, 2026 WL 2628846, at *6 n.8. Under *Purcell*, "[t]he question . . . is who sets the status quo? The Constitution's answer is generally the state legislature"—subject to the state

constitution's lawmaking process, including referenda. *Carson v. Simon*, 978 F.3d 1051, 1062 (8th Cir. 2020); *Moore v. Harper*, 600 U.S. 1, 23–26 (2023).

The Supreme Court has twice confirmed this. Justice Kavanaugh denied the Secretary's stay application. *Hoskins*, No. 26A304. The full Court then stayed the district court's TRO. *People Not Politicians*, No. 26A326. The 2022 map governs.

The on-the-ground reality is irrefutable. Missouri's 116 local election authorities are running the election under the 2022 map. Military ballots were transmitted September 18 as required. 52 U.S.C. § 20302(a)(8). Absentee voting begins tomorrow. Mo. Rev. Stat. § 115.279. Ballots have been printed. As the Missouri Association of County Clerks confirmed, "[i]t is too late for Missouri's local election officials to create ballots using the HB 1 congressional districts for the November 2026 general election." Reverting to HB 1 would require reprinting ballots at a cost of $15,000 to $30,000 per county, not including staff time. Changing course now would violate federal and state election deadlines and inflict the administrative chaos *Purcell* is meant to prevent. *See Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006).

The district court's "*Purcell* in reverse" theory has no basis in precedent. *Purcell* prohibits federal courts from intervening in state election procedures on the eve of an election. It does not authorize federal courts to override a state supreme

court's interpretation of state law to "preserve" a map that court has declared not to be the law. *See Allen v. Milligan*, 608 U.S. 511, 514 (2026).

B. Appellees Have No Cognizable Equitable Interest in HB 1

Appellees suffer no cognizable harm from a stay. They seek to use HB 1, but HB 1 "is not the law and has never been the law." *von Glahn*, 2026 WL 2628846, at *6 n.8. One cannot claim an equitable interest in implementing legislation that never took effect. Moreover, "a strong equitable presumption against the grant of a stay" exists when emergency relief results from a litigant's own delay. *Hill v. McDonough*, 547 U.S. 573, 584-85 (2006). The timing crisis here was manufactured by the Secretary's strategic delay, and Plaintiffs waited until September 4 to file suit—knowing since December 2025 that HB 1 would not be in effect if the referendum petition was sufficient.

A stay does not deprive Appellees of any remedy. They remain free to defend this Court's decision in the Supreme Court. What they may not claim is an entitlement to implement HB 1 before the Supreme Court determines whether this Court's decision should stand.

The asymmetry is stark. Denying a stay permanently nullifies Intervenors' referendum right and forces Missouri voters to elect representatives from districts that have never been the law. Granting a stay preserves the only lawful map, protects the referendum, and allows the Supreme Court to resolve the novel constitutional

questions. "[I]t is always in the public interest to protect constitutional rights." *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008).

### C. A Stay Preserves the Lawful Status Quo and Orderly Election Administration

The purpose of a stay pending certiorari is to preserve the status quo while the Supreme Court considers review. *See Nken*, 556 U.S. at 429. The status quo is the 2022 map—confirmed by Missouri's highest court, two Supreme Court orders, and operational reality in all 116 Missouri election jurisdictions.

Missouri's local election authorities have implemented the 2022 map, generated ballot styles, and are printing ballots. They did so in reliance on the Missouri Supreme Court's order and the Secretary's post-stay directive. Reversal would require reprinting ballots, reconfiguring precincts, reprogramming voting equipment, and retraining poll workers on an impossible timeline—all to implement a map that ***is not the law***.

A stay avoids the harm *Purcell* was designed to prevent: "voter confusion and consequent incentive to remain away from the polls" caused by "[c]ourt orders affecting elections, especially conflicting orders." 549 U.S. at 4-5. Allowing the permanent injunction to take effect would create exactly such a conflict. The Missouri Supreme Court has enjoined the Secretary "from implementing, using, or mandating the use of the congressional redistricting in HB 1 for the November 2026 general election." *von Glahn*, 2026 WL 2628846, at *13-14. The district court's

permanent injunction enjoins the Secretary from using any map *other than* HB 1. These orders are irreconcilable. The Secretary cannot comply with both; implementing HB 1 violates the Missouri Supreme Court's injunction, while implementing the 2022 map violates the federal injunction. Indeed, the Missouri Supreme Court has already held the Secretary in contempt for attempting to comply with the federal district court's TRO rather than its injunction. *von Glahn v. Hoskins*, No. SC101805 (Mo. Sep. 10, 2026) (judgment of civil contempt). A stay resolves this conflict by preserving the status quo under Missouri's highest court's ruling.

## II. THE SUPREME COURT IS LIKELY TO GRANT CERTIORARI AND REVERSE

The Supreme Court is likely to grant certiorari and reverse. The Court has already acted twice in this case, and this Court's decision conflicts with the Supreme Court's orders, controlling precedent, and the limits on lower-court authority.

### A. <u>The Supreme Court's Stay Bars the Relief this Court Ordered</u>

In *Hoskins v. von Glahn*, No. 26A304, Justice Kavanaugh denied the Secretary's stay application. In *People Not Politicians v. Onder*, No. 26A326, the full Court stayed the district court's TRO. The Court's willingness to intervene twice strongly supports the reasonable probability that certiorari will be granted and confirms Intervenors' concrete stake sufficient to invoke federal jurisdiction.

More fundamentally, the Supreme Court stayed the TRO "pending the disposition of the appeal in the United States Court of Appeals for the Eighth Circuit

and disposition of a petition for a writ of certiorari in this Court, if such a writ is timely sought." *People Not Politicians*, No. 26A326. This Court's merits decision and the permanent injunction that follows effectively accomplish what the Supreme Court's stay was designed to prevent: prohibiting Missouri from conducting its elections using the 2022 law.

Other circuits uniformly recognize they lack power to undo an identically worded Supreme Court stay. When the Supreme Court stayed a preliminary injunction "pending the disposition of the appeal . . . and disposition of a petition for a writ of certiorari," the en banc Fourth Circuit explained "no decision [it] issue[d] . . . ha[d] the power to change th[e] fact" that the injunction was not in effect; it "w[ould] resume in force—if ever—only after events that would post-date [the Fourth Circuit's] decision." *Am. Fed'n of State, Cnty. & Mun. Emps.*, 172 F.4th at 374. Likewise, the Second Circuit recognized its merits decision affirming a preliminary injunction could not make the injunction operative because it "ha[d] already been stayed by the Supreme Court, not only through [the Second Circuit's] disposition of the case, but also through the disposition of [the Government's] petition for a writ of certiorari." *New York*, 969 F.3d at 88.

Intervenors locate no case in which a circuit court has issued relief that would effectively reinstate an order stayed by the Supreme Court. By affirming and ordering entry of a permanent injunction (without evidence, a hearing, or a three-

judge panel), this Court revived in substance the very relief the Supreme Court stayed—in direct conflict with the Court's order.

The Supreme Court's recent decisions confirm lower courts cannot circumvent its stay through alternative procedural mechanisms. In *Department of Homeland Security v. D.V.D.*, the Court held a lower court could not use a separate remedial order to accomplish what its stay had foreclosed. 145 S. Ct. 2627, 2628 (2025) (per curiam). Justice Kagan, concurring, stated she "d[id] not see how a district court can compel compliance with an order that [the Supreme] Court has stayed." *Id.*

In *Trump v. Boyle*, the Supreme Court held that a request for injunctive relief was "squarely controlled" by an earlier stay order of materially indistinguishable relief. 145 S. Ct. 2653, 2654 (2025). Although "interim orders are not conclusive as to the merits, they inform how a court should exercise discretion in like cases." *Id.* Here, the Supreme Court's stay "squarely control[s]" whether this Court may order relief implementing HB 1.

The Supreme Court has a strong institutional interest in ensuring its orders are not circumvented. "In light of" the Court's prior order, "it is inconceivable" that this Court "was free to again" order the relief the Supreme Court had stayed. *Gen. Atomic Co. v. Felter*, 436 U.S. 493, 497 (1978). Circuit courts confronting such stays recognize the Supreme Court—not the court of appeals—controls the interim

posture. *See Am. Fed'n of State, Cnty. & Mun. Emps.*, 172 F.4th at 374; *Sibbald v. United States*, 37 U.S. 488, 492 (1838).

### B. <u>The District Court and this Court Lacked Jurisdiction Under Section 2284</u>

A "district court of three judges shall be convened" when "an action is filed challenging the constitutionality of the apportionment of congressional districts." 28 U.S.C. § 2284(a). This mandatory language "creates an obligation impervious to judicial discretion." *Shapiro v. McManus*, 577 U.S. 39, 43 (2015). Plaintiffs challenge the constitutionality of using Missouri's only lawful congressional districts. That is an apportionment challenge; artful pleading cannot avoid Section 2284(a). *See Hale v. Lee*, No. 3:26-CV-00603, 2026 WL 1433312, at *3 (M.D. Tenn. May 21, 2026). The district court ignored this requirement, and that jurisdictional defect infects this Court's decision.

This Court suggested that Section 2284's three-judge requirement applies only if a party makes a formal request. That reasoning has no support in the statute, in *Shapiro*, or in the uniform precedent of the circuits.

Section 2284 is jurisdictional and does not require a party request. The Second Circuit directly addressed the argument that "no party sought a three-judge court" and therefore the single judge was free to adjudicate—and squarely rejected it, holding Section 2284 is jurisdictional and mandatory. *Kalson*, 542 F.3d at 286–87.

The Fifth Circuit agrees: "The absence of a formal request for a three-judge court does not constitute waiver." *LULAC of Texas v. Texas*, 318 F. App'x 261, 264 (5th Cir. 2009). The Sixth Circuit likewise held that while Section 2284 "seems to contemplate 'the filing of a request for three judges' by a party," the statutory "shall" makes three judges a jurisdictional requirement. *Armour*, 925 F.2d at 989.

This Court's own precedent is the same: "There is no requirement in § 2284 that the applicant . . . make request therefor." *Aaron v. Cooper*, 261 F.2d 97, 105 (8th Cir. 1958). This Court's contrary holding cannot be reconciled with its own precedent.

The only circuit decision possibly supporting the panel's position is *Page v. Bartels*, 248 F.3d 175, 184 n.4 (3d Cir. 2001), which noted "some doubt" whether a three-judge court must always be convened. But *Page* expressly declined to decide the question because the plaintiffs had requested a three-judge court. That tentative aside cannot overcome the uniform holdings of four circuits—including this one—that Section 2284 is jurisdictional and mandatory.

In any event, Intervenors' request was sufficient. The statutory text does not prescribe any particular format for a request, and neither does *Shapiro*. Intervenors raised the three-judge court requirement in their Motion to Dismiss.

Nor can the TRO characterization save the district court's jurisdiction. This Court itself rejected that characterization: it held the order was reviewable on appeal

precisely *because it was not a true TRO*. Moreover, this Court ordered entry of a permanent injunction—relief that unquestionably requires a three-judge court. As the Third Circuit explained, "our own appellate jurisdiction over the merits of Plaintiffs' claims is a function of the district court's jurisdiction." *Page*, 248 F.3d at 184. If the district court lacked jurisdiction to enter a permanent injunction, this Court lacks jurisdiction to order one.

Because a three-judge court was required, this Court's authority is limited to ordering the district court to convene one; it cannot review the merits of an order entered without jurisdiction. *Stratton v. St. Louis Sw. Ry. Co.*, 282 U.S. 10, 16 (1930). The proper disposition is to vacate the injunction and remand with instructions to constitute a three-judge court.

C. <u>This Court's Merits Holdings Misread Binding Precedent</u>

On the merits, this Court concluded Article I, Section 2 requires continuity of constituency between the primary and general election and expressed approval of the district court's Equal Protection Clause analysis. This Court's analysis misreads the precedents it relied upon and would create rules no court has ever recognized. Critically, these far-reaching constitutional rulings rest on ***no evidentiary record***.

**This Court's Article I, Section 2 holding has no basis in *Classic* or its progeny.** The Court held "Article I, Section 2's right to participate in the procedure of choosing a member of Congress requires continuity in the constituency

throughout all stages of a single election." Slip Op. 26. This misconstrues *United States v. Classic*, 313 U.S. 299 (1941).

*Classic* protects the right of a qualified voter "to cast his ballot and to have it counted" when a state "has made the primary an integral part of the procedure of choice." 313 U.S. at 318. That right was fully honored here: every qualified Missouri voter had the opportunity to vote in the August primary, every vote was counted, and every primary winner will appear on the November ballot. *Classic* does not create a constitutional command to perpetuate use of a map that "is not the law and has never been the law." *von Glahn*, 2026 WL 2628846, at *6 n.8. No court has ever held Article I, Section 2 requires identical district boundaries in the primary and general election.

**The district court's Equal Protection analysis was also wrong.** This Court found "a colorable argument" that the Equal Protection Clause is violated when "some Missouri voters will have more say than others on who represents them in Congress." Slip Op. 27. That reasoning proves too much. Uneven electoral consequences are routine: they occur when a primary candidate withdraws, when district boundaries change mid-term, or when a legislator vacates office. *See Rodriguez v. Popular Democratic Party*, 457 U.S. 1, 10–12 (1982). The Supreme Court has never held the Constitution guarantees voters an absolute entitlement to vote for the same nominee in November for whom they voted in the primary.

**This Court's direction to the District Court would require Missouri to violate federal law.** 2 U.S.C. § 2a(c) requires Representatives to be elected from districts "prescribed by the law" of the State. HB 1 "is not the law." The injunction this Court envisioned would force Missouri to hold an election under that map, leaving the State unable to comply with federal law.

Worse, although the intent of this Court may have been to implement HB 1 (the 2025 map), the permanent injunction's language leaves the Secretary unable to act at all. The Missouri Supreme Court's injunction prohibits the Secretary from "implementing, using, or mandating the use" of HB 1. The federal injunction prohibits the Secretary from "implementing, using, publishing, distributing, or mandating the use of any congressional district map other than the HB 1 map." *Onder v. Missouri*, No. 26-cv-01424, slip op. at 13 (E.D. Mo. Sep. 8, 2026). As the Missouri Supreme Court observed in holding the Secretary in contempt, the federal order "did not require the secretary to affirmatively act at all"—yet neither can he act under either map without violating one court's injunction. This is an untenable position for any state official.

## III. APPELLANTS AND THE PUBLIC WILL SUFFER IRREPARABLE HARM ABSENT A STAY

If the permanent injunction takes effect, the harm is immediate and irreversible. Three categories of injury follow—each independently sufficient to justify a stay.

**Referendum right destroyed:** More than 300,000 Missourians signed the referendum petition, invoking a right reserved under Missouri's Constitution to suspend HB 1 and submit it to a statewide vote. Mo. Const. art. III, § 52(b). If HB 1 is used for the general election, that right is extinguished before the people can exercise it. "[I]t is always in the public interest to protect constitutional rights." *Phelps-Roper*, 545 F.3d at 690. A federal injunction "barring [a] State from conducting this year's elections pursuant to a valid provision in its constitution" causes "serious[] and irreparabl[e] harm." *Eggers v. Evnen*, 48 F.4th 561, 566–67 (8th Cir. 2022). Until there is a vote, the people have a right to have their elections conducted under Missouri law, not a law that has never been adopted.

**Missouri voters forced into unlawful districts:** The Missouri Supreme Court unanimously held HB 1 "is not the law and has never been the law." *von Glahn*, 2026 WL 2628846, at *6 n.8. Using HB 1 would force voters to elect representatives from congressional districts that do not exist under Missouri law—violating 2 U.S.C. § 2a(c), which requires representatives be elected from districts "prescribed by the law" of the state.

**The election itself becomes the injury:** Once the 2026 general election is conducted under HB 1, no subsequent reversal can repair the damage. Members of Congress will have been elected from void districts. The referendum will have been rendered meaningless. And the Missouri Supreme Court's unanimous judgment—

with which the Supreme Court declined to interfere—will have been nullified by federal litigation.

## CONCLUSION

For the foregoing reasons, Intervenors respectfully request that this Court recall its mandate, stay its judgment, and stay the district court's permanent injunction issued pursuant thereto pending the filing and disposition of a petition for a writ of certiorari and, if certiorari is granted, pending final disposition, including any proceedings on remand. Fed. R. App. P. 27(a); Fed. R. App. P. 41(d); 28 U.S.C. § 2101(f).

Respectfully submitted,

**STINSON LLP**

/s/ *Alixandra S. Cossette*
Charles W. Hatfield, MO 40363
Jeremy A. Root, MO 59451
Alexander C. Barrett, MO 68695
Alixandra S. Cossette, MO 68114
Greta M. Bax, MO 73354
230 W. McCarty Street
Jefferson City, MO 65101
Telephone: (573) 636-6263
chuck.hatfield@stinson.com
jeremy.root@stinson.com
alexander.barrett@stinson.com
alix.cossette@stinson.com
greta.bax@stinson.com

*Counsel for Intervenors-Appellants*

## CERTIFICATE OF COMPLIANCE

1. Intervenors-Appellants' Motion complies with the word limit of Fed. R. App. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), the Motion contains XX words.

2. Intervenors-Appellants' Motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirement of Fed. R. App. P. 32(a)(6) because the Motion has been prepared in a proportionally spaced typeface using Microsoft Word 14-poiknt Times New Roman.

Dated: September 21, 2026

*/s/ Alixandra S. Cossette*

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2026, a true and correct copy of the foregoing was served on all counsel of record through the Court's CM/ECF electronic filing system.

*/s/ Alixandra S. Cossette*